## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAXALTA INCORPORATED, a Delaware corporation; and BAXALTA GMBH, a Swiss company, | |
| Plaintiffs, | |
| v. | C.A. No. 17-509-TBD |
| GENENTECH, INC., a Delaware corporation; and CHUGAI PHARMACEUTICAL CO., LTD., a Japanese company, | JURY TRIAL DEMANDED ORAL ARGUMENT REQUESTED |
| Defendants. | PUBLIC VERSION |

## BAXALTA'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

Jody C. Barillare (Bar No. 5107)
Amy M. Dudash (Bar No. 5741)
**MORGAN, LEWIS & BOCKIUS LLP**
1007 North Orange Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 574-3000
jody.barillare@morganlewis.com
amy.dudash@morganlewis.com

Margaret A. McGreal
Jessica A. Stow
Julie S. Goldemberg
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
margaret.mcgreal@morganlewis.com
jessica.stow@morganlewis.com
julie.goldemberg@morganlewis.com

Karon N. Fowler
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 843-4000
karon.fowler@morganlewis.com

Michael J. Abernathy
Sanjay K. Murthy
Jason C. White
Christopher J. Betti
Amanda S. Williamson
Jennifer M. Dienes
Maria E. Doukas
Jesse T. Dyer
Caroline S. Lourgos
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Telephone: (312) 324-1000
mike.abernathy@morganlewis.com
sanjay.murthy@morganlewis.com
jason.white@morganlewis.com
christopher.betti@morganlewis.com
amanda.williamson@morganlewis.com
jennifer.dienes@morganlewis.com
maria.doukas@morganlewis.com
jesse.dyer@morganlewis.com
caroline.lourgos@morganlewis.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   BAXALTA IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF ..................... 1

      A.   The Limited Injunction Baxalta Seeks Would Promote the Public Interest .......... 1

           1.   Genentech Misapplies the Law .................................................. 2

           2.   The Proposed Carve-Out Protects the Public Interest............................... 3

                a.   The Proposed Carve-Out Ensures Patient Safety........................... 3

                b.   The Proposed Carve-Out Is Clear .................................................. 3

                c.   The Proposed Carve-Out Ensures That Patients Have
                     Continued Access To Safe And Effective Products ..................... 4

                     (i)     The Majority Of Hemophilia A Patients Are Well
                             Treated ............................................................................... 5

                     (ii)    Newly Diagnosed Inhibitor Patients Have Access
                             To Safe And Effective Therapies....................................... 5

                     (iii)   Every Bleed Matters Regardless Of The Product
                             Used ................................................................................... 5

           3.   The Proposed Carve-Out Need Not Exempt Non-Inhibitor Patients......... 6

      B.   Baxalta Has Shown It Will Be Irreparably Harmed ............................................ 7

           1.   Baxalta Has Already Suffered Lost Sales, Revenue, Market Share,
                And Price Erosion .................................................................... 7

           2.   Baxalta Will Suffer Harm To Its Reputation And Goodwill ..................... 8

           3.   Baxalta's Losses Cannot Be Remedied By Monetary Damages ............... 9

           4.   The Carve-Out Provision Does Not Negate Irreparable Harm............... 10

           5.   Baxalta Did Not Delay In Seeking A Preliminary Injunction ................. 10

      C.   Genentech Fails To Raise A Substantial Question of Infringement Or
           Validity ................................................................................................ 11

           1.   Genentech Has Not Raised A Substantial Question Of
                Infringement........................................................................... 11

           2.   Genentech Fails To Raise A Substantial Question Of Validity............... 12

      D.   The Balance of the Equities Favors Enjoining HEMLIBRA's Sales
           Subject to Baxalta's Proposed Carve-Out.......................................... 14

III.  CONCLUSION.......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008)............................................................................................2

*AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*,
    759 F.3d 1285 (Fed. Cir. 2014).....................................................................................12, 13

*Alcon Research Ltd. v. Barr Labs., Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014)..........................................................................................14

*Allergan, Inc. v. Sandoz Inc.*,
    796 F.3d 1293 (Fed. Cir. 2015).......................................................................................1, 14

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)..........................................................................................12

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed. Cir. 2017)............................................................................................3

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
    726 F.3d 1296 (Fed. Cir. 2013)............................................................................................9

*Avid Tech., Inc. v. Harmonic, Inc.*,
    812 F.3d 1040 (Fed. Cir. 2016)............................................................................................1

