

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---

BAXALTA INCORPORATED and
BAXALTA GMBH,

                    Plaintiffs,

          vs.                                            Civil Action No. 1:17-cv-00509-TBD

GENENTECH, INC. and
CHUGAI PHARMACEUTICAL CO., LTD.,

                    Defendant.

---

**BRIEF OF *AMICUS CURIAE* PATIENTS FOR ACCESS TO**
**ADVANCED HEMOPHILIA THERAPY**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR A**
**PRELIMINARY INJUNCTION**

**INTEREST OF *AMICUS CURIAE***

PAAHT is a group of hemophilia patients who have come together for the purpose of

ensuring that all hemophilia patients in the United States have uninterrupted access to the most

advanced and superior treatments the pharmaceutical market can provide until a cure is found. As

hemophilia patients, we have a direct interest in the decision of the court on whether to grant

Plaintiff's motion for a preliminary injunction against Defendants because we, along with other

hemophilia patients and caregivers, will be impacted should the injunction be granted as our access

to a life sustaining medication, i.e., Hemlibra, would immediately cease. To be clear, PAAHT's

sole interest is in ensuring continued access to Hemlibra for ourselves and the wider hemophiliac

community.  We take no position on the merits of the patent infringement case itself.

PAAHT volunteers prepared this brief. No assistance was requested or provided by counsel for Plaintiffs or Defendants, nor were any monetary funds sought or received from them. PAAHT notified counsel for both sides in advance of our intent to file this brief. Plaintiff Baxalta's counsel Michael J Abernathy indicated that Plaintiff will oppose the proposed "motion for leave to file an amicus brief (or in the alternative to intervene) for the limited purpose of opposing the sought preliminary injunction." Defendant Genentech's counsel Eric Stone states that Genentech does not oppose our filing an amicus brief. Defendant Chugai's counsel Brian M. Kramer states that "Chugai does not oppose your motion for leave to file an amicus brief. I note that Chugai is not a party to the motion for a preliminary injunction, so it is unclear whether Chugai's consent is needed. "

## BACKGROUND

Hemophilia is a unique rare disease. We cannot think of another disease for whom the patients are so heavily dependent upon the pharmaceutical industry. Our relationships with the pharmaceutical industry have had its ups and downs since the 1950s. Through it all however, there have been truly beneficial disruptive technologies over the last fifty years.

When the first plasma-derived freeze-dried Factor VIII entered the market in 1968, stopping and controlling bleeding no longer had to be performed in a hospital setting. The companies (including predecessors of the Plaintiffs) of those days produced the products that enabled home treatment by a trained caregiver and self-infusion. Bleeds were treated more quickly on demand. School attendance went up. Some working patients could even keep factor at their places of work to have at the ready should a bleed occur. Patients could begin to travel outside the range of hospitals and Hemophilia Treatment Centers. Surgery became possible. Children would no longer have to face joint and muscle deterioration that result from multiple bleeds. Patients could

2

envision living near—normal lives. In short, patients, their doctors, families and caregivers could breathe a sigh of relief and not have to think about hemophilia every moment of the day.

Unfortunately, hemophiliacs hit a couple of major setbacks along the way. We refer to the tragedies of the 1980s when it became evident that our factor treatments were contaminated with viruses, including Hepatitis C, and HIV, the virus that causes AIDS. The actions and inactions by the pharmaceutical industry, including the Plaintiffs' predecessors, those of the Federal government regulators, and even the National Hemophilia Foundation are well—documented, and need not be belabored here.[1]

Subsequently, there were improvements in clotting products which addressed the viral contamination issue. Then, recombinant DNA technology led to the pharmaceutical industry's production of non-plasma therapies. Prophylactic treatment became available. While a huge benefit in terms of safety, for all practical purposes, the ability to stop or prevent bleeds did not really change as a result of such advances. More recently, extended half-life (EHL) clotting Factors became available in recent years. Again, patients benefited from needing to infuse less often (mostly from 3 x week to 1 or 2 x week). But, these EHL products are no better at treating a typical bleed than the shorter-acting products.

