IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BAXALTA INCORPORATED and BAXALTA GMBH, <br><br> Plaintiffs, <br><br> v. <br><br> GENENTECH, INC. and CHUGAI PHARMACEUTICAL CO., LTD., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **PUBLIC VERSION** <br><br> C.A. No. 17-509-TBD |

## LETTER TO THE HONORABLE TIMOTHY B. DYK FROM STEVEN J. BALICK

*Of Counsel:*

Kenneth A. Gallo
David E. Cole
PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
2001 K. Street, NW
Washington, D.C. 20006-1047
(202) 223-7300

Nicholas Groombridge
Eric Alan Stone
Jennifer Gordon, Ph.D.
PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Dated:  June 9, 2018

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant Genentech, Inc.*

**ASHBY & GEDDES**

ATTORNEYS AND COUNSELLORS AT LAW
500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

PUBLIC VERSION

June 9, 2018

The Honorable Timothy B. Dyk
United States Court of Appeals for the Federal Circuit
717 Madison Place N.W.
Washington, D.C. 20439        *Baxalta Inc. et al.* v. *Genentech et al.*, No. 17-00509 (D. Del.)

Dear Judge Dyk:

Genentech respectfully submits this supplemental letter brief addressing the claim terms at issue on Baxalta's motion for a preliminary injunction.

## I.   "ANTIBODY," "ANTIBODY FRAGMENT," and "BISPECIFIC ANTIBODY"

Baxalta seeks to deny the history of its own patent. As filed, claim 1 covered "An antibody or <u>antibody derivative</u> against factor IX/factor IXa . . . ." [D.I. 112-04 at GNE-1757 (emphasis added).] Throughout the application, the inventors referred to "the antibodies and antibody derivatives of the present invention." [D.I. 112-04 at, *e.g.*, GNE-1710.] But the Examiner rejected the claims because the application did "not reasonably provide enablement for <u>any antibody derivative</u> against factor IX/factor IXa which increases the procoagulant activity of" factor IXa, specifically including where said "antibody derivative is … <u>bispecific antibodies</u>." [D.I. 112-11 at GNE-1807 (emphases added).] Baxalta sought to overcome this rejection, but the Examiner stood firm. [*See* D.I. 112-12 at GNE-1821-1825; D.I. 112-13 at GNE-1829.] In a telephonic interview, the Examiner proposed amending the claims "to recite antibody <u>fragment</u> thereof to substitute [for] antibody derivative," which Baxalta then did. [D.I. 112-14 at GNE-1833 (emphasis added); D.I. 112-15 at GNE 1839.] Genentech's constructions reflect that Baxalta surrendered antibody derivatives to obtain the '590 Patent.

### A. "Antibody"

Column 5 of the '590 Patent contains a section entitled "Antibodies and Antibody Derivatives." [D.I. 1-1 at 5:51.] Right up front, this section provides an explicit definition of "antibodies." [*Id.* at 5:56-63; D.I. 112-04 at GNE-1705; D.I. 176 at 6-8.] "Antibody" is an immunological term of art, and the patent language tracks definitions of "antibody" in three sources cited in the patent and a definition propounded by one of Baxalta's experts. [D.I. 112-6 at GNE-00001773; D.I. 112-5 at GNE-00001764; D.I. 112-9 at GNE-00001793; D.I. 49 ¶ 34.] It even matches language in *AbbVie Deutchland GmbH* v. *Janssen Biotech, Inc.*, 759 F.3d 1285, 1290-91 (Fed. Cir. 2014) ("Each antibody consists of four chains of amino acids, two identical heavy chains and two identical light chains[.]"). None of Baxalta's arguments is a reason to depart from the patent's definition.

**First**, Baxalta notes that "antibodies" is not set off in quotation marks or preceded by, *e.g.*, "as used herein." [D.I. 158 at 7.] No such orthography is required. The question is whether the patentee "clearly set forth a definition of the disputed claim term in either the specification or prosecution history." *CCS Fitness, Inc.* v. *Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). Genentech is not cobbling together a definition from isolated phrases in the patent. A skilled artisan looking to see how the '590 Patent defines "antibody" would look at the section entitled "Antibodies and Antibody Derivatives" and find this very definition. [D.I. 112, ¶ 47.]

**Second**, Baxalta relies on claim differentiation, arguing that "antibody" in Claim 1 cannot be limited to antibodies with identical heavy and identical light chains because a "bispecific antibody"—which does not have identical heavy and light chains—is an embodiment in dependent Claim 4. [D.I. 158 at 4.] The doctrine of claim differentiation is "not a hard and fast rule," but rather a rebuttable presumption that "will be overcome by a contrary construction dictated by the written description or prosecution history." *Regents of the Univ. of Cal.* v.

*Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1375-76 (Fed. Cir. 2008). During prosecution, the Examiner rejected the claims because all antibody derivatives, including bispecific antibodies, were not enabled. Baxalta then deleted "antibody derivative" from its claims to secure allowance. Baxalta cannot now rely on bispecific antibodies in Claim 4 to broaden the definition of "antibody" in Claim 1. "The dependent claim tail cannot wag the independent claim dog." *N. Am. Vaccine, Inc.* v. *Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993). Thus, in *Regents* the Federal Circuit affirmed a construction of "heterogeneous mixture" that excluded certain sequences even though dependent claims recited them. 517 F.3d at 1375-76.

