**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BAXALTA INCORPORATED
and BAXALTA GMBH,

                    Plaintiffs,

         v.

GENENTECH, INC. and
CHUGAI PHARMACEUTICAL CO., LTD.,

                    Defendants.

C.A. No. 17-509-TBD

**PUBLIC VERSION**

**REPLY BRIEF IN SUPPORT OF GENENTECH, INC.'S
MOTION FOR SUMMARY JUDGMENT**

*Of Counsel*:

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

Nicholas Groombridge
Eric Alan Stone
Catherine Nyarady
Jennifer Gordon
Josephine Young
Naz Wehrli
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Kenneth A. Gallo
David E. Cole
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

ASHBY & GEDDES

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendant Genentech, Inc.*

October 15, 2021

# TABLE OF CONTENTS

Page

Preliminary Statement.............................................................................................................1

Standard of Review................................................................................................................2

Argument ..............................................................................................................................3

I.  Section 112:  The '590 Patent Does Not Describe or Enable Antibodies and
Fragments Across the Full Structural and Functional Scope of the Asserted
Claims...........................................................................................................................3

    A.  The '590 Patent Contains No Teaching Allowing a Skilled Artisan to
"Visualize or Recognize" the Members of the Claimed Genus ...................................3

    B.  No Written Description of the Full Structural Scope of the Claimed
Genus........................................................................................................................6

    C.  No Written Description of the Full Functional Scope of Antibodies
and Fragments that Bind Factor IX or IXa ...............................................................8

    D.  No Written Description or Enablement of the Full Functional Scope
of Antibodies and Fragments that Increase the Procoagulant Activity
of Factor IXa.............................................................................................................9

        1.  The Claimed Genus Cannot Be Described by the Screening
Methods Required to Find Its Members ..........................................................9

        2.  As a Matter of Law, Instructing a Skilled Artisan to Screen
Embodiments for Procoagulant Activity Is Not Adequate
Enablement ................................................................................................ 10

    E.  No Written Description of Any Species Representative of
Emicizumab..............................................................................................................12

    F.  No Written Description or Enablement of the Full Functional Scope
of the Claimed Increase in Procoagulant Activity of Factor IXa ..............................13

II.  Non-Infringement:  Baxalta May Not Proceed on a Doctrine-of-Equivalents
Theory .........................................................................................................................15

III.  Willful Infringement and Enhanced Damages:  Baxalta's Claims Are
Insufficient as a Matter of Law ....................................................................................17

    A.  Baxalta's Evidence Cannot Support a Verdict of Willfulness ...................................17

    B.  *Seagate* Forecloses Willfulness after Baxalta's Motion for a
Preliminary Injunction Was Denied ..........................................................................20

Conclusion ...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AbbVie Deutschland GmbH* v. *Janssen Biotech, Inc.*,
   759 F.3d 1285 (Fed. Cir. 2014)...........................................................................7, 8, 13, 14

*Ajinomoto Co.* v. *ITC*,
   932 F.3d 1342 (Fed. Cir. 2019)........................................................................................16

*Amgen Inc.* v. *Sanofi, Aventisub LLC*,
   987 F.3d 1080 (Fed. Cir. 2021)........................................................................8, 10, 11, 14

*Arctic Cat Inc.* v. *Bombardier Recreational Prods. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017)........................................................................................18

*Ariad Pharm., Inc.* v. *Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) (en banc)................................................................3, 4, 6, 7

*Avia Grp. Int'l* v. *L.A. Gear Cal., Inc.*,
   853 F.2d 1557 (Fed. Cir. 1988)..........................................................................................2

*Carnegie Mellon Univ.* v. *Hoffman-La Roche Inc.*,
   541 F.3d 1115 (Fed. Cir. 2008)..........................................................................................5

*Centocor Ortho Biotech, Inc.* v. *Abbott Labs.*,
   636 F.3d 1341 (Fed. Cir. 2011)..................................................................................5, 7, 12

*Enzo Life Scis., Inc.* v. *Roche Molecular Sys., Inc.*,
   928 F.3d 1340 (Fed. Cir. 2019)........................................................................................10

*Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002)....................................................................................................15, 16

*Halo Elecs., Inc.* v. *Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)....................................................................................................20

*Idenix Pharm. LLC* v. *Gilead Scis. Inc.*,
   941 F.3d 1149 (Fed. Cir. 2019)..............................................................................5, 6, 10, 14

*Interactive Pictures Corp.* v. *Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)........................................................................................16

*Jeneric/Pentron, Inc.* v. *Dillon Co.*,
   171 F. Supp. 2d 49 (D. Conn. 2001)................................................................................16

*Juno Therapeutics, Inc.* v. *Kite Pharma, Inc.*,
 10 F.4th 1330 (Fed. Cir. 2021). ........................................................6, 8, 10

*Liebel-Flarsheim Co.* v. *Medrad, Inc.*,
 481 F.3d 1371 (Fed. Cir. 2007) ................................................................14

*Litton Sys., Inc.* v. *Whirlpool Corp.*,
 728 F.2d 1423 (Fed. Cir. 1984), *abrogated on other grounds by*
 *Two Pesos, Inc.* v. *Taco Cabana, Inc.*, 505 U.S. 763 (2000) ....................16