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012)..........................................................................................3, 9

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
    No. CIV. A. 93-108-JJF, 1993 WL 330532 (D. Del. July 16, 1993)...................................2, 3

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013)......................................................................................8, 10

*Edwards Lifesciences AG v. CoreValve, Inc.*,
    699 F.3d 1305 (Fed. Cir. 2012)..........................................................................................13

*Edwards Lifesciences AG v. CoreValve, Inc.*,
    No. CV 08-91 (GMS), 2014 WL 1493187 (D. Del. Apr. 15, 2014)...........................2, 3, 7, 10

*Graceway Pharms., LLC v. Perrigo Co.*,
    697 F. Supp. 2d 600 (D.N.J. 2010) ....................................................................................11

*Hybritech Inc. v. Abbott Labs.*,
849 F.2d 1446 (Fed. Cir. 1988)................................................................2

*Hybritech Inc. v. Abbott Labs.*,
No. 86-cv-7461, 1987 WL 123997 (C.D. Cal. July 14, 1987)................................................10

*In re Katz Interactive Cell Processing Patent Litig.*,
639 F.3d 1303 (Fed. Cir. 2011)................................................................12

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005)................................................................2, 11

*Polymer Techs., Inc. v. Bridwell*,
103 F.3d (Fed. Cir. 1996)................................................................7, 11

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)................................................................7

*Trebo Mfg, Inc. v. Firefly Equip., LLC*,
748 F.3d 1159 (Fed. Cir. 2014)................................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)................................................................7

*Wreal, LLC v. Amazon.com, Inc.*,
840 F.3d 1244 (11th Cir. 2016)................................................................11

**Statutes**

35 U.S.C. ¶ 112................................................................12

## TABLE OF ABBREVIATIONS

*Parties*

| | |
|---|---|
| Baxalta | Baxalta Incorporated and Baxalta GmbH |
| Chugai | Chugai Pharmaceutical Co., Ltd. |
| Defendants | Genentech, Inc. and Chugai Pharmaceutical Co., Ltd. |
| Genentech | Genentech, Inc. |

*Terms*

| | |
|---|---|
| '590 Patent | U.S. Patent No. 7,033,590 |
| ACE910 | The accused product, also known as HEMLIBRA |
| aPCC | Activated prothrombin complex concentrate |
| aPTT | Activated partial thromboplastin time |
| BPA | Bypassing agent |
| Disclosed Antibodies | Antibodies disclosed in the '590 Patent |
| D.I. 42-1 | Baxalta's Proposed Preliminary Injunction Order |
| D.I. 46 | Declaration of Dr. Louis M. Aledort in Support of Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction |
| D.I. 47 | Declaration of Sriram Krishnaswamy, Ph.D., in Support of Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction |
| D.I. 49 | Declaration of Juan Carlos Almagro, Ph.D., in Support of Plaintiffs' Memorandum in Support of Their Motion for Preliminary Injunction |
| D.I. 108 | Declaration of Jerry A. Hausman, Ph.D., in Support of Genentech's Opposition to Baxalta's Motion for a Preliminary Injunction |
| D.I. 109 | Declaration of Michael U. Callaghan, M.D., in Support of Genentech's Opposition to Baxalta's Motion for a Preliminary Injunction |

D.I. 111                          Declaration of John P. Sheehan, M.D., in Support of
                                  Genentech's Opposition to Baxalta's Motion for a
                                  Preliminary Injunction

D.I. 112                          Declaration of William R. Strohl, Ph.D. in Support of
                                  Genentech's Opposition to Baxalta's Motion for a
                                  Preliminary Injunction

D.I. 124                          Rebuttal Declaration of Juan Carlos Almagro, Ph.D., in
                                  Support of Plaintiffs' Reply Brief for Preliminary Injunction

D.I. 126                          Rebuttal Declaration of Anthony A. Kossiakoff, Ph.D., in
                                  Support of Plaintiffs' Reply Brief for Preliminary Injunction

D.I. 128                          Rebuttal Declaration of Sriram Krishnaswamy, Ph.D., in
                                  Support of Plaintiffs' Reply Brief for Preliminary Injunction

D.I. 154                          Genentech's Memorandum of Law in Opposition to
                                  Plaintiffs' Motion for a Preliminary Injunction

D.I. 158                          Plaintiffs' Claim Construction Opening Brief

emicizumab                        emicizumab-kxwh

ITI                               Immune Tolerance Induction

POSITA                            Person of ordinary skill in the art

## I.      INTRODUCTION

That Genentech devotes two-thirds of its opposition to the public interest factor is telling. Baxalta proposes a carefully tailored carve-out to ensure an injunction would not harm the small segment of hemophilia A patients who may benefit from HEMLIBRA.  Confirming this approach, Genentech's own documents show that ████████████████████████████████ ██████    With this, Genentech's main argument is eviscerated.  And Genentech has little to say on the other injunction factors and nothing that raises a substantial question on the merits.