For hemophilia A patients who have inhibitors to Factor VIII, available treatment choices until recently were limited to one plasma-derived product manufactured by the Plaintiffs, and a recombinant product manufactured by a competitor. They are referred to as "bypass agents" in that they manage to aid clotting without the need for Factor VIII.

What all of the above replacements and bypass agents had and have in common is that they

---

[1] We urge those who may not know or want to know more about the "hemophilia holocaust" to watch a 80-minute documentary called "Bad Blood: A Cautionary Tale, released in 2010. Available for streaming for free from Amazon Prime, and on iTunes for a low rental fee.

must be administered intravenously. One need only look at the veins on the hands and arms of a severe hemophiliac to see the scarring from hundreds and thousands of sticks. Indeed, many of us have veins that look like those of drug addicts. Parents and caregivers face the unenviable challenge of finding and accessing accessible veins in order to infuse to children and babies. Some parents, in consultation with their pediatricians and health care professionals, have had to go so far as to have ports surgically placed in their children's chests to ease infusions. However, ports can pose their own set of problems including systemic infection.

Given all of the above, the hemophilia community welcomes the latest disruptive technology in hemophilia treatment: Hemlibra (emicizumab). Hemlibra is a first—in—class novel therapy that has proven more effective than currently available treatments in prophylactic use. And, for the first time in the history of hemophilia treatment, it is injected subcutaneously.

Moreover, the beneficial effects of Hemlibra remain active in the body much longer than even the EHF, thereby providing a superior prophylactic experience for the patient. Hemlibra was approved with an indication for inhibitor patients after designation as a 'Break Through' therapy, a fast-track to drug approval which may be granted when FDA determines that there is "preliminary clinical evidence that demonstrates the drug may have substantial improvement on at least one clinically significant endpoint over available therapy." **Significantly, last month, FDA granted Break Through therapy designation for fast track evaluation whether Hemlibra should be indicated for non-inhibitor patients.  This designation indicates that FDA has concluded that the current therapies for non-inhibitor Hemophilia are not ideal, and that there are strong, albeit not fully proven, indications that Hemlibra will provide substantial benefit to non-inhibitor patients.** What brings PAAHT to file this *amicus* brief is that in the instant case, the hemophilia community is caught in the middle of a patent infringement dispute that could result in minimal, or no, patient access to Hemlibra if the court were to grant Plaintiff's motion for a

4

preliminary injunction.

Plaintiffs manufacture and market the current preferred prophylactic treatments for hemophilia A. We appreciate that Plaintiffs have an interest in protecting their product from illegal infringement. But, irrespective of the merits (or lack thereof) of the infringement claim, we maintain they are protecting their intellectual property in the wrong way in seeking an injunction.

PAAHT is cognizant of the enormous commitments and investment pharmaceutical companies undertake in researching, developing, testing, and gaining FDA approval to bring new drugs to market. We understand that patents help to provide incentives for pharmaceutical companies to develop new drugs and that patent holders have the right to defend against patent infringement. Pharmaceutical companies need to realize a return on their investments through profits which can be directed toward new research and development activities.

When patent infringement challenges occur, there are several alternative ways and forums for the parties to address them. It is our understanding that in most cases where a finding is made that a pharmaceutical patent has been infringed, the end result is that the infringing party compensates the patent holder at some agreed, or ordered, —upon amount of money in exchange for a license or other vehicle that allows the drug to remain on the market. Most of the time, patients who use the drug involved in the patent dispute are not caught in the middle and continue to have access to the drug while the legal process proceeds. As PAAHT will argue, the majority of hemophilia patients *will* either lose or possibly never have access to Hemlibra should Plaintiff's motion be granted: some immediately; most in a matter of months.

This is an exciting and revolutionary time for the hemophilia community.[2] There are many promising treatment advances under study and development, including potential one-and-done gene

---

[2] Statement of Steven Pipe, M.D., Chair, National Hemophilia Foundation, Medical and Scientific Advisory Council, February 12, 2018.

therapy cures for both hemophilia A and B. PAAHT views Hemlibra as the latest and most

advanced hemophilia A treatment currently available to patients with Factor VIII inhibitors and,

hopefully, to all Factor VIII patients. Yet, there will always be a need for Factor and inhibitor

bypassing agent products at least for the foreseeable future. Such products are still needed to treat

breakthrough bleeds and, in all likelihood, for surgical procedures. In addition, mild to moderate

hemophilia A patients who normally treat on demand with Factor VIII may choose to stay with

their current regimen. Or, they may not be able to convince their insurers to switch to Hemlibra

prophylactic treatment due to the dramatic increase in costs.