**Third**, Baxalta suggests that the column 5 definition is too narrow because it would exclude antibodies made other than in an animal system and would exclude IgM and IgA antibodies. [D.I. 158 at 3-5.] Baxalta is wrong. As Genentech's expert Dr. Strohl explains, antibodies meeting that definition can be made in non-animal systems, *e.g.* by hybridomas or genetically engineered cells. [D.I. 161 ¶ 52.] And IgM and IgA antibodies, though they may ultimately comprise several antibody molecules, are produced from a basic antibody unit containing identical pairs of heavy and light chains. [D.I. 161 ¶ 58.]

### B. "Antibody Fragment"

Genentech's construction requires that a fragment "partially or completely lack[] the constant region." [D.I. 176 at 9.] "Fragment," too, is a term of art, and in identifying canonical fragments the '590 patent notes that they "partially or completely lack the constant region." [D.I. 1-1 at 6:20-22.] Baxalta's definition ignores immunology. [D.I. 161 ¶¶ 67-72]

The significant issue here, though, is whether "antibody fragment" should "exclude[] all other forms of antibody derivatives." [D.I. 176 at 9.] Baxalta's surrendering of "antibody derivative" and substitution of "antibody fragment" compels this construction. When a claim is narrowed to overcome a rejection, the patentee is bound by the narrowing amendment. *I.T.S.*

*Rubber Co.* v. *Essex Rubber Co.*, 272 U.S. 429, 443 (1926); *accord Schriber-Schroth Co.* v. *Cleveland Tr. Co.*, 311 U.S. 211, 218 (1940). Baxalta cites no contrary case. Instead, it relies on a case that did not even involve a claim amendment, *see Avid Tech., Inc.* v. *Harmonic, Inc.* 812 F.3d 1040, 1045 (Fed. Cir. 2016), and a case in which the basis for the Examiner's rejection was unclear, *see Cordis Corp.* v. *Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009).

Here, the Examiner explicitly stated that <u>all</u> antibody derivatives other than fragments were not enabled, and insisted on the claim amendment to allow the patent. Baxalta cannot now "seek to recapture in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (2002). Nor can Baxalta pretend that the '590 Patent uses the terms "antibody fragment" and "antibody derivative" interchangeably. The Examiner certainly did not think so.

C. **"Bispecific Antibody"**

The Examiner twice described a bispecific antibody as an "antibody derivative" [D.I. 112-11 at GNE-1807; D.I. 112-12 at GNE-1821-1825], which is how a skilled artisan would understand that term [D.I. 161 ¶¶ 93-96]. Every type of bispecific antibody named in the patent is an antibody derivative. [D.I. 1-1 at 7:34-36; D.I. 161 ¶¶ 97-102.] ██████████████████████████████████████

The Cao & Suresh paper—the only cited source of information about bispecific antibodies—describes them as "artificially engineered molecules." [D.I. 1-1 at 7:36-37; D.I. 112-9 at 1.] Immune-system cells do not naturally make single-antibody molecules with different binding specificities. [D.I. 161 ¶ 57.] Instead, multiple binding specificities result from artificial engineering using protein chains derived from separate sources. [*Id.* ¶ 104.] And bispecific antibodies have "two different binding specificities within one single molecule" precisely because they do not consist of two identical heavy chains and two identical light chains.

## II. "INCREASING THE PROCOAGULANT ACTIVITY OF FACTOR IXa"

The real dispute here is how to measure an increase in the procoagulant activity of Factor IXa. Genentech's construction, that an increase may be "determined by any assay used to measure Factor VIII-like activity," reflects the specification. Baxalta argues that "Factor VIII-like activity" is different than "increasing the procoagulant activity of Factor IXa," with Factor VIII-like activity assessed through a chromogenic assay and procoagulant activity of Factor IXa assessed through a coagulation test. [D.I. 158 at 18-19.]

The patent rejects Baxalta's distinction, and uses the terms interchangeably: "certain anti-FIX/FIXa antibodies have <u>FVIII-like activity and hence are procoagulant</u> …." [D.I. 1-1 at 16:56-57 (emphasis added).] Indeed, the inventors used a chromogenic assay to compare the "procoagulant activity" of three antibodies. [*Id.* at 18:56-63 & Fig. 11; D.I. 180-33 at 67:13-18.] And the patent is explicit that procoagulant activity may be measured using chromogenic assays and any other test used to assess Factor VIII activity: "The increase in the procoagulant activity may, *e.g.*, be proven by assaying methods as known from the prior art for the measurement of factor VIII-like activity, *e.g.* chromogenic assays." [D.I. 1-1 at 8:22-25.] Indeed, it reiterates that "<u>all the methods</u> used for determining factor VIII activity may be used," and specifically calls out "chromogenic tests" and the "one step coagulation test" as "test methods to show that the antibodies and antibody derivatives of the present invention . . . increase the procoagulant activity of Factor IXa or have Factor VIII-like activity." [*Id.* 9:14-23 (emphasis added).] And the prosecution history supports this. In an amendment, Baxalta argued that "… the ability to increase the procoagulant activity of Factor IX (e.g., antibodies with Factor VIII-like activity)" could be identified with either "the one step coagulation test or chromogenic tests." [D.I. 112-12 at GNE-00001824.] Baxalta's litigation position—designed to avoid anticipation by prior-art antibodies—cannot be squared with the patent or with its statements to the Examiner.

        Respectfully,

        */s/ Steven J. Balick*

        Steven J. Balick (#2114)

SJB/nlm

cc:    Counsel of Record (via electronic mail)