*MagSil Corp.* v. *Hitachi Global Storage Techs., Inc.*,
 687 F.3d 1377 (Fed. Cir. 2012) ................................................................14

*Mentor Graphics Corp.* v. *EVE-USA, Inc.*,
 851 F.3d 1275 (Fed. Cir. 2017) ................................................................20

*Mondis Tech. Ltd.* v. *LG Elecs., Inc.*,
 407 F. Supp. 3d 482 (D.N.J. Sept. 24, 2019) ..........................................19

*Nutrition 21* v. *United States*,
 930 F.2d 867 (Fed. Cir. 1991) ....................................................................2

*Petersen Mfg. Co.* v. *Cent. Purchasing, Inc.*,
 740 F.2d 1541 (Fed. Cir. 1984), *abrogated on other grounds by*
 *Beatrice Foods Co.* v. *New England Printing & Lithographing Co.*,
 899 F.2d 1171 (Fed. Cir. 1990) ..................................................................2

*Pfizer, Inc.* v. *Teva Pharm. USA Inc.*,
 429 F.3d 1364 (Fed. Cir. 2005) ................................................................17

*Plant Genetic Sys., N.V.* v. *Dekalb Genetics Corp.*,
 315 F.3d 1335 (Fed. Cir. 2003) ..........................................................14, 15

*Regents of the Univ. of Cal.* v. *Eli Lilly & Co.*,
 119 F.3d 1559 (Fed. Cir. 1997) ..................................................................4

*Rivera* v. *ITC*,
 857 F.3d 1315 (Fed. Cir. 2017) ................................................................14

*In re Seagate Tech., LLC*,
 497 F.3d 1360 (Fed. Cir. 2007) (en banc), *abrogated on other grounds by*
 *Halo Elecs., Inc.* v. *Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) ...............20

*Shopify Inc.* v. *Express Mobile, Inc.*,
 2021 WL 4288113 (D. Del. Sept. 21, 2021) ............................................18

*SRI Int'l, Inc.* v. *Cisco Sys., Inc.*,
 -- F.4th --, 2021 WL 4434231 (Fed. Cir. Sept. 28, 2021)..................19, 20

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988)............................................................................10

*Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)............................................................................................17

*Wyeth & Cordis Corp.* v. *Abbott Labs.*,
    720 F.3d 1380 (Fed. Cir. 2013)........................................................................10

**Other Authorities**

Fed. R. Civ. P. 56(c)(2)............................................................................................19

████████████████████████████████████████████

iv

## PRELIMINARY STATEMENT

**Section 112:**  The '590 Patent claims a genus defined by two structural requirements (antibodies or antibody fragments that are isolated) and two functional requirements (that bind Factor IX or IXa, and that increase the procoagulant activity of Factor IXa).  Accepting Baxalta's view of the evidence, Genentech seeks summary judgment because the patent neither describes nor enables the full scope of the genus, on either its structural or functional axes.

Baxalta does not suggest that Genentech has mischaracterized Baxalta's evidence.  Nor does Baxalta dispute that a skilled artisan could find new species within the claimed genus only by generating new candidate antibodies and fragments and screening them for the desired procoagulant activity.  Baxalta argues instead that its genus is "small," but that is true only if one looks at the end result:  After screening millions of possible candidates, a skilled artisan might discover very few antibodies to Factor IX or IXa that increase the procoagulant activity of Factor IXa, and fewer still (if any) that increase it enough to be useful as a hemophilia therapy.  The screening would take undue experimentation, if it worked at all.  The '590 Patent therefore has exactly the type of overbroad, functionally-defined genus claims that the Federal Circuit holds are invalid as a matter of law, both for inadequate written description and for insufficient enablement.

**Doctrine of Equivalents:**  ████████████████████████████████████████
████████████████  Baxalta contends the amendment was "tangential" but, with no explanation for the amendment in the public record, it is irrebuttably presumed not to have been tangential under controlling cases.  Based on prosecution history estoppel and also disclosure dedication, Baxalta is precluded from asserting infringement under the doctrine of equivalents.

**Willfulness:**  Baxalta's brief confirms that it plans to tell the jury that Genentech is a willful infringer because ████████████████████████████████████████████████
████.  As a matter of law, that is not willful infringement.

## STANDARD OF REVIEW

It appears that the parties disagree about the procedure applicable to this motion.

Baxalta suggests that summary judgment must be denied because there is a "battle of the experts." (Opp'n Br. 8.) That is wrong. Such a battle precludes summary judgment where the moving party asks the Court to adopt its own experts' views of the facts. Genentech's motion does the opposite, accepting Baxalta's experts' views of the evidence. For example, the parties disagree about whether the antibodies made by the deposited hybridomas disclosed in the '590 Patent provide written description support for the claims; on this motion, Genentech accepts that they do, and thus that the patent discloses eleven antibodies that meet the terms of all but Claim 19.