Genentech's only non-infringement defense rests on a claim construction that would read out entire claim elements and many preferred embodiments. This Court would need to find that the Examiner erroneously left in multiple, dependent claims and that the prosecution history—which Genentech's expert described as "open to interpretation"—is somehow "both clear and unmistakable."  *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016).

Attempting to mount a written description defense, Genentech primarily looks to ████ ██████████████ instead of disclosures within the "four corners" of the patent.  But "[t]he written description requirement requires possession *as shown in the specification*, not as shown by prior experimental work."  *Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1309 (Fed. Cir. 2015) (emphasis in original).  The Disclosed Antibodies of the '590 patent have been *publicly available* for years, but Genentech never bothered to analyze them or test their procoagulant activity.

Genentech and its economist also ignore settled Federal Circuit authority that lost market share, price erosion, and damage to reputation can irreparably harm a patentee.  Genentech's internal analyses confirm that, absent an injunction, ████████████████████████████

## II.     BAXALTA IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

### A.      The Limited Injunction Baxalta Seeks Would Promote the Public Interest

"[T]he purpose of a preliminary injunction is merely to preserve the relative positions of

1

the parties until a trial on the merits can be held." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008) (citation omitted).  The narrowly tailored relief Baxalta seeks does just that. It would not affect the standard of care or the current treatment paradigm for patients whose needs are undisputedly well served on existing therapies.  It also ensures that those patients who *actually* need HEMLIBRA can access it, including those currently receiving it.

### 1.    Genentech Misapplies the Law

Genentech argues the injunction would adversely affect the public health.  D.I. 154 at 12. But Baxalta's proposed carve-out distinguishes this case from those Genentech relies on.  In each, the requested injunction would have removed the product from the market *entirely* without any carve-out to accommodate patients who clinically needed the infringing product.  *Cf.* D.I. 42-1 at ¶ 4 (permitting HEMLIBRA sales to "whose needs are not currently being met").  Courts have relied on similar carve-outs to protect the public interest.  *See, e.g.*, *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988); *Edwards Lifesciences AG v. CoreValve, Inc.*, No. CV 08-91 (GMS), 2014 WL 1493187, at *11 (D. Del. Apr. 15, 2014); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, No. CIV. A. 93-108-JJF, 1993 WL 330532, at *11 (D. Del. July 16, 1993).

Genentech also argues that an injunction would be improper because HEMLIBRA is cheaper than FEIBA.  D.I. 154 at 12-13.  But the law does not limit injunctions to more expensive products.  *See Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("selling a lower priced product does not justify infringing a patent") (internal quotations and citation omitted).[1]  Nor does Genentech cite any case where a drug's alleged convenience was

---

[1] ████████████████████████████████████████████████████

sufficient to overcome a patent owner's exclusivity rights.  *See* D.I. 154 at 3-4, 7-8.  Genentech

also contends that consumers should "have as wide a variety of options as is possible."  *Id.* at 13.

But, if an increase in number of products were sufficient, "courts could never enjoin a drug because

doing so would always reduce a choice of drugs."  *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1381

(Fed. Cir. 2017).  Instead, "[j]ust as a patent owner does not automatically receive an injunction

merely by proving infringement, an accused infringer cannot escape an injunction merely by

producing infringing drugs."  *Id.* (citation omitted).

### 2.    The Proposed Carve-Out Protects the Public Interest

Genentech argues that Baxalta's carve-out is insufficient for three reasons—none of which

warrants denying Baxalta's Motion.  First, Genentech alleges the carve-out is necessary.  Baxalta

agrees.  Second, Genentech calls the carve-out "gibberish"—a notion dispelled by Genentech's

own succinct description of the carve-out criteria.  Third, Genentech labels the carve-out

"dangerous"—an argument Genentech's own documents and experts contradict.