## ARGUMENTS

## I.   PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION FROM THE COURT USURPS THE ROLE OF THE U.S. FOOD AND DRUG ADMINISTRATION.

PAAHT is aware that pharmaceutical patent infringement cases are fairly common in the

United States. We understand that most cases center around the introduction of a generic or

biosimilar version of the patented drug. In fewer cases, disputes involve drugs with similar, though

not identical characteristics, which have been approved to treat the same medical conditions.[3] Such

is not the case now before the court; rather, Hemlibra is a first-in-class drug for which no FDA-

approved alternative is available to the hemophilia community. PAAHT contends that the FDA, not

a pharmaceutical company, is the proper authority to determine which drugs can be marketed as

well as the prescribing criteria (e.g., indications, instructions, labeling and warnings). PAAHT is

deeply concerned about the Plaintiffs' motion and the legal precedent it could set if the court were

to grant a preliminary injunction. Because Plaintiff's brief on its motion before the court is sealed,

---

[3] Amgen v. Sanofi, Civ. No. 14-1317-SLR, U.S. Court of Appeals, 2017-1480, October 5, 2017.

PAAHT is relying on its purported provisions as reported by the press and on a draft copy in our possession. PAAHT has raised its concerns to the FDA about what would amount to a commerce—driven, court—ordered restriction on drug access to an FDA-approved drug for use by Factor VIII inhibitor patients by filing a petition requesting a public hearing on the possible effects on the medical system.[4] A decision on our petition by the FDA is pending.

## II.     SOME HEMOPHILIA A PATIENTS WITH INHIBITORS WILL NO LONGER HAVE ACCESS TO HEMLIBRA IF THE PLAINTIFF'S MOTION IS GRANTED.

According to the World Federation of Hemophilia, there were 811 hemophilia A patients with Factor VIII inhibitors in the United States as of 2016.[5] We suspect that figure is lower than the actual number, which is unknown. PAAHT is cognizant of the so-called "carve-out" that would allow Defendants to market HEMLIBRA to some, but not all, hemophilia A patients with inhibitors to Factor VIII. PAAHT maintains that given the relatively small number of Factor VIII inhibitor patients, no irreparable harm to Plaintiffs will occur even if *all* of these inhibitor patients had access to Hemlibra.

We believe that no pharmaceutical company should be authorized to dictate criteria and conditions that patients must meet and demonstrate to the company's satisfaction in order to access a drug. Nor do we believe that this is even feasible given the many federal and state privacy laws. As Defendants have informed the court, pharmaceutical companies do not market specialty products directly to patients. Nor do patients report about their use of drugs to pharmaceutical companies (beyond participating in clinical trials or to report adverse effects). Plaintiffs are in the

---

[4] Citizen Petition from Patients for Access to Advanced Hemophilia Therapy, FDA-2018-P-1441-0001, filed electronically on April 8, 2018.

[5] Report on the Annual Global Survey 2016, World Federation of Hemophilia, Table 9, p. 39.Table 7.

business of manufacturing current inhibitor treatments. Life for a hemophilia patient with an inhibitor is difficult enough without Plaintiffs or the Court creating new barriers to treatment when such matters should be based on patient needs and doctor expertise. Plaintiffs should be more compassionate about clearing the way for all inhibitor patients to access the most advanced treatment available.

Decisions about drug approval and prescribing criteria belong to the FDA, not the courts. And certainly not to competing pharmaceutical companies.  Within the domain of FDA-approved therapies, decisions as to the best option for an individual patient is best made by patients in consultation with their doctors. Competition results in advancement, even in transformative treatments. PAAHT understands that Plaintiffs are currently in the process of researching and developing their own subcutaneous hemophilia treatments. We believe that is the appropriate way for Plaintiffs to keep or gain market share.