What Genentech does not accept, and what does not create a dispute of fact, is Baxalta's experts' ultimate conclusions about the sufficiency of the patent's disclosure. To take another example, the parties and their experts agree that the '590 Patent provides no detailed disclosure or examples of humanized or bispecific antibodies, but disagree about whether it must do so. That does not preclude summary judgment; the Court may assess the patent's disclosure as a matter of law. In that regard, an expert's opinion on the ultimate validity question is not "evidence at all," *Nutrition 21* v. *United States*, 930 F.2d 867, 871 n.2 (Fed. Cir. 1991), is thus "neither necessary nor controlling," *Avia Grp. Int'l* v. *L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988), and raises "no issue of fact," *Petersen Mfg. Co.* v. *Cent. Purchasing, Inc.*, 740 F.2d 1541, 1548 (Fed. Cir. 1984), *abrogated on other grounds by Beatrice Foods Co.* v. *New England Printing & Lithographing Co.*, 899 F.2d 1171 (Fed. Cir. 1990). By agreeing here with Baxalta's experts' views on the science, Genentech has presented a motion appropriate for summary adjudication.

**ARGUMENT**

I.     **SECTION 112:  THE '590 PATENT DOES NOT DESCRIBE OR ENABLE ANTIBODIES AND FRAGMENTS ACROSS THE FULL STRUCTURAL AND FUNCTIONAL SCOPE OF THE ASSERTED CLAIMS**

      A.     **The '590 Patent Contains No Teaching Allowing a Skilled Artisan to "Visualize or Recognize" the Members of the Claimed Genus**

The '590 Patent claims a genus of isolated antibodies or antibody fragments (of any isotype or format) that bind Factor IX or IXa (at any binding site) and increase the procoagulant activity of Factor IXa (by any amount in any assay).  The claims are thus generic as to structure, and as to two functional requirements.  The teachings of the '590 Patent would not allow a skilled artisan to "visualize or recognize" the other members of the genus beyond those disclosed in the patent, either by structure or by function.  (Opening Br. 17–26.)

Baxalta responds by skipping over functional breadth and instead detailing how the eleven examples in the patent differ structurally from each other by amino-acid sequence, CDHR3 lengths, presumptive binding sites on Factor IX, and canonical structures.  Here, Genentech accepts those facts about the eleven examples as true, but none of them provides written description for, or shows possession of, a genus extending beyond those eleven examples.  They just show that eleven species within the genus have amino acid sequences that differ from each other.  The legal question is whether, from those eleven disclosed species, a skilled artisan could visualize or recognize *other*, undisclosed members of the genus.  Baxalta's expert Dr. Marasco conceded that he could not visualize *even one* other member of the genus (Opening Br. 20) and Baxalta never walks that testimony back or cites any contrary testimony (of which there is none).

Instead, Baxalta makes the legal argument that because it is proceeding under the "disclosure of . . . a representative number of species" pathway identified in *Ariad*, rather than the "structural features common to the members of the genus" pathway, the requirement that a skilled

artisan be able to "'visualize or recognize' the members of the genus" standard does not apply here.  (Opp'n Br. 10–11.)  This is a pure question of law and Baxalta misreads the cases.  The "'visualize or recognize' the members of the genus" test applies to both *Ariad* pathways.  *See Ariad Pharm., Inc.* v. *Eli Lilly & Co.*, 598 F.3d 1336, 1350 (Fed. Cir. 2010) (en banc).

In the relevant passage in *Ariad*, the en banc Federal Circuit discussed its prior ruling in *Eli Lilly*, which had held invalid a patent on a genus of cDNAs encoding insulin molecules:

> The patent at issue in [*Regents of the University of California* v. *Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997)] claimed a broad genus of cDNAs purporting to encode many different insulin molecules, and we held that its generic claim language to "vertebrate insulin cDNA" or "mammalian insulin cDNA" failed to describe the claimed genus because it did not distinguish the genus from other materials in any way except by function, *i.e.*, by what the genes do, and thus provided "only a definition of a useful result rather than a definition of what achieves that result."
>
> **We held that a sufficient description of a genus instead requires the disclosure of either a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can "visualize or recognize" the members of the genus.**  We explained that an adequate written description requires a precise definition, such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials.  We have also held that functional claim language can meet the written description requirement when the art has established a correlation between structure and function.  But merely drawing a fence around the outer limits of a purported genus is not an adequate substitute for describing a variety of materials constituting the genus and showing that one has invented a genus and not just a species.

*Ariad*, 598 F.3d at 1350 (disputed sentence bolded; citations omitted).  The entire passage is about the written-description requirement that a patent allow a skilled artisan to "distinguish the genus from other materials"—it uses that phrase twice.  A patent may do so either by disclosing structural features common to the genus or by disclosing a representative number of species within the genus, but either way a skilled artisan must be able to tell what species are within the genus and what

species are "other materials" outside the genus. Baxalta's gloss on this passage—that the need to "'visualize or recognize' the members of the genus" applies only where the patentee identifies structural features common to the members of the genus—would read out the word "representative" in "representative number of species"; the species are "representative" precisely because they allow a skilled artisan to visualize the whole of which they are a representative part.