### a.    The Proposed Carve-Out Ensures Patient Safety

█████████████████████████████████████████████████████████

██  It ensures that injunctive relief is "tailored to the present circumstances and the considerable

public interest at issue" by permitting patients with unmet needs to access HEMLIBRA.[2]

*Edwards*, 2014 WL 1493187, at *11.

### b.    The Proposed Carve-Out Is Clear

After succinctly describing Baxalta's proposed carve-out, Genentech contends that it is

---

109:4), but fails to explain why this strong public interest is overcome.  *See Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012).

[2] The patients mentioned in Genentech's Opposition would likely fall into the carve-out either as those currently using HEMLIBRA or not well served by existing therapies.  *Compare* D.I. 154 at 1, 8; D.I. 99, ¶¶ 1-2; D.I. 109, ¶ 57; *and* D.I. 104, ¶¶ 1, 3, *with* D.I. 42-1 at ¶ 4 (carve-out).

 D.I. 154 at 13.  That Genentech can accurately describe the carve-out's criteria shows it is well understood.  Moreover, outside of this litigation,

Genentech also erroneously contends that

And Genentech's own documents state that

c.     **The Proposed Carve-Out Ensures That Patients Have Continued Access To Safe And Effective Products**

Genentech's characterization of the carve-out as "dangerous" is hyperbole.  D.I. 154 at 14. It ignores three critical facts: (i) the majority of patients are well-served by current treatments; (ii) injunctive relief would not affect the standard of care for newly-diagnosed inhibitor patients; and (iii) HEMLIBRA itself poses risks of breakthrough bleeding and adverse events.

_____

[3]

### (i)   The Majority Of Hemophilia A Patients Are Well Treated

Genentech's experts agree that ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████   Indeed, Genentech's internal analyses show that ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████

### (ii)   Newly Diagnosed Inhibitor Patients Have Access To Safe And Effective Therapies

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████   Under the Proposed Order,

newly-diagnosed inhibitor patients who do not benefit from or elect to forgo ITI can still use safe,

effective BPA therapies.  If those therapies do not lead to ███████████████████

███████████████   or the patient has venous access issues, the carve-out applies.

### (iii)   Every Bleed Matters Regardless Of The Product Used

Finally, Genentech argues that ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████   Under this

approach, no infringing drug, medical device, or other health-related product that might benefit some patient could ever be enjoined.[4]  No such categorical exception exists.

In fact, if the critical inquiry is whether one bleed could be catastrophic, ▓▓▓▓▓

▓▓▓▓ the public would be better served by enjoining HEMLIBRA in its entirety.  The parties

agree that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓

▓▓▓▓▓▓▓▓

HEMLIBRA's prescribing information further identifies a risk of thrombotic microangiopathy ("TMA") for HEMLIBRA patients who also use FEIBA to treat breakthrough bleeds.[6] Ex. M, GNE-3325; *see* ▓▓▓▓▓▓▓▓▓▓; D.I. 46, ¶ 21. Since HEMLIBRA cannot be used for breakthrough bleeds, Genentech suggests that a "simple" mitigation strategy is to "avoid" treating breakthrough bleeds with an aPCC (*i.e.*, FEIBA) while using HEMLIBRA.  D.I. 109 ¶ 45.  But it is undisputed that this strategy is not ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓

### 3.   The Proposed Carve-Out Need Not Exempt Non-Inhibitor Patients

Genentech also argues that this Court should not enjoin sales to non-inhibitor patients for whom FDA has not approved HEMLIBRA.  D.I. 154 at 14.  But the lack of FDA approval and the fact that non-inhibitor patients are very well served by Factor VIII replacement therapies show that

---

[4] Genentech wrongly states that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

 r. Aledort testified that ▓

▓▓▓▓▓▓▓

▓▓▓▓▓ Ex. P, Genentech, "FATALITIES," EMICIZUMABINFO.COM.
[5] ▓▓▓▓▓▓▓▓▓▓▓▓▓
[6] Ex. Q, Genentech, "THROMBOTIC MICROANGIOPATHY," EMICIZUMABINFO.COM

no medical necessity would justify denying injunctive relief as to these patients.