### III.   ALL HEMOPHILIA A PATIENTS WITHOUT INHIBITORS WHO CURRENTLY ARE ON HEMLIBRA WILL NO LONGER HAVE ACCESS IF THE PLAINTIFF'S MOTION IS GRANTED.

Defendants have two studies in different stages of completion for hemophilia A patients without inhibitors. These studies are known as HAVEN 3 and HAVEN 4. The HAVEN 3 study evaluates such patients over the age of 12. The HAVEN 3 study included 152 patients.[6] The HAVEN 4 study evaluates different Hemlibra dosing options among 48 patients with hemophilia A both with and without inhibitors to Factor VIII.[7] Results reported this month from the Haven 3

---

[6] FDA Grants Breakthrough Therapy Designation For Genentech's HEMLIBRA® (emicizumab-kxwh) in Hemophilia A Without Inhibitors, Genentech Press Release dated April 16, 2018 found at https://www.gene.com/media/press-releases/14713/2018-04-16/fda-grants-breakthrough-therapy-designat on May 10, 2018.

[7] Genentech's HEMLIBRA (emicizumab-kxwh) Every Four Weeks Controlled Bleeds in Phase III Study in Hemophilia A, Genentech Press Release dated December 6, 2017 found at: https://www.gene.com/media/press-releases/14696/2017-12-06/genentechs-hemlibra-emicizumab-kxwh-ever, 2018.

and 4 clinical trials support expectations that Hemlibra can control Hemophilia bleeds safely and more effectively than conventional therapies. These 152 HAVEN 3 patients and some of the 48 HAVEN 4 patients would no longer have access to Hemlibra if the Plaintiffs motion is granted. Decisions about how to treat hemophilia A patients with and without inhibitors should be made jointly by patients in consultation with their doctors and not be based on the legal machinations of those in the business of marketing some of the current, likely inferior, treatments for hemophilia A.

## IV.   IF PLAINTIFFS MOTION IS GRANTED, THE MAJORITY OF HEMOPHILIA A PATIENTS WILL BE BLOCKED FROM ACCESSING HEMLIBRA.

According to the World Federation of Hemophilia, there were 12,996 hemophilia A patients in the United States in 2016.[8] Subtracting the 811 hemophilia A patients with inhibitors yields 12,185 as the total of hemophilia A patients without inhibitors.

PAAHT anticipates that Hemlibra will come to market for all hemophilia A patients by the end of 2018 or the beginning of 2019, absent new evidence of problems with the drug. Given this context, Plaintiff's motion, if granted, would bar Defendants from marketing Hemlibra to the vast majority of hemophilia A patients in the United States, preventing some 12,185 hemophilia patients from enjoying a possibly more effective, less invasive, treatment regime. PAAHT understands that Plaintiffs already tried to block Hemlibra from reaching the market in Japan. Plaintiffs went so far as to request the Japanese court to order the destruction of the existing inventories of medicine.[9] Ultimately, Plaintiffs lost their Japanese patent infringement case.[10]

---

[8] Report on the Annual Global Survey - 2016, World Federation of Hemophilia, Table 7, p.35.
[9] Roche announces Japanese court ruled in favour of Chugai in Hemlibra patent litigation, March 28, 2018.
[10] An Open Letter to the Haemophilia Community Regarding Patient Access to HEMLIBRA® (emicizumab), Roche, January 11, 2018.

### a.   THE FDA'S FAST—TRACK APPROVAL PROCESS OF HEMLIBRA FOR HEMOPHILIA A PATIENTS WITHOUT INHIBITORS COULD BE IMPACTED.

It is possible that if the Plaintiffs motion were granted, Defendant's remaining work under its HAVEN 3, HAVEN 4 and possibly other studies would have to be curtailed.  This would effectively delay or prevent the FDA from completing its fast—track approval process for Hemlibra for use by hemophilia A patients without inhibitors.  Affected patients would amount to collateral damage and would have to continue, or revert, to using existing Factor VIII replacement therapies that appear to be inferior to prophylactic treatment using Hemlibra.