The Federal Circuit's body of case law further confirms that Baxalta is wrong about the law. In *Carnegie Mellon University* v. *Hoffman-La Roche Inc.*, the Court recognized that being able to visualize or recognize the identity of the members of the genus is a "basic principle" of written description law. 541 F.3d 1115, 1124 (Fed. Cir. 2008). Perceiving the members of the genus is how a skilled artisan "would understand that the genus that is being claimed has been invented, not just a species." *Id.* In *Centocor Ortho Biotech, Inc.* v. *Abbott Laboratories*, the Court stated that the written description requirement "demand[s]" that "one of skill in the art can 'visualize or recognize' the claimed antibodies based on the specification's disclosure," in a case in which representative species (rather than common structure) was the proffered basis from which to claim the genus. 636 F.3d 1341, 1353 (Fed. Cir. 2011). Similarly, in *Idenix Pharmaceuticals LLC* v. *Gilead Sciences Inc.*, the Court applied the "visualize or recognize the members of the genus" standard to a genus purportedly supported by a representative number of species, not by common structural features. 941 F.3d 1149, 1165 (Fed. Cir. 2019). There, a subset of species within the genus shared common structural features, but the Court held that a skilled artisan could not, from that structurally-defined subset, visualize the members of the genus that had the required function but did not share that structure: "The '597 patent provides adequate written description for the compounds within its formulas. The specification, however, provides no method of distinguishing effective from ineffective compounds for the compounds reaching beyond the

formulas disclosed in the '597 patent."  *Id*. at 1164.  And then in *Juno Therapeutics, Inc.* v. *Kite Pharma, Inc.*, the Court granted JMOL of no written description because the disclosed species were insufficient to allow a skilled artisan to determine what other species were in the genus:  "The '190 patent, however, provides no details about which scFvs bind to CD19 in a way that distinguishes them from scFvs that do not bind to CD19.  Without this guidance, under our controlling *Ariad* decision, no reasonable jury could find the '190 patent satisfies the written description requirement."  10 F.4th 1330, 1342 (Fed. Cir. 2021).

Because Baxalta is wrong about the law of written description—the "'visualize or recognize' the members of the genus" test applies whether a patent discloses common structural features or a representative set of species—and because Baxalta has not raised a dispute of fact about whether the eleven disclosed species allow a skilled artisan to visualize or recognize the undisclosed members of the genus, the Court should grant summary judgment that the Asserted Claims are invalid for lack of adequate written description.

### B.  No Written Description of the Full Structural Scope of the Claimed Genus

There is no dispute of fact about whether the '590 Patent provides written description of the full structural scope of the claimed genus—it does not.  (Opening Br. 17–21.)  Baxalta offers no response that provides any basis to avoid summary judgment.

*First*, it is undisputed that the '590 Patent does not disclose *any* examples of isolated antibodies or antibody fragments that (i) bind Factor IX or IXa, (ii) increase the procoagulant activity of Factor IXa, and (iii) fall within the formats of IgA antibodies, IgD antibodies, IgE antibodies, humanized antibodies, chimeric antibodies, bispecific antibodies, single chain antibodies, diabodies, and di-, oligo-, and multimers thereof.  (Opening Br. 18–21.)  Accordingly, there are no examples of three of the five isotypes in the *Markush* group of Claim 3, seven of the nine formats in the *Markush* group of Claim 4, and no examples at all within Claim 19.

Baxalta does not disagree, or suggest that Genentech mischaracterized the evidence.  (*See* Opp'n Br. 14–17.)  Instead, Baxalta engages in sleight of hand.  It argues that the '590 Patent discloses "representative variable domains of monoclonal antibodies across the breadth of the claimed genus," such that a skilled artisan could visualize "antibodies of all formats *comprising the same variable regions* across the breadth of the claimed genus."  (Opp'n Br. 17 (emphasis added).)  That is an argument that Baxalta has never made before, and with good reason:  While that might be a defense of Claims 6–10—which claim genera of antibodies having the variable regions of three of the disclosed antibodies (recited in the patent as SEQ IDs)—Baxalta is not asserting those claims here.  The Asserted Claims encompass every possible variable region that binds Factor IX or IXa at any epitope with any degree of affinity.  Without examples in at least ten categories of claimed antibodies, Baxalta cannot argue that its species span the full structural breadth of the Asserted Claims.  In *Centocor*, the Federal Circuit held that written description of chimeric antibodies with murine variable regions and human constant regions was insufficient as a matter of law to claim fully human antibodies.  *See* 636 F.3d at 1341.  And in a parallel to Claim 19 of the '590 Patent, which is limited to humanized antibodies despite the patent having no examples of humanized antibodies, the Court in *Centocor* noted that while the patent there "broadly claim[ed] a class of antibodies that contain human variable regions, the specification [did] not describe a single antibody that satisfies the claim limitations."  *Id.* at 1350–51.

*Second*, Baxalta notes that the cases do not use the words "full structural scope" and "full functional scope," and says that *Ariad* requires only that the specification "show that the applicant has invented species sufficient to support a claim to the functionally-defined genus." (Opp'n Br. 10 (quotation omitted).)  If Baxalta is suggesting that there is no requirement to describe the full structural scope of the genus, it is incorrect.  In *AbbVie*, for example, the Federal Circuit held that

the asserted patents "must adequately describe representative antibodies to reflect the structural diversity of the claimed genus." *AbbVie Deutschland GmbH* v. *Janssen Biotech, Inc.*, 759 F.3d 1285, 1301 (Fed. Cir. 2014). And, as noted above, one of the reasons the Federal Circuit granted JMOL in *Juno* was that the patent provided no structural details "about which scFvs bind to CD19 in a way that distinguishes them from scFvs that do not bind to CD19." 10 F.4th at 1342.