**B.      Baxalta Has Shown It Will Be Irreparably Harmed**

**1.      Baxalta Has Already Suffered Lost Sales, Revenue, Market Share, And Price Erosion**

Dr. Hausman, Genentech's expert, admits that

Genentech

attempts to sidestep these admissions

But Baxalta need only show that "irreparable injury is *likely* in the absence

of an injunction," not that it is certain.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22

(2008); *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011) (direct

evidence not required); D.I. 108, ¶ 24.



As the Federal Circuit has noted, once prices are lowered this way, customers

are rarely willing to return to the higher price, resulting in lost goodwill and lost sales.  *See Polymer

Techs., Inc. v. Bridwell*, 103 F.3d at 970, 975-76 (Fed. Cir. 1996).  Indeed, absent preliminary

---

[7] Contrary to Genentech's contention,

r. Hausman also agrees that global trends are "indicative of the trend in
the U.S. market, and it seems clear that HEMLIBRA will displace FEIBA to some extent in the
U.S. market and probably in a significant way."  D.I. 108, ¶ 43; *see Edwards*, 2014 WL 1493187,
at *6 ("developments in the European market provide strong support for Edwards' concerns about
price erosion").

relief, Dr. Hausman admits "the price erosion that occurs before trial would be irreparable after trial." D.I. 108, ¶ 46.

2.    **Baxalta Will Suffer Harm To Its Reputation And Goodwill**

"Where two companies are in competition against one another, the patentee suffers the harm–often irreparable–of being forced to compete against products that incorporate and infringe its own patented invention." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).



Absent an injunction,

That Baxalta has not yet commercialized the '590 Patent is irrelevant. *Trebo Mfg, Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014). Baxalta is entitled to enforce its patent rights and has elected to do so.[9]  *See Douglas*, 717 F.3d at 1345. Dr. Hausman admits that

---

[8] Genentech's documents

███████████████████████████████

### 3.    Baxalta's Losses Cannot Be Remedied By Monetary Damages

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████   But the Federal Circuit

has repeatedly instructed that "[p]rice erosion, loss of goodwill, damage to reputation, and loss of

business opportunities are all valid grounds for finding irreparable harm." *Celsis*, 664 F.3d at 930.

Moreover, the "mere possibility of future monetary damages does not defeat a motion for

preliminary injunction." *Celsis*, 664 F.3d at 930.  If Genentech's "universal assumption" that all

damages are calculable were accepted, "patents would lose their character as an exclusive

right…and become at best a judicially imposed and monitored compulsory license."  *Aria

Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

Genentech also ignores Baxalta's irreparable harm in the non-inhibitor market.  Dr.

Hausman admits that ████████████████████████████████████████████

█████████████████████████████████████████████████   █████████

████████████████████████████████████████████████████

───────────────────────────

████████████████████████████  █  ████████████  █  ██████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████ Indeed, Dr. Hausman admits

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ Ms. Chapman of Genentech also testified that ███████████████

███████████████████████████████████████████████████ Given

this difficulty, Baxalta's damages are not readily quantifiable.

### 4.    The Carve-Out Provision Does Not Negate Irreparable Harm

The parties agree that ███████████████████████████████████████

████████████████████████████████████████ *see Edwards*, 2014 WL 1493187, at

*11; *Hybritech Inc. v. Abbott Labs.*, No. 86-cv-7461, 1987 WL 123997, at *21 (C.D. Cal. July 14,

1987).  As discussed, the proposed carve-out ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Thus, even with the carve-out, the preliminary

injunction ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

### 5.    Baxalta Did Not Delay In Seeking A Preliminary Injunction

Genentech's "delay" argument also is meritless.  The "proper focus of the 'delay' inquiry"

---

11 ████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ The carve-out also would show that Baxalta remains committed to the
Hemophilia A community by ensuring that patients with unmet needs have access to HEMLIBRA
*despite* Genentech's infringement.

is Baxalta's alleged delay in seeking injunctive relief beginning from the date it learned of Genentech's U.S.-based sales activity. *Polymer*, 103 F.3d at 976 (no delay where plaintiff filed suit four months after evidence of infringing activity). Within three weeks of HEMLIBRA's first sale, Baxalta sought a preliminary injunction. *See Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d at 1382 (no delay where plaintiff filed suit within two months of launch).[12] Genentech's argument that Baxalta delayed by agreeing to a June hearing date is nonsense. Genentech requested a later date, and Baxalta opposed, but the Court set the hearing in June.[13] *See* D.I. 86 at 4:16-25.