### V.   PLAINTIFFS WILL NOT BE IRREPARABLY HARMED WHEN HEMLIBRA COMES TO MARKET FOR HEMOPHILIA A PATIENTS.

On May 9, 2018, Plaintiffs' parent company, Shire, accepted a takeover bid by Takeda Pharmaceutical Company, Ltd., of Japan. Christophe Weber, President and CEO at Takeda, was quoted by the press as having said: ""We are very much aware of the competitive pressure in hemophilia with the Roche compound. Being aware means we are also very conservative in our forecasts," said Weber. "When it comes to hemophilia, I think there is still a big debate about the level of erosion."[11] The article also noted that "A curative gene therapy of Shire is just in Phase I testing." PAAHT agrees. The hemophilia pharmaceutical market is widely diverse.[12] BDIPharma has produced several summary tables about currently approved Factor VIII and IX products, among others. They show eleven FDA-approved recombinant and five plasma-derived Factor VIII products

---

[11] Shire accepts €52.4bn takeover bid by Takeda, found at https://european-biotechnology.com/up-to-date/latest-news/news/shire-accepts-eur524bn-takeover-bid-by-takeda.html on May 12, 2018.
[12] Reference Charts, found at http://bdipharma.com/comparison-charts on May 12, 2018.

produced or distributed by nine major pharmaceutical companies.[13] This is in addition to products for other bleeding syndromes including Von Willebrand disease , hemophilia C,  and treatments for patients with inhibitors to Factors VIII or IX.  The United States hemophilia market is highly competitive. Moreover, there are dozens of potentially new drugs in various stages of development in the pipeline, including those of the Plaintiffs. Clearly, Hemlibra, once approved for all hemophilia A patients, will be one of many prophylactic treatments available from an additional pharmaceutical company. Patients who may switch to Hemlibra will not be drawn solely from the Plaintiffs; rather, they will transition, to varying degrees, from each of the producing/distributing pharmaceutical companies over time.

## VI.   A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST.

Americans are fortunate to have the most advanced healthcare system in the world. Our medical system includes renowned doctors, skilled health care providers, state—of—the—art facilities and well over 1,500 FDA—approved drugs (not counting generics). Most people become patients at some time in their lives. Moreover, much of American medicine's modern focus is on prevention of disease. Clearly, the public benefits from having the ability to select the most optimal treatments and preventive medications in consultation with their doctors and health care providers. **Restricting access to FDA approved drugs for anything other than safety, efficacy or other medical reasons runs counter to the public interest.**

The hemophiliac community is thankfully a small one, but the stakes to the afflicted are gargantuan.  Imagine for a moment that in the early 1960's Jonas Salk and the backers of his 'killed virus' vaccine had successfully sought to enjoin the introduction of Albert Sabin's more easily distributable oral polio vaccine on the grounds of patent infringement.  Many millions of children

---

[13] Parent companies are Bayer, CSL, Grifols, Kedrion, Novo Nordisk, Octapharma, Pfizer, Sanofi and Shire (acquisition by Takeda slated for completion in 2019).

would have never been vaccinated against polio. Such a sought injunction, regardless of its merits, should never be countenanced by any court in this country. Without exaggeration, PAAHT submits that the reality of the instant circumstances is, for the hemophiliac community, no different from the hypothetical above. If Plaintiff's underlying claims are meritorious certainly the legal system can fashion a remedy that would not cause such substantial harm to hemophiliacs throughout America.

## CONCLUSION

In light of the foregoing, PAAHT submits that Plaintiff's sought preliminary injunction should be denied.

Dated: May 25, 2018,                              Respectfully submitted,


Mark Antell
/s/ Mark Antell
accessadvancedtherapy@gmail.com
1573-301 N. Colonial Terrace
Arlington, VA 22209
Tel: (202) 580-8361


Raymond Dattoli
/s/ by Mark Antell for Raymond Dattoli by explicit permission
Dillem1960@hotmail.com
433 Fireberry Dr
Rockwall TX 75087
Tel: (214) 298 7642


Chad M. Blair
/s/Mark Antell for Chad Blair by explicit permission
chad.m.blair@gmail.com
913 Randel Rd.
Oneida, NY 13421
Tel:(315) 727-0785