Because there is no dispute of fact about whether there are working examples of nearly all of the various antibody formats within the scope of the Asserted Claims—there are not—and because Baxalta is wrong if it suggests it need not provide such examples, the Court should grant summary judgment that the Asserted Claims are invalid for lack of adequate written description.

### C.   No Written Description of the Full Functional Scope of Antibodies and Fragments that Bind Factor IX or IXa

The '590 Patent does not describe the full scope of the genus of antibodies or antibody fragments that bind to Factor IX or IXa. (Opening Br. 21–23.) The Federal Circuit has confirmed that binding to a specific target is a functional limitation. *Juno*, 10 F.4th at 1340; *Amgen Inc.* v. *Sanofi, Aventisub LLC*, 987 F.3d 1080, 1087 (Fed. Cir. 2021) ("*Amgen II*"). The '590 Patent must disclose "a way to distinguish those" antibodies that are "capable of binding" to Factor IX/IXa from those that are "*in*capable of binding" Factor IX/IXa. *Juno*, 10 F.4th at 1339.

Baxalta offers no response, thus conceding that the '590 Patent does not disclose characteristics from which a skilled artisan can tell whether a given antibody or fragment binds Factor IX or IXa. The only way to know is to test it. (Opening Br. 22.) That is one of the reasons the patent in *Juno* was invalidated as a matter of law; the only way to find the scFvs that could be used in the example would be to make and test candidates "to ascertain their binding properties," because "a skilled artisan could not predict before testing whether an scFv would bind." 10 F.4th at 1341. Baxalta offers no defense of the '590 Patent, which suffers from the same deficiency.

### D. No Written Description or Enablement of the Full Functional Scope of Antibodies and Fragments that Increase the Procoagulant Activity of Factor IXa

In its Opening Brief, Genentech asserted that it is undisputed that none of the antibodies disclosed in the '590 Patent demonstrated a meaningful increase in the procoagulant activity of Factor IXa and that none showed any promise of being turned into a therapy for hemophilia. (Opening Br. 1, 8, 15.)  Genentech further asserted that it is undisputed that if one starts with the genus of antibodies and antibody fragments that bind Factor IX or IXa, only a very small percentage of those will meet the claims' second functional limitation—that the antibody or antibody fragment increase the procoagulant activity of Factor IXa—and that the only way to find that small percentage within the larger whole is by screening each antibody or fragment for procoagulant activity.  (*See id.* 23.)  And even within that small percentage, an even smaller number (if any) will increase the procoagulant activity enough to be therapeutically useful or to mimic Factor VIII, both of which activities are within the functional breadth of the claims.  (*See id.* 31–32.)  Baxalta does not disagree with any of these facts.  Under controlling case law, then, the '590 Patent is invalid as a matter of law.

### 1. The Claimed Genus Cannot Be Described by the Screening Methods Required to Find Its Members

Baxalta's Opposition Brief makes much of the fact that the claimed genus is "small." (Opp'n Br. 12.)  What Baxalta and its expert Dr. Marasco mean is that isolated antibodies or antibody fragments that will both bind Factor IX or IXa and increase the procoagulant activity of Factor IXa are rare.  Here, Genentech accepts these facts as true, as it did in its Opening Brief.

That there are few needles in the haystack makes the search harder, however, not easier. The experts agree that many antibodies or antibody fragments would bind Factor IX or IXa; it is when one narrows the view to only those that happen to increase the procoagulant activity of Factor

IXa that the number plunges.  (Opening Br. 26–28.)  The experts agree that the only way to find those needles in the haystack of antibodies and fragments that bind Factor IX or IXa but do not increase the procoagulant activity of Factor IXa is to screen them for procoagulant activity.

As noted above, this was one of the reasons the Federal Circuit invalidated the patent in *Juno*.  There, a skilled artisan could find an scFv that was useful in a CAR-T construct only by making many scFvs and screening them for efficacy.  Juno argued that "it would not matter to a person of ordinary skill (1) that scFvs may be highly diverse in the abstract, (2) that 'millions of billions' of scFvs would need to be made and tested to ascertain their binding properties, or (3) that a skilled artisan could not predict before testing whether an scFv would bind."  10 F.4th at 1341.  The Court rejected these arguments as "contrary to our precedent."  *Id.*

### 2.     As a Matter of Law, Instructing a Skilled Artisan to Screen Embodiments for Procoagulant Activity Is Not Adequate Enablement

A make-and-screen strategy for finding procoagulant antibodies is not adequate enablement under *Amgen II* and *Idenix*.  (Opening Br. 26–28.)  Baxalta chides Genentech for not citing *In re Wands*, 858 F.2d 731 (Fed. Cir. 1988) (Opp'n Br. 21), but both *Amgen II* and *Idenix* apply *Wands*, with *Amgen II* doing so specifically for a genus of antibodies defined (as here) by both structure and function.