### C.   Genentech Fails To Raise A Substantial Question of Infringement Or Validity

#### 1.   Genentech Has Not Raised A Substantial Question Of Infringement

Genentech's non-infringement position rests solely on claim construction—*i.e.*, whether emicizumab is an "antibody" within claim 1's scope. D.I. 154 at 20-21.[14] Yet, as detailed in Baxalta's Opening *Markman* Brief, Genentech's arguments contradict the intrinsic evidence and wrongly exclude claimed embodiments. D.I. 158 at 2-13. For example, Genentech's antibody construction requiring identical heavy and light chains would exclude dependent claim 4's bispecific antibodies and ignore the "strong presumption against a claim construction that excludes

---

[12] Genentech's laches cases are unavailing. In *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016), the plaintiff waited over five months after learning that the accused product *was being sold* before seeking a preliminary injunction. In *Graceway Pharms., LLC v. Perrigo Co.*, 697 F. Supp. 2d 600, 606-07 (D.N.J. 2010), the court found laches based on multiple unexplained delays, noting that "the number of days involved, standing alone, is not determinative" of delay.

[13] Mr. Bakewell did not admit ███████████████████████ ████████ Instead, he testified that ██████████████████████████

[14] Genentech does not dispute that emicizumab "binds Factor IX or Factor IXa and increases the procoagulant activity of Factor IXa," as required by claim 1. *See generally* D.I. 154.

a disclosed embodiment." *In re Katz Interactive Cell Processing Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011); *see* D.I. 158 at 2-8.  And Genentech's assertion that Baxalta "surrender[ed]" non-enabled antibody derivatives, including bispecific antibodies" (D.I. 154 at 20) is belied by the fact that claim 4, as issued, included bispecific antibodies.  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003) ("We must presume the examiner did his job.").[15]  Thus, Genentech's non-infringement defense fails to raise a substantial question.[16]

### 2.    Genentech Fails To Raise A Substantial Question Of Validity

Genentech attacks claim 1's validity for lack of written description under 35 U.S.C. ¶ 112. But Genentech distorts the law of written description for antibody genus claims by arguing that "Baxalta has not even tried to satisfy the structure/function approach…." D.I. 154 at 21.  The Federal Circuit has consistently held that "a patentee may disclose *either* a representative number of species falling within the scope of the genus *or* disclose structural features common to the genus so that one of skill in the art can visualize or recognize the members of the genus." D.I. 154 at 21 (quoting *Amgen*, 872 F.3d at 1375-76); *accord AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1299 (Fed. Cir. 2014).

Using the representative species approach, Baxalta's antibody expert, Dr. Almagro, analyzed at least eight antibody sequences diverse in sequence identity (varying from 48–91%) and structure that are representative of the claimed antibody genus.[17]  D.I. 49, ¶¶ 53-92; D.I. 124,

---

[15] Genentech's assertion that bispecific antibodies are antibody derivatives is equally flawed. D.I. 158 at 12-13.  Genentech misrepresents Cao, which never states bispecific antibodies are derivatives (D.I. 112-9), ▮▮▮▮▮▮▮▮

[16] The Japanese Court's ruling on infringement does not change this analysis. *See* D.I. 154 at 9. That ruling involved a different jurisdiction, different patent clams, and a different non-infringement theory.
[17] Genentech wrongly asserts that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Not so.

¶¶ 42-83.  Tellingly, Genentech neither rebuts his methodology nor analyzes the Disclosed Antibodies.  D.I. 124, ¶ 13.

Genentech likewise never contests that emicizumab shares many sequence and structural characteristics with the Disclosed Antibodies.[18]  Nor could it, as Dr. Almagro has shown that emicizumab's sequence is 72% identical to that of the 193/K2 antibody disclosed in the '590 Patent.  D.I. 49, ¶ 73.  Instead, Genentech argues that claim 1's "increase in the procoagulant activity of Factor IXa" is "vast" and "boundless" because it covers any increase in procoagulant activity, regardless of its therapeutic significance.  D.I. 154 at 21-22.  Genentech insists that the representative species must have "therapeutically useful" activity "in a clinically meaningful way." *Id.* at 22-23.  But claim 1 does not require therapeutic activity,

'590 Patent, cl. 1

And, under *AbbVie*, a patentee need not disclose antibodies *functionally* similar to the accused product, but rather antibodies *structurally* similar to that product.  *AbbVie*, 759 F.3d at 1299.[19]

Genentech also argues that

---

[18] Genentech argues that Chugai spent considerable time and effort developing emicizumab.  D.I. 154 at 5-6.  But this evidence is irrelevant to written description,

*See Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1309 (Fed. Cir. 2012) ("[T]he enablement requirement is met if the description enables any mode of *making and using the invention*." (citation omitted)).