Stephen F. Long
/s/ by Mark Antell for Stephen F. Long by explicit permission

Stevemdc@cox.net
6417 Inwood Dr

Springfield, VA 22150
Tel: (703) 971-3785

George M. Stone, Jr.
/s/ by Mark Antell for George M. Stone, Jr by explicit
permission.
geostone@aol.com
114 Cloak Ln
Lake Frederick, VA 22630
Tel: (703) 815-6069

Richard Vogel
/s/ by Mark Antell for Richard Vogel by explicit permission
rvogel@msn.com
25 Beekman Road
East Brunswick, NJ 08816
Tel: (732) 991-7373

The Committee of Ten Thousand* (COTT, Action = Life)
Carl Weixler, President of COTT
/s/ by Mark Antell for Carl Weixler by explicit permission
carlhfa@windstream.net
327 Hannah Todd Place
Lexington, KY 40509
Tel: (859) 608-3789

The Abigail Alliance for Better Access to Developmental Drugs**
Frank Burroughs, President of the Abigail Alliance
Steven Walker, Co-founder of the Abigail Alliance
/s/ by Mark Antell for Frank Burroughs and Steve Walker by explicit
permission.
www.abigail-alliance,org
8881 White Orchid Place
Lorton, VA 22079-5696
Tel: (540) 899-3766]

* The Committee of Ten Thousand (Action =Life) is a grass-roots, peer-led, education, advocacy
and support organization for persons with HIV disease. The majority of our constituency is persons
with hemophilia who contracted HIV/AIDS from tainted blood products.  See more about the
Committee of Ten Thousand @www.COTT1.Org.

** The Abigail Alliance for Better Access to Developmental Drugs is committed to helping create
wider access to developmental cancer drugs and other drugs for serious life-threatening illnesses.
The Alliance is promoting creative ways of increasing expanded access and compassionate use
programs. We are working to help promote creative ideas to get promising new drugs to the market
sooner. See more about the Abigail Alliance @http://abigail-alliance.org/

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Motion for Leave to File *Amicus Curiae* Brief in Opposition to Plaintiff's motion for preliminary injunction and the attached Brief of PAAHT as *Amici Curiae* in Opposition to Plaintiff's Motion for Preliminary Injunction were served this XX day of May, 2018, upon the following counsel for Plaintiffs Baxalta Incorporated and Baxalta GMBH and for Defendants Genentech, Inc. and Chugai Pharmaceutical Co., Ltd., by mail and email as follows:

<u>Counsel for Plaintiffs</u>

Michael J. Abernathy
mike.abernathy@morganlewis.com
(by mail and email)

Jody Barillare
jody.barillare@morganlewis.com

Christopher J. Betti
christopher.betti@morganlewis.com

Colm F. Connolly
colm.connolly@morganlewis.com

Jennifer M. Dienes
jennifer.dienes@morganlewis.com

Maria E. Doukas
maria.doukas@morganlewis.com

Amy Michele Dudash
amy.dudash@morganlewis.com

Jesse T. Dyer
jesse.dyer@morganlewis.com

Caroline Lourgos
caroline.lourgos@morganlewis.com

Sanjay K. Murthy
sanjay.murthy@morganlewis.com

Jason C. White
jason.white@morganlewis.com

Amanda S. Williamson
amanda.williamson@morganlewis.com

Counsel for Defendants

Stephen J. Balick
(by mail and email)
sbalick@ashbygeddes.com

David E. Cole
dcole@paulweiss.com

David C. Doyle
ddoyle@mofo.com

David M. Fry
dfry@shawkeller.com

Kenneth A. Gallo
kgallo@paulweiss.com

Jennifer Gordon
jengordon@paulweiss.com

Nicolas P. Groombridge
ngroombridge@paulweiss.com

Stephen D. Keane
skeane@mofo.com

Karen Elizabeth Keller
kkeller@shawkeller.com

Brian M. Kramer
bmkramer@mofo.com

Andrew Colin Mayo
amayo@ashbygeddes.com

John W. Shaw
jshaw@shawkeller.com

Eric A. Stone
estone@paulweiss.com

/s/ Mark Antell
Mark Antell