In *Amgen II*, the district court analyzed the *Wands* factors by comparing the facts before it to Federal Circuit cases finding "lack of enablement due to the undue experimentation required to make and use the full scope of the claimed compounds that require a particular structure and functionality."  987 F.3d at 1086 (comparing *Wyeth*, *Enzo*, and *Idenix*).  The Federal Circuit affirmed that analysis, citing the same cases in finding a lack of enablement as a matter of law where the evidence showed "that the scope of the claims encompasses millions of candidates claimed with respect to multiple specific functions, and that it would be necessary to first generate

and then screen each candidate antibody to determine whether it meets the double-function claim limitations." *Id.* at 1088. That is, "the only ways for a person of ordinary skill to discover undisclosed claimed embodiments would be through either 'trial and error, by making changes to the disclosed antibodies and then screening those antibodies for the desired binding and blocking properties,' or else 'by discovering the antibodies *de novo*' according to a randomization-and-screening 'roadmap.'" *Id.*

That is exactly the case here. It is undisputed that the genus comprises species having multiple specific functions (binding to any epitope of Factor IX or IXa, and increasing the procoagulant activity of Factor IXa by any amount), and that one would need to generate and then screen candidate antibodies to determine whether they meet the claim limitations across their full functional scope. As the Federal Circuit noted in *Amgen II*:

> [T]he enablement inquiry for claims that include functional requirements can be particularly focused on the breadth of those requirements, especially where predictability and guidance fall short. In particular, it is important to consider the quantity of experimentation that would be required to make and use, not only the limited number of embodiments that the patent discloses, but also the full scope of the claim.
>
> . . . .
>
> In cases involving claims that state certain structural requirements and also require performance of some function (e.g., efficacy for a certain purpose), we have explained that undue experimentation can include undue experimentation in identifying, from among the many concretely identified compounds that meet the structural requirements, the compounds that satisfy the functional requirement.

*Id.* at 1086–87 (quotation omitted). Unable to mount a substantive response—the make-and-screen approach of the '590 Patent is undisputed—Baxalta argues that in *Amgen II* the claims specified the amino acids on PCSK9 to which the antibodies must bind. (Opp'n Br. 21–27, 32.) Baxalta has the law backwards. That the claims in *Amgen II* were more specific, and thus defined a narrower genus, should have made it *easier* to establish enablement. That the '590 Patent is more general—encompassing antibodies binding *any* epitope on Factor IX or Factor IXa—makes

Baxalta's burden greater, because not all binding locations on Factor IXa will lead to procoagulant activity.  While Baxalta notes that the Amgen patent fell short because "many of [the] claimed residues were not bound by any examples in the patent" (Opp'n Br. 32), that just means that Amgen's patent was invalid even though it was far more richly detailed than the '590 Patent.

    E.    **No Written Description of Any Species Representative of Emicizumab**

    Here, the parties agree on the law:  if emicizumab is covered by the claims, the '590 Patent specification must describe at least some species representative of emicizumab to satisfy the written description requirement.  (*Compare* Opening Br. 28, *with* Opp'n Br. 18–19.)  The parties also agree on the facts:  emicizumab is a humanized, bispecific antibody that binds both Factor IXa and Factor X, but the '590 Patent provides no detailed disclosure or examples of humanized antibodies or bispecific antibodies, and no mention whatsoever of antibodies binding Factor X. (Opening Br. 15, 28–30.)  And while the parties disagree about whether murine antibodies binding only Factor IXa are representative of emicizumab, the Court may resolve that dispute, and should do so in Genentech's favor.

    Merely mentioning a bispecific or humanized antibody would "not suffice to show that the inventors of the . . . patent possessed such an antibody."  *Centocor*, 636 F.3d at 1350.  Yet Baxalta argues that some of the antibodies in the patent are similar to just the anti-Factor IXa arm of emicizumab, in terms of their amino-acid sequences.  Arguing that a monospecific anti-Factor IX antibody is similar to half of, and can thus represent all of, a bispecific antibody is like saying that disclosing a horse is sufficient to claim a centaur.  In *Centocor*, the Federal Circuit rejected as a matter of law that disclosure of chimeric antibodies with mouse variable regions and human constant regions was sufficient to claim fully human antibodies.  *See id.* at 1341.  Even accepting here that the '590 Patent disclosed a monospecific antibody sharing characteristics with emicizumab's anti-Factor IXa arm, to produce emicizumab that monospecific antibody's anti-

12

Factor IX arm would need to be combined with some other antibody's anti-Factor X arm in a way that resulted in a bispecific antibody with procoagulant activity. The '590 Patent says nothing about how to make such an antibody. There is "no evidence to show whether one of skill in the art could make predictable changes to the described antibodies to arrive at other types of antibodies such as [the accused product]." *AbbVie*, 759 F.3d at 1301. There is no guidance in the '590 Patent on how to alter the disclosed antibodies so that they become a humanized, bispecific antibody like emicizumab, or even what the second arm of any bispecific antibody should recognize.

Indeed, the hallmark of written description is whether "the specification shows that the stated inventor has in fact invented what is claimed, that he had possession of it." *AbbVie*, 759 F.3d at 1299. But here inventors Scheiflinger and Kerschbaumer admitted they did not make a bispecific antibody, and Baxalta's expert, Dr. Krishnaswamy, dismissed the patent's assertions that antibodies of the invention have therapeutic utility as merely "aspirational," *see* Cole Decl. Ex. 11, Scheiflinger Dep. Tr. at 68:8–19; *id*. Ex. 13, Kerschbaumer Tr. at 18:429–434; *id.* Ex. 20, Krishnaswamy Dep. Tr. at 42:5–45:14, 59:3–9, effectively conceding that skilled artisans reading the specification would not believe the inventors possessed any antibodies with procoagulant activity like emicizumab. On those undisputed facts, no reasonable jury could find otherwise.