[19] *AbbVie*'s representative species approach for written description requires that the patent disclose an antibody specie structurally similar to the accused product.  *AbbVie*, 759 F.3d at 1299.  This differs from the alternative structure-function-correlation test for written description.  *Id.*

██████████████████████████████████████████████

██████████████████████████████  ██████████████. The

claims, however, do not require the use of any assay, █████████████ '590 Patent,

cl. 1██████████████.   In any event, the specification discloses the use of standard and

modified aPTT assays to show the Disclosed Antibodies' procoagulant activity. '590 Patent at

Examples 6-9, 11; *see* D.I. 128, ¶¶ 73, 78; D.I. 124, ¶ 23.  Moreover, as Dr. Sheehan conceded,

██████████████████████████████████████████████

████████████████████████  █████████████████████

████████████  because "[t]he written description requirement requires possession *as shown

in the specification*, not as shown by prior experimental work."  *Allergan*, 796 F.3d at 1309

(emphasis in original); █████████████.

Further, Genentech argues that "[t]he '590 Patent provides no written description of a

bispecific antibody that recognizes Factor IX/IXa with one 'arm' and Factor X with its other

'arm.'" D.I. 154 at 23.  But none of the asserted claims requires a Factor X arm; rather, dependent

claim 4 requires bispecific antibodies without further structural limitations. D.I. 128, ¶ 32. Thus,

Genentech has not raised a question of the '590 Patent's validity—let alone a substantial one.

**D.    The Balance of the Equities Favors Enjoining HEMLIBRA's Sales Subject to
Baxalta's Proposed Carve-Out**

Relying on the testimony of its Franchise Head for Hemophilia, Gina Chapman, Genentech

complains that, post-launch, it would be "extremely difficult, if not impossible" to comply with

---

[20] Genentech contends that "the patent provides data for only one antibody, 193/AD3." D.I. 154 at
22.  But written description does not require "that the disclosure contain 'either examples or an
actual reduction to practice.'" *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190 (Fed.
Cir. 2014) (citation omitted).   Genentech's expert admitted ██████████████

██████████████████████████████████████████████

Baxalta's Proposed Order.  *See* D.I. 154 at 23-24.  But Ms. Chapman admits that ███████

████████████████████████████████████████████████████████████████

███████     ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████, ███████████████████████████████.

Genentech's argument that it would need to know its patients' identities and sell directly

likewise lacks merit.  D.I. 154 at 24.  ██████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

## III.    CONCLUSION

For these reasons, Baxalta respectfully requests that the Court grant its Motion for a

Preliminary Injunction.

May 25, 2018                                    /s/ *Amy M. Dudash*
                                                Jody C. Barillare (Bar No. 5107)
                                                Amy M. Dudash (Bar No. 5741)
                                                **MORGAN LEWIS & BOCKIUS LLP**
                                                1007 N. Orange St. Suite 501
                                                Wilmington, DE 19801
                                                Tel. 302.574.3000

                                                Margaret A. McGreal (admitted *pro hac vice*)
                                                Jessica A. Stow (admitted *pro hac vice*)
                                                Julie S. Goldemberg (admitted *pro hac vice*)
                                                **MORGAN, LEWIS & BOCKIUS LLP**
                                                1701 Market Street
                                                Philadelphia, PA 19103
                                                Tel. 215.963.5000

Michael J. Abernathy (admitted *pro hac vice*)
Sanjay K. Murthy (admitted *pro hac vice*)
Jason C. White (admitted *pro hac vice*)
Christopher J. Betti (admitted *pro hac vice*)
Amanda S. Williamson (admitted *pro hac vice*)
Jennifer M. Dienes (admitted *pro hac vice*)
Maria E. Doukas (admitted *pro hac vice*)
Jesse T. Dyer (admitted *pro hac vice*)
Caroline S. Lourgos (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, Fifth Floor
Chicago, IL 60601
Tel. 312.324.1000

Karon N. Fowler (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Tel. 650.843.4000

***Attorneys for Plaintiffs***

-16-