**F.      No Written Description or Enablement of the Full Functional Scope
of the Claimed Increase in Procoagulant Activity of Factor IXa**

Genentech's final Section 112 argument was that the '590 Patent does not describe or enable the full functional scope of the claim term "increases the procoagulant activity of Factor IXa," which includes activity ranging from barely perceptible to therapeutically useful to the levels achieved by Factor VIII or beyond. (Opening Br. 30–33.)

Baxalta never responds on this issue. That is fatal. A patent must describe and enable the full scope of genus claims along every axis by which the genus is diverse, including functionality.

*See AbbVie*, 759 F.3d at 1299–1301; *Idenix*, 941 F.3d at 1162–63; *Amgen II*, 987 F.3d at 1087. Genentech cited *MagSil* and other cases for, as the Federal Circuit has observed, the "irony" of a patentee successfully pressing for a broad claim interpretation only to find itself with claim scope that has insufficient Section 112 support. *Liebel-Flarsheim Co.* v. *Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007); *see Rivera* v. *ITC*, 857 F.3d 1315, 1319–21 (Fed. Cir. 2017); *MagSil Corp.* v. *Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1381–82 (Fed. Cir. 2012). Baxalta asserts that *MagSil* and the others apply to only "a marginal improvement to a known quality," and suggests that a lower enablement standard should apply to claims covering subject matters with previously unknown qualities (which Baxalta alleges is the case here). (Opp'n Br. 34.) Not so. The cases are not confined to inventions of a marginal improvement over a known property, but instead address open-ended claims that place no upper limit on a recited property, or claims so broad that they reach far beyond anything disclosed in the specification. (Opening Br. 31.)

Such is the case here. The language "increases the procoagulant activity of Factor IXa" is open ended, with no limit on the magnitude of the increase. Nothing in the specification enables the full functional scope of that claim. Baxalta's only coagulation expert, Dr. Krishnaswamy, has acknowledged that the claims include antibodies that can activate Factor IXa to the same extent that Factor VIII does, *see* Cole Decl. Ex. 20, Krishnaswamy Dep. Tr. at 212:10–17, 214:2–11, and agreed "it would be difficult or indeed impossible to create" such an antibody, *id.* at 212:18–213:7. Under *MagSil*, all of the Asserted Claims of the '590 Patent are invalid as non-enabled, open-ended claims. *See* 687 F.3d at 1383–84. As for Baxalta's suggestion that its claims fall into some exempt category because they recite an allegedly previously unknown property, it is wrong: *Plant Genetic Systems* makes clear that the enablement requirement is the same regardless of whether

14

marginal or major advances are the subject of a patent. *Plant Genetic Sys., N.V.* v. *Dekalb Genetics Corp.*, 315 F.3d 1335, 1339–40 (Fed. Cir. 2003).

Baxalta could have limited its claims to only antibodies that increase the procoagulant activity of Factor IXa by the small amount shown in the patent; emicizumab would not infringe those claims, but the disclosed antibodies might support their functional scope. Having chosen to claim antibodies that increase the procoagulant activity of Factor IXa by any amount, Baxalta must describe and enable antibodies across that full functional breadth. Baxalta did not do so.

## II.    NON-INFRINGEMENT:  BAXALTA MAY NOT PROCEED ON A DOCTRINE-OF-EQUIVALENTS THEORY

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████ Baxalta does not disagree. Baxalta thus finds itself in a

bind: ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████ But under clear precedent, Baxalta has no way out of that bind.

**Narrowing Amendment**:  Baxalta agrees that, absent a *Festo* exception, a narrowing amendment precludes assertion of the narrowed claim against a product that falls within the subject matter surrendered by the amendment.  (Opp'n Br. 34–35.) ███████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████   In the case on

which Baxalta relies, the term "output signals" was not narrowed when amended to "output

transform calculation signals" because, in the context of that patent, those terms were synonyms.

*See Interactive Pictures Corp.* v. *Infinite Pictures, Inc.*, 274 F.3d 1371, 1377 (Fed. Cir. 2001).

That is not the case here: ████████████████████████████████████████

███████████████████████████████████.  Baxalta also has no

explanation based on the public record for why the Examiner—who is concerned only with

patentability—would add a non-narrowing amendment.   And Baxalta cannot supplement the

record now with alternative explanations.  *Jeneric/Pentron, Inc.* v. *Dillon Co.*, 171 F. Supp. 2d 49,

75–76 & n.4 (D. Conn. 2001); *see Litton Sys., Inc.* v. *Whirlpool Corp.*, 728 F.2d 1423, 1439 (Fed.

Cir. 1984), *abrogated on other grounds by Two Pesos, Inc.* v. *Taco Cabana, Inc.*, 505 U.S. 763

(2000).

**Tangentiality**: ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████   (Opp'n Br. 35.)  Whether Baxalta can meet that *Festo* exception "focuses

on the patentee's objectively apparent reason for the narrowing amendment," as Baxalta notes.

(*Id.* at 35–36.)  But Baxalta offers no explanation of the reason for the amendment because the

public record discloses no reason for it.  That ends any "tangentiality" argument because the

Federal Circuit has been clear that it is the patentee's burden to rebut the *Festo* presumption by

showing "that the way in which the alleged equivalent departs from what the claim limitation

literally requires is *tangential to the discernable objective reason* for the narrowing amendment.

In that situation, there is no surrender of the equivalent by that amendment."  *Ajinomoto Co.* v.

*ITC*, 932 F.3d 1342, 1354 (Fed. Cir. 2019) (emphasis added).  As the Supreme Court has cautioned,

where—as here—there is no explanation for an amendment, the Court should presume the amendment was related to patentability and the equivalent was surrendered, barring the use of the doctrine of equivalents. *Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997).

**Disclosure Dedication:** ████████████████████████████████████

████████████████████████████████ Citing *Pfizer, Inc.* v. *Teva Pharmaceuticals USA Inc.*, 429 F.3d 1364 (Fed. Cir. 2005), Baxalta states that disclosure dedication "applies when the specification discloses unclaimed matter as an alternative to a relevant claim limitation." (Opp'n Br. 36.) That criterion is met here. ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████

█████████████████████████████████ (Opp'n Br. 37.) There is no such rule. ███████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ That is sufficient to invoke disclosure dedication.

## III.   WILLFUL INFRINGEMENT AND ENHANCED DAMAGES:  BAXALTA'S CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW

### A.   Baxalta's Evidence Cannot Support a Verdict of Willfulness

Baxalta has not adduced any evidence from which a jury could reasonably find that Genentech willfully infringed the '590 Patent.  Baxalta concedes by its silence that there is no evidence of the types of copying, espionage, cover-up, or failed design-around efforts that

commonly support a willfulness claim.  Instead, Baxalta cobbles together (and mischaracterizes) unrelated facts, none of which individually or together could support a willfulness verdict.

**Knowledge of the Patent:**  Baxalta takes pains to prove that Roche, Chugai, and Genentech knew about Baxalta's worldwide Factor IXa-antibody portfolio.  That is not disputed, but knowledge of a patent is not sufficient for willfulness.  And while Baxalta suggests that knowledge of a risk of infringement can show willfulness (Opp'n Br. 37–38), that is wrong; the patentee must show that the defendant "knew or should have known that its actions constituted an *unjustifiably high risk* of infringement of a valid and enforceable patent."  *Arctic Cat Inc.* v. *Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (emphasis added); *see Shopify Inc.* v. *Express Mobile, Inc.*, 2021 WL 4288113, at *20 (D. Del. Sept. 21, 2021).

**Other Entities' Views:**  Baxalta notes that Baxalta itself and a market analyst thought Hemlibra® might infringe the '590 Patent.  (Opp'n Br. 38.)  That does not mean Genentech agreed.





     **"Unreasonable" Litigation Defenses:**  Baxalta cites the Federal Circuit's recent *SRI*

decision, which suggests that a jury may consider whether a defendant's litigation defenses were

unreasonable when determining willfulness.  *See SRI Int'l, Inc.* v. *Cisco Sys., Inc.*, -- F.4th --, 2021 WL 4434231, at *3–4 & n.1 (Fed. Cir.  Sept. 28, 2021).  Baxalta has never made that argument or disclosed it in its contentions; given that Baxalta lost a preliminary injunction motion on the merits and a non-infringing claim construction, it cannot in good faith contend that Genentech's litigation defenses have been unreasonable.  [D.I. 262; D.I. 330; D.I. 337.]

> **B.**     ***Seagate* Forecloses Willfulness after Baxalta's**
> **Motion for a Preliminary Injunction Was Denied**

Under *Seagate*, in a passage not abrogated by *Halo*, the en banc Federal Circuit held that the denial of a preliminary injunction on likelihood-of-success grounds will ordinarily foreclose a finding of willful infringement from that point forward.  Baxalta offers three points in response; none can save its willfulness claim.  (Opp'n Br. 40.)

*First*, Baxalta argues that the *Seagate* rule applies to willfulness claims based only on post-suit conduct.  But all of the allegedly infringing conduct here occurred post-suit.  Genentech did not begin selling Hemlibra® until November 2017, well after Baxalta filed its complaint.

*Second*, Baxalta asserts that a patentee need not move for a preliminary injunction to assert willfulness.  That is true, but Baxalta did move for a preliminary injunction, and it lost.

*Third*, Baxalta faults Genentech for not citing a post-*Halo* case suggesting that losing a preliminary injunction motion on the merits forecloses a willfulness finding.  *Mentor Graphics* is a post-*Halo* case, and it cites this passage of *Seagate* with approval.  (*See* Opening Br. 38.)

**CONCLUSION**

For the foregoing reasons, and those set forth in Genentech's Opening Brief, the Court should grant Genentech's motion for summary judgment.

ASHBY & GEDDES

*/s/ Steven J. Balick*

*Of Counsel*:

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

Nicholas Groombridge
Eric Alan Stone
Catherine Nyarady
Jennifer Gordon
Josephine Young
Naz Wehrli
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
GRP-GENE-Baxalta@paulweiss.com
ngroombridge@paulweiss.com
estone@paulweiss.com
cnyarady@paulweiss.com
jengordon@paulweiss.com
jyoung@paulweiss.com
nwehrli@paulweiss.com

Kenneth A. Gallo
David E. Cole
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
GRP-GENE-Baxalta@paulweiss.com
kgallo@paulweiss.com
dcole@paulweiss.com

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant Genentech, Inc.*

October 15, 2021