**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BAXALTA INCORPORATED and
BAXALTA GMBH

　　　　　　　　　　　　Plaintiffs,

　　　v.

GENENTECH, INC. and
CHUGAI PHARMACEUTICAL CO., LTD.,

　　　　　　　　　　　　Defendants.

C.A. No. 17-509-TBD

## **PROPOSED FINAL PRETRIAL ORDER**

　　　　This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

**Plaintiffs' Counsel:**

Jody C. Barillare (#5107)
Amy M. Dudash (#5741)
**MORGAN, LEWIS & BOCKIUS LLP**
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000
jody.barillare@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Abernathy (*pro hac vice*)
Jason C. White (*pro hac vice*)
Christopher J. Betti (*pro hac vice*)
Amanda S. Williamson (*pro hac vice*)
Wan-Shon Lo (*pro hac vice*)
Maria E. Doukas (*pro hac vice*)
Karon N. Fowler (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
(312) 324-1000
mike.abernathy@morganlewis.com
jason.white@morganlewis.com
christopher.betti@morganlewis.com
amanda.williamson@morganlewis.com
shon.lo@morganlewis.com
maria.doukas@morganlewis.com
karon.fowler@morganlewis.com

1

Margaret A. McGreal (*pro hac vice*)
Julie S. Goldemberg (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
margaret.mcgreal@morganlewis.com
julie.goldemberg@morganlewis.com

Olga Berson (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
2049 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 907-1000
olga.berson@morganlewis.com

**Defendant's Counsel:**

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
**ASHBY & GEDDES**
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Nicholas Groombridge (*pro hac vice*)
Eric Alan Stone (*pro hac vice*)
Catherine Nyarady (*pro hac vice*)
Jennifer Gordon (*pro hac vice*)
Josephine Young (*pro hac vice*)
Naz Wehrli (*pro hac vice*)
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
ngroombridge@paulweiss.com
estone@paulweiss.com
cnyarady@paulweiss.com
jengordon@paulweiss.com
jyoung@paulweiss.com
nwehrli@paulweiss.com

Kenneth A. Gallo (*pro hac vice*)
David E. Cole (*pro hac vice*)
**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
kgallo@paulweiss.com
dcole@paulweiss.com

## I.       NATURE OF THE CASE

This is a patent infringement action filed by Plaintiffs Baxalta Incorporated and Baxalta GmbH ("Plaintiffs" or Baxalta) against Defendant Genentech, Inc. ("Defendant" or "Genentech").[1]  Plaintiffs allege that Genentech infringes claims 1–4, 19, and 20 of U.S. Patent No. 7,033,590 ("the '590 Patent" or "the Asserted Patent," and, with respect to claims 1–4, 19, and 20, "the Asserted Claims").  The operative complaint is the Amended Complaint for Patent Infringement and Declaratory Judgment for Patent Infringement (D.I. 239) ("Amended Complaint").

Plaintiffs allege that Genentech infringes the Asserted Claims by selling HEMLIBRA®, and that such infringement is willful.  Plaintiffs seek a reasonable royalty for Genentech's alleged past and future infringement under 35 U.S.C. § 284.  Plaintiffs also seek pre-judgment and post-judgment interest, an award of enhanced damages for alleged willful infringement, and an award of attorneys' fees and costs.

Genentech answered Plaintiffs' operative complaint (D.I. 240), denying Plaintiffs' allegations of infringement, denying that any infringement was willful, and alleging that the '590 Patent is invalid.  Genentech also counterclaimed for declaratory judgments of non-infringement and invalidity.  Genentech seeks entry of judgment on the Amended Complaint in favor of Genentech and against Plaintiffs, with Plaintiffs not being awarded any relief of any kind; a declaration that one or more claims of the '590 Patent are invalid; a declaration that the claims of the '590 Patent are not infringed by Genentech; an award to Genentech of attorneys' fees, costs,

---

[1] Chugai Pharmaceutical Co., Ltd. was originally a second defendant in this action, but was later dismissed from the case.  (D.I. 293; *see also* Stipulation and Proposed Order as to Defendant Chugai Pharmaceutical Co., Ltd. (D.I. 220) ("June 26, 2018 Stipulation"): July 2, 2018 Minute Entry; First Amended Stipulation and Proposed Order Dismissing Defendant Chugai Pharmaceutical Co., Ltd. (D.I. 292)).

and expenses incurred by Genentech in defending against Plaintiffs' initial Complaint and Amended Complaint and/or in prosecuting Genentech's Counterclaims, including pursuant to 35 U.S.C. § 285, upon a finding that this is an exceptional case; and an award to Genentech of all other and further relief that this Court deems just and proper.

Plaintiffs responded to Genentech's counterclaims (D.I. 260), denying that Genentech is entitled to declaratory judgments of noninfringement and invalidity, and asserting additional defenses that the '590 Patent is valid, enforceable, and infringed by Genentech.  Plaintiffs seek entry of judgment in their favor with respect to Genentech counterclaims; a judgment that Genentech is not entitled to any of the relief requested in its counterclaim; and dismissal of Genentech's counterclaims with prejudice; a judgment declaring that, pursuant to 35 U.S.C. § 285, this is an exceptional case and awarding Baxalta its attorneys' fees; a judgment awarding Baxalta its costs under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920; and such other and further relief as this Court may deem just and proper.

A pretrial conference is scheduled for January 19, 2022 at 10:00 a.m.  (D.I. 356 at ¶ 6.) Trial currently is set to begin on January 24, 2022.  (*Id.* at ¶ 8.)  The number of trial days is anticipated to be seven.  (*Id.*)  The Court required the parties to attempt to reduce the number of trial days to five; the Parties have met and conferred pursuant to that instruction, and continue to believe that seven days for trial is appropriate in this matter.

## II.    JURISDICTION

The Court's subject matter jurisdiction is not disputed and is based on 28 U.S.C. §§ 1331 and 1338(a).  Personal jurisdiction is not contested.

## III.   FACTS

### A.   Joint Statement of Admitted Facts

These uncontested or stipulated facts require no proof at trial and will become part of the evidentiary record in this case.

Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court, and will be charged for the time used to do so.

The following facts are not disputed or have been agreed to or stipulated to by the parties:

### 1.   The Parties and Relevant Related Entities

1.   Plaintiff Baxalta Incorporated is a corporation organized under the laws of Delaware with a principal place of business at 1200 Lakeside Drive, Bannockburn, Illinois.

2.   Plaintiff Baxalta GmbH is a subsidiary of Baxalta Incorporated and is a Swiss company with a place of business in Glattpark (Opfikon), Switzerland.

3.   Genentech is a Delaware corporation with a principal place of business at 1 DNA Way, South San Francisco, California 94080.

4.   Genentech is a wholly owned subsidiary of Roche Holdings, Inc.

5.   Roche Holdings, Inc. is a subsidiary of Roche Holding Ltd.

6.   Chugai Pharmaceutical Co., Ltd. is a member of the Roche Group.

### 2.   The '590 Patent

7.   The '590 Patent is titled "Factor IX/factor IXa activating antibodies and antibody derivatives" and its named inventors are Friedrich Scheiflinger, Randolf Kerschbaumer, Falko-Guenter Falkner, Friedrich Dorner, and Hans-Peter Schwarz.

8.   The '590 Patent was filed on September 14, 2000, and issued on April 25, 2006.

9.      The assignee listed on the face of the '590 Patent is Baxter Aktiengesellschaft.[2]

10.     The '590 Patent expired on December 20, 2021.

11.     Baxalta Incorporated and Baxalta GmbH do not, and have never, marketed or offered for commercial sale a product that is covered by the '590 Patent.  They have never tested an antibody to Factor IX or Factor IXa in a clinical trial for hemophilia, nor have they ever sought approval from any regulatory body to test an antibody to Factor IX or Factor IXa in a clinical trial for hemophilia.

### 3.      HEMLIBRA® (emicizumab-kxwh)

12.     The Food and Drug Administration approved HEMLIBRA® (emicizumab-kxwh) on November 16, 2017 for routine prophylaxis to prevent or reduce the frequency of bleeding episodes in adult and pediatric patients with hemophilia A and who have anti-Factor VIII antibodies (known as Factor VIII inhibitors).   Genentech started marketing and selling HEMLIBRA® in the United States soon thereafter.

13.     On October 4, 2018, FDA approved HEMLIBRA® for routine prophylaxis to prevent or reduce the frequency of bleeding episodes in adults and children with hemophilia A without Factor VIII inhibitors.

14.     The active ingredient in HEMLIBRA® is called emicizumab, which was formerly known as "ACE910."

15.     Emicizumab is an antibody.

16.     Emicizumab is a humanized antibody.

17.     Emicizumab is a bispecific antibody.

18.     Emicizumab binds Factor IXa and Factor X.

---

[2] The parties are continuing to confer and may seek to add additional statements to the Joint Statement of Admitted Facts, as may be appropriate.

19.     HEMLIBRA® was developed by scientists at Chugai Pharmaceutical Co., Ltd. in Japan.

## B.     Statement of Contested Facts

### 1.     Plaintiffs' Statement of Contested Facts

Plaintiffs present the following statement of issues of fact that remain to be litigated.[3] Plaintiffs base this statement on the arguments they expect to make to establish infringement and damages for that infringement, as well as their understanding of the arguments that Defendant will likely make in an attempt to prove its defenses.  To the extent Defendant intends or attempts to introduce different or additional facts, Plaintiffs reserve their right to supplement this statement and contest those facts and to present any and all rebuttal evidence in response to those arguments. Plaintiffs also incorporate by reference their expert reports to identify the issues to be resolved at trial.  By providing this Statement, Plaintiffs do not concede that all of the recited issues are appropriate for trial and do not waive any objections.

### a.     The '590 Patent

1.     Defendant infringes claims 1, 2, 3, 4, 19, and 20 of the '590 Patent literally and/or under the doctrine of equivalents by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States HEMLIBRA® (emicizumab-kxwh).

2.     Infringement by Defendant was willful.

3.     Defendant contends that claims 1, 2, 3, 4, 19, and 20 of the '590 Patent are invalid under the following theories:

---

[3] To the extent any of the issues of law set forth in Section IV.A. may be considered issues of fact, Plaintiffs incorporate them here by reference.  To the extent any issues of fact here may be considered issues of law, Plaintiffs incorporate them into Section IV.A.

      a.   Claims 1, 2, 3, 4, 19, and 20 are invalid under 35 U.S.C. § 112 for lack of written description, lack of enablement, indefiniteness, and/or improper dependency.

      b.   Claims 1, 2, 3, 4, and 20 are invalid as anticipated under 35 U.S.C. § 102(a) and (b) by HIX-1.

4.     Plaintiffs deny that any of claims 1, 2, 3, 4, 19, and 20 of the '590 Patent is invalid under any theory.

### b.    Damages, Affirmative Defenses, and Other Relief

1.     Plaintiffs have been damaged by Defendant's conduct and will seek damages to compensate Plaintiff for Defendants' infringement, together with pre-judgment and post-judgment interest and costs as fixed by the Court.

2.     Plaintiffs deny Defendant's defenses, including its defenses that the '590 Patent is invalid and not infringed by Defendant.

3.     Plaintiffs' proof at trial will include, among other things, proof regarding each of the above areas, including rebuttal of Defendant's allegations regarding invalidity, non-infringement, and damages.

### 2.    Defendant's Statement of Contested Facts

Genentech submits the following statement of issues of fact to be litigated at trial.

This statement is based on the arguments Genentech expects to make as well as its understanding of the arguments that Plaintiffs are likely to make.  Genentech reserves the right to modify or amend this statement to the extent necessary to fairly respond to any new issues that Plaintiffs may raise, if Plaintiffs are permitted to so raise new issues.  Genentech further reserves the right to modify or amend this statement based upon the resolution of any outstanding motion or other future ruling by the Court.  The following statements are not exhaustive and Genentech

reserves the right to prove any matters identified in its pleadings, infringement contentions, interrogatory responses, and/or expert reports. Genentech also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order. Genentech further intends to offer evidence to rebut evidence offered by Plaintiffs.

To the extent Genentech's statement of issues of law that remain to be litigated contains issues of fact, those issues are incorporated by reference. To the extent this statement of issues of fact that remain to be litigated contains issues of law, those issues are incorporated into Genentech's statement of issues of law that remain to be litigated. Genentech's statement includes for purposes of completeness certain legal issues raised by the parties' contentions, without waiver of any argument regarding whether a particular issue is one of fact or law. By providing this statement, Genentech does not concede that all of these issues are appropriate for determination by the jury, as some of these issues require determination by the Court.

### a.   The '590 Patent

1.   Whether Plaintiffs have failed to carry their burden of proving by a preponderance of the evidence that any of the asserted claims of the '590 Patent were infringed by selling Hemlibra®.

2.   Whether Plaintiffs failed to carry their burden of proving by a preponderance of evidence that any infringement by Genentech was willful.

3.   Whether Genentech has proven by clear and convincing evidence that each of the Asserted Claims is invalid for lack of written description under 35 U.S.C. § 112.

4.   Whether Genentech has proven by clear and convincing evidence that each of the Asserted Claims is invalid for lack of enablement under 35 U.S.C. § 112.

5.      Whether Genentech has proven by clear and convincing evidence that each of the Asserted Claims is invalid for indefiniteness under 35 U.S.C. § 112.

6.      Whether Genentech has proven that each of claims 1–4 and 20 is invalid as anticipated under 35 U.S.C. § 102.

### b.      Damages, Affirmative Defenses, and Other Relief

1.      Plaintiffs are not entitled to damages because Genentech has not infringed any of the Asserted Claims and/or those claims are invalid.  If the jury were to find that Genentech infringed a valid claim of the patent, Plaintiffs are not entitled to an award of damages any greater than a reasonable royalty.  Plaintiffs are also not entitled to a finding of willfulness and, therefore, to any award of enhanced damages under 35 U.S.C. § 284.  In the event the jury finds that Genentech willfully infringed the patent, any enhancement of damages under Section 284 should be determined by the Court in post-trial briefing or a post-trial hearing, as the Court may deem appropriate, as well as issues concerning the award of attorney's fees under 35 U.S.C. § 285, interest, and costs.

2.      In the event the jury enters a verdict in favor of Genentech, in post-trial briefing or proceedings, Genentech may pursue a finding that this is an exceptional case and an award of attorney's fees under 35 U.S.C. § 285, as well as costs under Rule 54, and post-judgment interest on those awards.

3.      Genentech's proof at trial will include, among other things, proof regarding each of the above areas, including rebuttal of Plaintiffs' allegations regarding validity, infringement, and damages.

* * *

The parties reserve the right to modify or supplement their statements of facts that remain to be litigated to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## IV.    ISSUES OF LAW

Plaintiffs identify the following issues of law that remain to be litigated, with a citation to authorities relied upon.[4]  This statement is based on the arguments that Plaintiffs expect to make as well as their understanding of the arguments Defendant will likely make in an attempt to prove its defenses.  To the extent Defendant intends or attempts to introduce different or additional legal arguments, Plaintiffs reserve the right to supplement this statement, to contest those legal arguments, and to present any and all rebuttal evidence in response to those arguments.

By providing this Statement, Plaintiffs do not concede that all of the recited issues are appropriate for trial.  In particular, Plaintiffs do not waive any of their motions *in limine* or motions for judgment as a matter of law, which, if granted, would render some or all of these issues moot.

Plaintiffs object to Defendant presenting any affirmative defenses, arguments, or opinions that Defendant has not properly preserved in its Answer (D.I. 240), discovery responses, or its expert reports. Plaintiffs further object to Defendant presenting any affirmative defenses, arguments, or opinions previously precluded by the Court.  Plaintiffs reserve the right to raise with the Court other defenses, arguments, or opinions that Defendant has not properly preserved and thus waived.

### A.    Plaintiffs' Statement of Contested Issues of Law

#### 1.    Infringement

---

[4] To the extent any of the issues of fact set forth in Section III.B.1. may be considered issues of law, Plaintiffs incorporate them here by reference.  To the extent any issues of law here may be considered issues of fact, Plaintiffs incorporate them into Section III.B.1.

### a.      Issues to be Litigated

7.      Whether Defendant has infringed claims 1, 2, 3, 4, 19, and 20 of the '590 Patent literally or under the doctrine of equivalents.

8.      Whether such infringement by Defendant was willful.

### b.      Legal Authority

Plaintiffs bear the burden of proving patent infringement by a preponderance of the evidence.  *See Advanced Cardiovascular Sys., Inc. v, Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).  Plaintiffs must show that it is more likely than not that Defendant infringes the asserted claims of the Asserted Patents.  *See Warner-Lambert Co. v. Teva Pharm., USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005).

The infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  The first step is to define the disputed the terms of the patent consistent with how those terms would be understood by a person of ordinary skill in the art.  *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).  This Court construed the disputed claim terms in its December 3, 2018 Opinion and Order.  (D.I. 330).  The Federal Circuit construed two terms in its August 27, 2020 Opinion. *See Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341 (Fed. Cir. 2020).  The second step in the infringement analysis is to compare the accused product with the properly construed claims. *Markman*, 52 F.3d at 976.

### (i)      Literal Infringement

To prove literal infringement, Plaintiffs must show that the accused product meets each limitation of the asserted claim, as properly construed.  *See Demarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every

limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly." (internal quotation marks omitted)).

### (ii)    Doctrine of Equivalents

To prove infringement by the doctrine of equivalents, Plaintiffs must show that "there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)). "An element in the accused product is equivalent to a claim limitation if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). "Insubstantiality may be determined by whether the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Id.* at 813.

### (iii)    Willful Infringement

"The concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323 (Fed. Cir. 2021) (quoting *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)); *see also Wrinkl, Inc. v. Facebook, Inc.*, No. 20-CV-1345-RGA, 2021 WL 4477022, at *2 (D. Del. Sept. 30, 2021) (citing *SRI Int'l* for the same). This standard may be satisfied by a finding of "subjective willfulness" based on the defendant having acted in the face of a risk of infringement that was "either known or so obvious that it should have been known to the accused infringer." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S.Ct. 1923, 1930 (2016)), *rev'd on other grounds*, 138 S. Ct. 2129 (2018); *Wrinkl*, 2021 WL 4477022, at *2 (stating the same).

### 2.    Damages

### a.   Issues to be Litigated

1.   Plaintiffs' damages for Defendant's infringement of the '590 Patent, including the dollar amount that will compensate Plaintiffs for the infringement of the Asserted Patents through trial.

2.   Whether Plaintiffs are entitled to an award of prejudgment and post-judgment interest and, if so, the dollar amount of such award.

3.   Whether Plaintiffs are entitled to a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and whether Plaintiffs are entitled to an award of attorneys' fees.

4.   Whether Plaintiffs are entitled to costs and, if so, the dollar amount of such costs.

### b.   Legal Authority

#### (i)   Patent Damages Generally

Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.  The reasonable royalty may be based on the "supposed result of hypothetical negotiations between the plaintiff and defendant." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1357 (Fed. Cir. 2012).  "While the Federal Circuit has not prescribed a specific methodology for calculating a reasonable royalty, courts rely upon the fifteen factors set forth in *Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*, No. 03-241, 2004 WL 2213562 (D. Del. Sept. 28, 2004).  "[I]n conducting the hypothetical negotiation, the Court is permitted to look to events and facts that occurred after the infringement began." *Mobil Oil Corp. v. Amoco Chems. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994).

#### (ii)   Pre- and Post-Judgment Interest

Title 35 provides for the calculation of damages "together with interest ... as fixed by the court." 35 U.S.C. § 284. "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54. "[P]rejudgment interest shall ordinarily be awarded absent some justification for withholding such an award." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (citation omitted). "[P]rejudgment interest should be awarded from the date of infringement to the date of judgment." *Id.* (citation omitted).

"[I]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Post-judgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999). Post-judgment interest is governed by regional circuit law. *Id.* at 1348. Interest begins to accrue on the date of the entry of judgment. *Loughman v. Consol-Pa. Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993). Courts in this district routinely award post-judgment interest in patent infringement cases. *See, e.g.*, *nCUBE Corp. v. SeaChange Int'l, Inc.*, 313 F. Supp. 2d 361, 392 (D. Del. 2004) (awarding post-judgment interest to patentee for defendant's willful infringement); *TruePosition Inc. v. Andrew Corp.*, 611 F. Supp. 2d 400, 414 (D. Del. 2009) (awarding post-judgment interest for patent infringement).

### (iii)   Exceptionality, Enhanced Damages, and Attorneys' Fees

District courts have discretion to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. In determining whether to enhance damages based on willfulness, a court considers "the factors set forth in *Read Corporation v. Portec Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992), *overruled on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)." *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp.

3d 610, 628 (D. Del. 2018).   Those factors are "(1) deliberate copying; (2) defendant's investigation and good faith-belief of invalidity or non-infringement; (3) litigation behavior; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of the misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) attempted concealment of the misconduct." *Id.* (citing *Read*, 970 F.2d at 826-27).

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  To be a "prevailing party," a party "must win a dispute within the case in favor of it that materially alters the legal relationship between the parties at the time of the judgment." *Parallel Iron LLC v. NetApp Inc.*, 2014 WL 4540209, at *3 (D. Del. Sept. 12, 2014).  "An exceptional case 'stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1383 (Fed. Cir. 2019) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

### (iv)    Costs

Under Federal Rule of Civil Procedure 54(d), costs should be allowed to the prevailing party.  Under 28 U.S.C. § 1920, the prevailing party may recover the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in this case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court

appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.  *See also* D. Del. Civ. L.R. 54.1.

### 3. Invalidity

#### a. Issues to be Litigated

1. The level of ordinary skill in the art for claims 1, 2, 3, 4, 19, and 20 of the '590 Patent.

2. Whether Defendant has failed to prove by clear and convincing evidence that claims 1, 2, 3, 4, 19, and 20 of the '590 Patent are invalid for lack of written description under 35 U.S.C. § 112.

3. Whether Defendant has failed to prove by clear and convincing evidence that claims 1, 2, 3, 4, 19, and 20 of the '590 Patent are invalid for lack of enablement under 35 U.S.C. § 112.

4. Whether Defendant has failed to prove by clear and convincing evidence that claims 1, 2, 3, 4, 19, and 20 of the '590 Patent are invalid as indefinite under 35 U.S.C. § 112.

5. Whether Defendant has failed to prove by clear and convincing evidence that claims 4 and 19 of the '590 Patent are invalid as improperly dependent under 35 U.S.C. § 112.

6. Whether Defendant has failed to prove by clear and convincing evidence that any of the claims 1, 2, 3, 4, and 20 of the '590 Patent is invalid as anticipated under 35 U.S.C. § 102.

#### b. Legal Authority

##### (i) Presumption of Validity and the Burden of Proof

"A patent shall be presumed valid."  35 U.S.C. § 282(a).  To overcome that presumption of validity, a party challenging a patent must prove facts supporting a determination of invalidity by "clear and convincing evidence."  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). "Clear and convincing evidence has been described as evidence which proves in the mind of the

trier of fact 'an abiding conviction that the truth of [the] factual contentions are [sic] highly probable.'" *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 830 (Fed. Cir. 1991) (alterations in original) (citation omitted).   Further, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."  35 U.S.C. § 282(a).

"[T]he burden of persuasion is and remains always upon the party asserting invalidity." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) (citation and emphasis omitted).  "[W]here the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue."  *Canon Comput. Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

### (ii)      Level of Ordinary Skill

Each of written description, enablement, indefiniteness, and anticipation are viewed from or take into account the perspective of one of ordinary skill in the art.  *See, e.g.*, *Bayer Healthcare LLC v. Baxalta Inc*., 989 F.3d 964, 982 (Fed. Cir. 2021) (explaining that "whether a patent is enabled—or requires undue experimentation—are questions that must be viewed 'from the perspective of one of ordinary skill in the art'" (citation omitted)); *Ariad Pharm., Inc. v. Eli Lilly & Co*., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (explaining that "the test for sufficiency" of a patent's written description "is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date"); *Dayco Prods., Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1368-1369 (Fed. Cir. 2003) (explaining that "the dispositive question regarding anticipation [i]s whether *one skilled in the art* would reasonably understand or infer from the [prior art reference's] teaching that every claim element was disclosed in that single reference" (emphasis in original));

*Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 513 (D. Del. 2017) (Bryson, J., sitting by designation) ("Enablement and indefiniteness are both assessed in light of the perspective of a person of ordinary skill in the art.").

"Factors that may be considered in determining level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citation omitted).

### (iii)    Written Description

A patent's specification "shall contain a written description of the invention." 35 U.S.C. § 112 ¶ 1. A specification adequately describes an invention when it "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (citation omitted). What is required to meet the written description requirement "varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Id.*

"For generic claims," the Federal Circuit "ha[s] set forth a number of factors for evaluating the adequacy of the disclosure, including 'the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue.'" *Id.* For genus claims using functional language, the written description "must demonstrate that the applicant has made a generic invention that achieves the claimed result and do so by showing that the applicant has invented species sufficient to support a claim to the functionally-defined genus." *Id.* at 1349. "The written description requirement [ ] ensures that

19

when a patent claims a genus by its function or result, the specification recites sufficient materials to accomplish that function." *Id.* at 1352.

Under *Ariad*, a genus can be sufficiently disclosed by "either [1] a representative number of species falling within the scope of the genus or [2] structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Id.* at 1350. In determining whether an inventor shows possession of a genus claim by disclosing a representative number of species, there are no "bright-line rules governing . . . the number of species that must be disclosed to describe a genus claim." *Id.* at 1351.

Adequate written description can be made using "words, structures, figures, diagrams, formulas, etc." *Id.* A patentee can also "rely on information that is 'well-known in the art' to satisfy written description." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) (citation omitted). A challenger to the patent must prove invalidity based on inadequate written description by clear and convincing evidence. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed. Cir. 2005).

### (iv)   Enablement

A patent's specification must "enable any person skilled in the art . . . to make and use" the patented invention without "undue experimentation." 35 U.S.C. § 112(a); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Under this standard, "[t]hat some experimentation is necessary does not preclude enablement; the amount of experimentation, however, must not be unduly extensive." *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1576 (Fed. Cir. 1984). For example, "[e]nablement is not precluded by the necessity for some experimentation such as routine screening," *Wands*, 858 F.2d at 736-37, but rather by whether the "experimentation needed to practice the invention" is "undue experimentation," *id.* at 737. "In addition, extensive

experimentation does not necessarily render the experiments unduly extensive where the experiments involve repetition of known or commonly used techniques." *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1338 (Fed. Cir. 2013) (citing *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360 (Fed. Cir. 1998)).  As such, "[t]he key word" for the enablement inquiry "is 'undue,' not 'experimentation.'" *Wands*, 858 F.2d at 737/

"Whether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *Id.* Those considerations, known as the "*Wands* factors," include (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *Id.* (citation omitted).

The burden of proof is on the defendant to show lack of enablement by clear and convincing evidence. *See Cephalon*, 707 F.3d at 1336, 1337.

### (v)    Indefiniteness

Section 112 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014); *see also* 35 U.S.C. § 112 ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention.").  The requirement that patent claims be definite requires that patents be "precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Nautilus*, 572 U.S. at 909 (citation omitted).

### (vi)    Anticipation

21

"An asserted patent claim is invalid under § 102 of the Patent Act as anticipated if the accused infringer presents clear and convincing evidence that a single prior art reference discloses, either expressly or inherently, each limitation of the claim." *Pharmacyclics LLC v. Alvogen Pine Brook LLC*, No. CV 19-0434-CFC-CJB, 2021 WL 3680317, at *5 (D. Del. Aug. 19, 2021) (citing *Brassica Protection Prods. LLC v. Sunrise Farms (In re Cruciferous Sprout Litig.)*, 301 F.3d 1343, 1349 (Fed. Cir. 2002)).  "[E]very element of the claimed invention [must be described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co*., 576 F.3d 1331, 1346 (Fed. Cir. 2009).

Inherent anticipation applies only where the anticipating characteristic of a product is not explicitly set forth in a reference. *See Cont'l Can Co. USA, Inc. v. Monsanto Co*., 948 F.2d 1264, 1268 (Fed Cir. 1991) ("To serve as an [inherent] anticipation when the reference is ***silent*** about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence.  Such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference." (emphasis added)).  Where an express disclosure in the prior art is inconsistent with a claim element, the doctrine of inherency cannot be used to rewrite the disclosure.  *See, e.g.*, *In re Oelrich*, 666 F.2d 578, 581-82 (C.C.P.A. 1981) (reversing inherent anticipation rejection because prior art expressly stated it operated with a carrier frequency in ***excess of*** a resonant frequency but the asserted claim required a carrier frequency that was ***less than*** resonant frequency).

To be inherent, an undisclosed feature must "necessarily and inevitably" flow from practice of what is disclosed.  *Schering Corp. v. Geneva Pharm., Inc*., 339 F.3d 1373, 1378 (Fed. Cir. 2003).  "Inherency, however, may not be established by probabilities or possibilities.  The mere

fact that a certain thing may result from a given set of circumstances is not sufficient." *Cont'l Can Co. USA, Inc.*, 948 F.2d at 1269.  The prior art does not inherently anticipate if its teachings can be practiced in a way that yields a product lacking the alleged inherent property. *Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047-48 (Fed. Cir. 1995) (upholding a finding of no inherent anticipation where testing evidence showed that a prior art example could yield crystals of either the claimed polymorph or a different polymorph).

When testing is conducted to determine that a characteristic missing from a prior art reference is inherent, the patent challenger has the burden to show that the tested material is the same as the material described in the reference. *In re Armodafinil Patent Litig. Inc. ('722 Patent Litig.)*, 939 F. Supp. 2d 456, 478 (D. Del. 2013) ("[T]he defendants have failed to prove anticipation by clear and convincing evidence because they have not established that their Preparation I experiments were accurate and produced the material intended by the [prior art]."). Moreover, an allegedly inherent property of a prior art compound does not necessarily and inevitably result from the prior art when POSITA is required to use her judgment to select conditions and procedures to reproduce the compound for testing. *Id*. at 479.

### B.    Defendant's Statement of Contested Issues of Law

Genentech submits the following statement of issues of law to be litigated at trial.

This statement is based on the arguments Genentech expects to make as well as its understanding of the arguments that Plaintiffs are likely to make.  Genentech reserves the right to modify or amend this statement to the extent necessary to fairly respond to any new issues that Plaintiffs may raise, if Plaintiffs are permitted to so raise new issues.  Genentech further reserves the right to modify or amend this statement based upon the resolution of any outstanding motion or other future ruling by the Court.  The following statements are not exhaustive and Genentech reserves the right to prove any matters identified in its pleadings, infringement contentions,

interrogatory responses, and/or expert reports.  Genentech also intends to offer evidence as to the issues of fact and issues of law identified in this pretrial order.  Genentech further intends to offer evidence to rebut evidence offered by Plaintiffs.

To the extent Genentech's statement of issues of fact that remain to be litigated contains issues of law, those issues are incorporated by reference.  To the extent this statement of issues of law that remain to be litigated contains issues of fact, those issues are incorporated into Genentech's statement of issues of fact that remain to be litigated.  Genentech's statement includes, for purposes of completeness, certain fact issues raised by the parties' contentions, without waiver of any argument regarding whether a particular issue is one of fact or law.  By providing this statement, Genentech does not concede that all of these issues are appropriate for determination by the jury, as some of these issues require determination by the Court.  By including a fact herein, Genentech does not assume the burden of production or persuasion with regard to that issue.

### 1.  Infringement

#### a.  Issues to be Litigated

1.  Whether Plaintiffs have proven by a preponderance of the evidence that Genentech is liable for infringing one or more of the Asserted Claims (claims 1–4, 19, 20) of the '590 Patent.

2.  Whether Plaintiffs can avail themselves of the doctrine of equivalents as a matter of law.

3.  Whether Plaintiffs have proven by a preponderance of the evidence that Genentech willfully infringed one or more of the Asserted Claims (claims 1–4, 19, 20) of the '590 Patent.

#### b.  Legal Authority

##### (i)  Literal Infringement and Infringement under the Doctrine of Equivalents

A claim may be infringed either: (1) literally; or (2) under the judicially-created doctrine of equivalents.  Further, because a dependent claim incorporates all the elements and limitations of the independent claim on which it depends, a dependent claim cannot be infringed unless each and every element of the underlying independent claim is also infringed.  *Forest Labs., Inc.* v. *Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001).

To find literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly."  *See Transocean Offshore Deepwater Drilling, Inc.* v. *Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1356 (Fed. Cir. 2012) (quoting *Southwall Techs., Inc.* v. *Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)).  The failure to meet even a single element within a claim mandates a finding that the accused product does not literally infringe the patent.  *Laitram Corp.* v. *Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).

Infringement under the doctrine of equivalents requires the patent owner to show, for each claim asserted, the presence of each and every claim element or its substantial equivalent in the accused device. *See Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997); *Wolverine World Wide, Inc.* v. *Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732-33 (2002).  An equivalent of a missing claim element or limitation is found only if "'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused [product]."  *Abbott Labs.* v. *Novopharm Ltd.*, 323 F.3d 1324, 1329 (Fed. Cir. 2003) (quoting *Sage Prods., Inc.* v. *Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997)).  Essentially, if an accused product performs substantially the same function in substantially the same way to obtain substantially the same result, then infringement by equivalency may be found.  In determining whether the differences are "insubstantial," one may consider whether the accused product is covered by separate, later-

issued patents not owned by Plaintiffs and whether, during their prosecution, the '590 Patent was cited and considered by the patent examiner when he or she granted those patents over the '590 Patent. *Zygo Corp.* v. *Wyko Corp.*, 79 F.3d 1563, 1570 (Fed. Cir. 1996); *Nat'l Presto Indus., Inc.* v. *W. Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996); *see Siemens Med. Solutions USA, Inc.* v. *Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1281 (Fed. Cir. 2011); *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 493 F.3d 1368, 1379–80 (2007).

One may not obtain under the doctrine of equivalents coverage of subject matter that was relinquished during prosecution. *Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.*, 520 U.S. 17, 30 (1997).  Whether prosecution-history estoppel applies is a question of law, *see Business Objects, SA* v. *Microstrategy, Inc.*, 393 F.3d 1366, 1372 (Fed. Cir. 2005), and claim amendments made during prosecution for a "substantial reason related to patentability" presumptively trigger estoppel as to all subject matter between the original claim and amended claim, *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 735, 740 (2002).  Where there is no explanation for a narrowing amendment, the Court may presume that it was related to patentability. *See Warner-Jenkinson*, 520 U.S. at 33; *Festo*, 535 U.S. at 739–40.

### (ii)   Willful Infringement

In order to find that a defendant willfully infringed a patent, the jury must find, by a preponderance of the evidence, that the infringement was "deliberate or intentional."  *SRI Int'l, Inc.* v. *Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) (citing *Eko Brands, LLC* v. *Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)); *see Halo Elecs., Inc.* v. *Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934 (2016).  This standard may be satisfied where the plaintiffs show that defendant knew or should have known that its actions constituted "an unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat Inc.* v. *Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017); *Shopify Inc.* v. *Express Mobile, Inc.*, 2021 WL

4288113, at *20 (D. Del. Sept. 21, 2021). "[K]nowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness." *Bayer Healthcare LLC* v. *Baxalta, Inc.*, 989 F.3d 964, 988, (Fed. Cir. 2021). The fact-finder may consider whether defendant's non-infringement and invalidity defenses, as presented at trial, were reasonable, even if not ultimately successful. *SRI Int'l Inc.* v. *Cisco Sys., Inc.*, 14 F.4th 1323, 1328–29 & n.1 (Fed. Cir. Sept. 28, 2021). The fact-finder may also consider any failure by the plaintiffs to prove defendant literally infringed and their reliance, instead, on the doctrine of equivalents to prove infringement. *WMS Gaming Inc.* v. *Int'l Game Tech.*, 184 F.3d 1339, 1354–55 (Fed. Cir. 1999). And here, whether Genentech obtained pre-suit opinions of counsel is irrelevant to the analysis, as Genentech has not waived the privilege to rely on such an opinion and a jury may not draw an adverse inference from a defendant's failure to obtain an opinion or its decision not to waive privilege. *See* 35 U.S.C. § 298; *SRI Int'l, Inc.* v. *Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019).

> ## 2.   Damages
>
> ### a.   Issues to be Litigated[5]

1.   Plaintiffs' damages for Genentech's alleged infringement of the '590 Patent.

2.   Whether Plaintiffs or Genentech is entitled to an award of prejudgment and post-judgment interest on any judgment entered in its favor and, if so, the dollar amount of such award.

3.   Whether Plaintiffs or Genentech is entitled to a finding that this case is exceptional pursuant to 35 U.S.C. § 285 and whether Plaintiffs or Genentech is entitled to an award of attorney's fees.

---

[5] Genentech notes that any issues of enhanced damages under 35 U.S.C. § 284, interest on any damages award, issues of exceptionality and any award of attorney's fees, and any award of costs are determined by the Court, and not the jury, so they are not issues that will be litigated at the jury trial in this matter.

4.      Whether Plaintiffs or Genentech is entitled to costs and, if so, the dollar amount of such costs.

### b.      Legal Authority

### (i)      Patent Damages Generally

In the event that the fact-finder finds infringement of one or more of Plaintiffs' Asserted Claims, the Court may award damages, as asserted here, based on "a reasonable royalty for the use made of the invention by the infringer."   35 U.S.C.  § 284.   The Court "may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."  *Id.*  The reasonable royalty may be determined by considering a hypothetical negotiation between the parties on the eve of the first alleged infringement, with a presumption that "the parties had full knowledge of the facts and circumstances surrounding the infringement at that time."  *LaserDynamics, Inc.* v. *Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012); *Georgia-Pacific Corp.* v. *U.S. Plywood Corp.*, 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970).

In determining a reasonable royalty, parties frequently rely on comparable license agreements.  *See Georgia–Pacific*, 318 F. Supp. at 1120.  Assessing the comparability of licenses requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation.  *LaserDynamics*, 694 F.3d at 79.  Post-infringement evidence may be probative in certain circumstances.  *Lucent Techs., Inc.* v. *Gateway, Inc*., 580 F.3d 1301, 1333 (Fed. Cir. 2009). The hypothetical negotiation analysis permits and often requires a fact-finder to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.  *Id.*; *Fromson* v. *W. Litho Plate & Supply Co*., 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH* v. *Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).  Ultimately, however, the analysis must relate to the

time of the hypothetical negotiation, and not be an after-the-fact assessment. *Aqua Shield* v. *Inter Pool Cover Team*, 774 F.3d 766, 772 (Fed. Cir. 2014).

The patentee must in every case give evidence tending to separate or apportion the patentee's damages between the patented feature and the unpatented features. *Id.* at 67. Where a royalty is at issue, no matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features. *VirnetX, Inc.* v. *Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

As a framework, a reasonable royalty may be determined by considering the *Georgia-Pacific* factors, to the extent that they are applicable. *Georgia–Pacific*, 318 F. Supp. at 1120; *see also Ericsson, Inc.* v. *D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014).

### (ii)  Pre- and Post-Judgment Interest

Any interest on any damages award is fixed by the Court and is not determined by the jury, 35 U.S.C. § 284, so it is not an issue that will be litigated at the jury trial in this matter. In any event, pre-judgment interest is ordinarily awarded in patent cases, to make the patent owner whole, since its damages "consist not only of the value of the royalty payments but also of the forgone use of the money between the time of the infringement and the date of the judgment." *Gen. Motors Corp.* v. *Devex Corp.*, 461 U.S. 648, 655–57 (1983); 35 U.S.C § 284. The Court has broad discretion to determine the appropriate interest rate to apply. *See Uniroyal, Inc.* v. *Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991). But an award is not automatic. *Gen. Motors*, 461 U.S. 648, 655–57. "For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit. There may be other circumstances in which it may be appropriate not to award prejudgment interest." *Id.* at 656–57.

With respect to any award of post-judgment interest, it is awarded on monetary judgments and, under 28 U.S.C. § 1961, is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."

### (iii)    Enhanced Damages, Exceptionality, and Attorney's Fees

Enhanced Damages.  Whether and the amount to which any damages award is enhanced is determined by the Court, and not the jury, 35 U.S.C. § 284, so it is not an issue that will be litigated at the jury trial in this matter.  In any event, the Court may exercise its discretion to increase any damages award "up to three times the amount found or assessed."  35 U.S.C. § 284; *Presidio Components, Inc.* v. *Am. Tec. Ceramic Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017).  Here, Plaintiffs seek enhancement based on, if proven, their allegations of willful infringement.  "[A] finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages."  *Read Corp.* v. *Portec Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), *overruled on other grounds by Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995); *see also Presidio Components*, 875 F.3d at 1382.

Rather, awards of enhanced damages under the Patent Act are not awarded "in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate. District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount.  But through nearly two centuries of discretionary awards and review by appellate tribunals, "the channel of discretion ha[s] narrowed,"

30

so that such damages are generally reserved for egregious cases of culpable behavior." *Halo, Elecs., Inc.* v. *Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

In determining whether to enhance damages based on willfulness, a court may consider the factors set forth in *Read Corp.* v. *Portec Inc.*, 970 F.2d 816, 826–27 (Fed. Cir. 1992), but it is not required to do so. *Presidio Components*, 875 F.3d at 1382–83. The Court is merely required to consider the particular circumstances of the case to determine whether it is egregious. *Id.* In considering whether to enhance damages, the Court's review is not necessarily restricted to evidence produced in discovery or at trial. *Halo Elecs., Inc.* v. *Pulse Elecs., Inc*., 281 F. Supp. 3d 1087, 1092 (D. Nev. 2017).

Exceptional Case. Whether this case is an "exceptional case," under 35 U.S.C. § 285, warranting the award of reasonable attorney's fees to the prevailing party is determined by the Court, and not the jury, so it is not an issue that will be litigated at the jury trial in this matter. In any event, district courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014). An exceptional case is one that "stands out from others with respect to the substantive strength of a party's litigating position" or "the unreasonable manner in which the case was litigated." *Id.* There is no precise rule or formula for making these determinations, but instead "equitable discretion should be exercised." *Id.* The Supreme Court has suggested that district courts could consider a "nonexclusive" list of "factors," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. For example, a court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently

sanctionable—is nonetheless so "exceptional" as to justify an award of fees. *Id.* at 554. Also, a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award. *Id.* The preponderance of the evidence standard applies. *Id.* at 557.

The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Raniere* v. *Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018). As for a defendant, the inquiry is limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision effects or rebuffs a plaintiff's attempt to effect a "material alteration in the legal relationship between the parties." *Id.* at 1306. As a matter of law, a party who has a competitor's patent declared invalid meets the definition of "prevailing party." *Manildra Milling Corp.* v. *Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996).

### (iv)   Costs

Whether either party's costs are to be awarded is a determination made by the Court, and not the jury, so it is not an issue that will be litigated at the jury trial in this matter. In any event, Rule 54(d) provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The prevailing party issue under Rule 54 and 35 U.S.C. § 285 are treated in a similar fashion. *Raniere* v. *Microsoft Corp.*, 887 F.3d 1298, 1307 n.3 (Fed. Cir. 2018). Section 1920 and Local Rule 54.1 set forth the fees that are awardable under Rule 54(d).

### 3.   Invalidity

### a.   Issues to be Litigated

1. The level of ordinary skill in the art for the asserted claims of the '590 Patent, an issue that may be affected by one or more of the parties' *Daubert* motions.

2.     Whether each of the Asserted Claims of the '590 Patent is invalid for lack of written description under 35 U.S.C. § 112, including without limitation for failing to describe species that are structurally or functionally representative of the claimed genera, for failing to describe sufficient species that have any procoagulant activity at all, and for failure to describe species representative of emicizumab.

3.     Whether each of the Asserted Claims of the '590 Patent is invalid for lack of enablement under 35 U.S.C. § 112, including without limitation for failing to enable the creation of species across the structural and functional breadths of the claimed genera, for failing to enable the creation of species with meaningful procoagulant activity, and for failing to enable the creation of species representative of emicizumab.

4.     Whether each of the Asserted Claims of the '590 Patent is invalid as indefinite under 35 U.S.C. § 112.

5.     Whether each of Claims 4 and 19 of the '590 Patent is invalid as improperly dependent under 35 U.S.C. § 112.

6.     Whether each of Claims 1–4 and 20 of the '590 Patent is anticipated by a prior art antibody, HIX-1, and thus invalid under 35 U.S.C. § 102.

### b.     Legal Authority

#### (i)     Written Description

A patentee is required to provide a disclosure sufficient to convey with reasonable clarity to persons skilled in the art, as of the effective filing date, that the patentee in fact invented what is claimed. *Centocor Ortho Biotech, Inc.* v. *Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2014). That is, the patent specification, including its figures and claims, must allow a person of ordinary skill to easily recognize that the patentee was in possession of the claimed invention as of his/her asserted priority date. *Ariad Pharm., Inc.* v. *Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010)

(*en banc*).  Compliance with the written description requirement involves both an assessment of the scope of the claims and the adequacy of the specification to support claims of such scope.  *See id.*  The test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.  *Id.*  A description that merely renders the invention obvious does not satisfy the requirement.  *Id.*

If the claims of a patent cover generic-scope inventions, the specification is assessed for sufficient disclosure of species within the claimed genus.  *See id.* at 1355.  When a claim is phrased in functional language, a limited number of disclosed species may adequately support it <u>if</u> there is a known correlation between structure and function.  *See id.* at 1350.  However, where there is no known structure/function correlation, an appropriate number of species representative of the claimed genus across its scope must be disclosed.  *Id.*  Furthermore, numerous species that are closely related, *i.e.*, derived from a common parent or the like, are not considered independently representative.  *AbbVie Deutschland GmbH* v. *Janssen Biotech, Inc.*, 759 F.3d 1285, 1300–01 (Fed. Cir. 2014).  Their disclosure, thus, does not count as a disclosure of multiple representative species in the assessment of whether there is adequate support for the claim.  *Id.*

Additionally, one may be permitted to go beyond the four corners of the patent to determine the representativeness of the disclosed species.  Evidence showing that a claimed genus does not disclose a representative number of species may include evidence of species that fall within the claimed genus that are not disclosed by the patent, but, instead, post-date the priority date of the patent.  *Amgen Inc.* v. *Sanofi*, 872 F.3d 1367, 1374 (Fed. Cir. 2017).

*AbbVie* allowed consideration of the accused infringing product to inform the scope of the claimed genus and the adequacy of the specification to support it.  *AbbVie Deutschland GmbH* v. *Janssen Biotech, Inc.*, 759 F.3d 1285 (Fed. Cir. 2014).  According to the Federal Circuit in *AbbVie*,

"the patent[] must at least describe some species representative of antibodies that are structurally similar to [the accused infringing product]."  *Id.* at 1301.  Since *AbbVie*, other cases have considered the accused product as part of the written description requirement.  *See, e.g.*, *Idenix Pharm. LLC* v. *Gilead Scis. Inc.*, 941 F.3d 1149, 1164–65 (Fed. Cir. 2019) (in the absence of guidance on what makes the species within a genus effective or why, "the listed examples and formulas cannot provide adequate written description support for undisclosed [species within the genus] that also happens to treat HCV.  The written description requirement specifically defends against such attempts to 'cover any compound later actually invented and determined to fall within the claim's functional boundaries.'"); *Amgen Inc.* v. *Sanofi*, 872 F.3d 1367, 1377–78 (Fed. Cir. 2017) (rejecting the "newly characterized antigen" test as "[a]n adequate written description must contain enough information about the actual makeup of the claimed products—'a precise definition, such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials,' which may be present in 'functional' terminology 'when the art has established a correlation between structure and function.'"); *Amgen Inc.* v. *Sanofi*, No. 1:14-cv-01317-RGA, 2019 WL 4058927, (D. Del. Aug. 28, 2019); *MorphoSys AG* v. *Janssen Biotech, Inc.*, 358 F. Supp. 3d 354 (D. Del. 2019).  When the Federal Circuit addressed deposits of claimed materials in publicly accessible depositories in the written description context, it held that the written description requirement for claims to hybridization probes with specific DNA sequences was satisfied by referring to a publicly available deposit of micro-organisms containing the DNA sequences but left unanswered whether, and explicitly declined to hold that, claims of generic scope were adequately supported by the deposits.  *Enzo Biochem, Inc.* v. *Gen-Probe, Inc.,* 323 F.3d 956 (Fed. Cir. 2002).

### (ii)    Enablement

To satisfy the enablement requirement, a patent specification must teach a person of ordinary skill in the art how to make and use the claimed invention without undue experimentation. *Wyeth* v. *Abbott Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013).  The "[f]actors to be considered in determining whether a disclosure would require undue experimentation . . . include (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims."  *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  The person of ordinary skill can draw upon what is already known in the art as of the effective filing date of the patent. Thus, the extent to which a patent enables its claims to be practiced without undue experimentation is based on the teachings of the specification and the knowledge of one of ordinary skill in the art. A patent specification is not enabling if it amounts to no more than an invitation to a person of ordinary skill to engage in research that may or may not result in the claimed invention.  *See, e.g., Enzo Biochem, Inc.* v. *Calgene, Inc.*, 188 F.3d 1362, 1374–75 (Fed. Cir. 1999); *Idenix Pharm. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1160 (Fed. Cir. 2019); *Amgen Inc.* v. *Sanofi*, 987 F.3d 1080, 1086–88 (Fed. Cir. 2021).  For a patent specification to be deemed compliant with the enablement requirement, its enabling detail must be at least commensurate with the scope of the claims. *MagSil Corp.* v. *Hitachi Global Storage Techs.*, Inc. 687 F.3d 1377, 1380–81 (Fed. Cir. 2012).  If claims are not enabled across their scope, they are invalid for failure to comply with the enablement requirement of 35 U.S.C. § 112.  *Id.*

In judging whether or not a patent specification is enabling, post-filing date references may be considered.  *See Enzo Biochem, Inc.* v. *Calgene, Inc.*, 188 F.3d 1362, 1375–77 (Fed. Cir. 1999); *Amgen* v. *Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1336 (Fed. Cir. 2003).  Post-filing date

references that show a claimed invention remained unknown or was never achieved after the filing date are evidence that the patent lacks an enabling disclosure. *Chiron Corp.* v. *Genentech, Inc.*, 363 F.3d 1247, 1254–55 (Fed. Cir. 2004).

### (iii)    Indefiniteness

Where the claims of a patent, read in light of its specification and prosecution history, fail to inform those skilled in the art about the scope of the invention with reasonable certainty, such claims are invalid under 35 U.S.C. § 112 for indefiniteness. *Nautilus, Inc.* v. *Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). Indefiniteness may exist where elements specified by the claim may be measured or assessed by a variety of means, none of which are written into the claim. In such instances, where something falls within the scope of the claim when assessed or measured by one means, but is excluded from the scope of the claim when assessed or measured by another means, the claim is invalid for indefiniteness. *Dow Chem. Co.* v. *NOVA Chems. Corp. (Canada)*, 803 F.3d 620, 634–35 (Fed. Cir. 2015); *Teva Pharm. USA, Inc.* v. *Sandoz, Inc.*, 789 F.3d 1335, 1344–45 (Fed. Cir. 2015).

### (iv)    Improper dependency

Under 35 U.S.C. § 112(d), a dependent claim must further limit the scope of the claim on which it depends. If a dependent claim encompasses subject matter not covered by the claim it depends on, *i.e.* is broader in scope, it is invalid.

### (v)    Anticipation

Under 35 U.S.C. § 102(a), a patent claim is invalid if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." Under 35 U.S.C. § 102(b), a patent claim is invalid if "the invention was patented or described in a printed publication in this or a foreign

country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

A patent claim is anticipated if a "single prior art reference discloses, either expressly or inherently, each limitation of the claim." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002). Therefore, a patent claim may be anticipated even if a prior-art reference does not expressly point out each limitation of the claim. *Id.* Such inherent disclosure does not need to be recognized by a person of ordinary skill in the art if practice of the prior art inevitably produces the claimed feature. *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1373 (Fed. Cir. 2007); *Abbott Labs.* v. *Baxter Pharm. Prods. Inc.*, 471 F.3d 1363, 1368 (Fed. Cir. 2006) ("Inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.") (citation omitted).

## V.    WITNESSES

Presentation of evidence will follow the burden of proof. Plaintiffs will go first and present their case-in-chief on infringement and damages. Genentech will then present its response on infringement and damages, and its case-in-chief on invalidity. Plaintiffs will then present their response on invalidity.

The listing of a witness on a party's witness list does not require the party to call that witness to testify, and does not imply or establish that the listing party has the power to compel the live testimony of that witness or make that witness available to the opposing party. Any witness not listed will be precluded from testifying, absent good cause shown. Fact witnesses will be sequestered.

The parties stipulate that each of the expert witnesses identified below is qualified under the Federal Rules to testify as an expert on the subject matter(s) identified for each expert witness,

subject to any prior rulings limiting their testimony. The parties further agree that the Court consider these expert witnesses tendered for their identified subject matter and ask that the Court accept the tenders without further need for qualification. Notwithstanding the foregoing, the parties may present their experts' qualifications to the jury.

### A. List of Witnesses Plaintiffs Expect to Call

#### 1. Expert Witnesses

- Dr. Sriram Krishnaswamy will testify on infringement and validity of the '590 Patent and will respond to the testimony of Defendant's witnesses.

- Dr. Wayne Marasco will testify on validity of the '590 Patent and will respond to the testimony of Defendant's witnesses.

- Dr. Paul Freedman will testify on validity of the '590 Patent and will respond to the testimony of Defendant's witnesses.

- Dr. Chien-Hsing (Ken) Chang will testify on the validity of the '590 Patent and will respond to the testimony of Defendant's witnesses.

- Dr. Jeffrey Gray will testify on his experimental work regarding antibodies disclosed form hybridoma cell lines disclosed in the '590 Patent and Genentech's emicizumab antibody and will respond to testimony of Defendant's witnesses.

- James Malackowski will testify on damages due to Plaintiffs for Genentech's infringement of the '590 Patent and will respond to the testimony of Defendant's witnesses.

#### 2. Non-Expert Witnesses

- Friederich Scheiflinger

- Rebekah Carty

- Defendant's Corporate Representative(s) (adverse)

Plaintiffs reserve the right to call witnesses identified by Defendant or additional witnesses for impeachment or rebuttal or to authenticate documents.

**B.    List of Witnesses Defendant Expects to Call**

**1.    Expert Witnesses**

- Dr. Guy Young will testify about various treatments for hemophilia A and will respond to the testimony of Plaintiffs' witnesses regarding apportionment, *e.g.*, the drivers of consumer demand, and the technological comparability of asserted licenses.

- Dr. K. Christopher Garcia will testify about the invalidity of the '590 Patent and will respond to the testimony of Plaintiffs' witnesses.

- Dr. Stephanie A. Smith will testify about her experimental work regarding antibodies produced by hybridoma cell lines disclosed in the '590 Patent, and invalidity of the '590 Patent, and will respond to the testimony of Plaintiffs' witnesses.

- Dr. John P. Sheehan will testify about the invalidity of the '590 Patent and will respond to the testimony of Plaintiffs' witnesses.

- Dr. William R. Strohl will testify about the invalidity and infringement of the '590 Patent and will respond to the testimony of Plaintiffs' witnesses.   He will also testify with respect to technical issues underlying apportionment.

- Dr. Dougald M. Monroe III will testify about his experimental work regarding prior art antibody HIX-1, and about the invalidity and infringement of the '590 Patent, and will respond to the testimony of Plaintiffs' witnesses.  He will also testify with respect to technical issues underlying apportionment.

- Dr. Richard Manning will testify with respect to the background of the industry, damages, the economic and business risk associated with HEMLIBRA®'s development, and the consistency of Defendant's development and commercial of HEMLIBRA® against typical industry practices in the presence of such risks.  He will respond to the testimony of Plaintiffs' witnesses.

- Dr. Steven Schwartz will testify with respect to damages and will respond to the testimony of Plaintiffs' witnesses.

- Dr. Matthias J. Feige will testify about his experimental work regarding hybridoma cell lines disclosed in the '590 Patent and will respond to the testimony of Plaintiffs' witnesses.

- Dr. Tanja Kortemme will testify on the invalidity of the '590 Patent and will respond to the testimony of Plaintiffs' witnesses.

### 2. Non-Expert Witnesses

- Suha Patel

- Dr. Takehisa Kitazawa

- Gabriele Gerstenbauer by deposition

- Dr. Randolf J. Kerschbaumer by deposition

- Dr. Friederich Scheiflinger — Genentech recognizes that Dr. Scheiflinger appears on Plaintiffs' witness list as a live trial witness. The Parties will confer to streamline the presentation of Dr. Scheiflinger's testimony with the intent of avoiding the need to have Dr. Scheiflinger testify twice.

Defendant reserves the right to call witnesses identified by Plaintiffs or additional witnesses for impeachment or rebuttal or to authenticate documents.

### C. Testimony by Deposition

Plaintiffs' designations of deposition testimony that they may introduce at trial, Defendant's objections to such designations, Defendant's counter-designations, and Plaintiffs' objections to Defendant's counter-designations are attached as **Exhibit 1**.

Defendant's designations of deposition testimony that it may introduce at trial, Plaintiffs' objections to such designations, Plaintiffs' counter-designations, and Defendant's objections to Plaintiffs' counter-designations are attached as **Exhibit 2**.

This pretrial order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony; none of the foregoing may be supplemented without approval of both parties or leave of the Court, on good cause shown, although parties may object to deposition designations based on future Court rulings on pending motions *in limine*.  Each party reserves the right to object to the relevance or admissibility of any evidence offered by another party at the time such evidence is offered and in view of the specific

context in which such evidence is offered, only if that objection could not have been made timely as part of the Pretrial Order submissions because such context was not made available to the objecting party at the time.  These designations cover witnesses who will testify via deposition. The parties are not required to designate deposition testimony relied on by an expert and cited in the expert's report or deposition testimony to be used on cross-examination.  In the event that a party cannot or does not call any designated "will call" live witness to trial, the other party may identify additional designations to which the other party may object and offer counter designations. All objections and colloquy of counsel will be eliminated from the deposition designations when the designations are read to or viewed by the jury.

### 1.     Procedure for Deposition Testimony Disclosure

By 7:30 p.m. EST no later than three (3) calendar days before the designations are intended to be used in Court, each party will provide the other with a list of final deposition designations (from the previously designated testimony in the Final Pretrial Order) that it intends to introduce, and identify the manner in which the deposition will be used, either by video or reading the transcript into the record.  By 7:30 p.m. EST on the following day, the opposing party will provide its counter-designations and any objections to the other party's designations.  The opposing party will also specify if it intends to play the deposition video of its counter-designations or read the transcript in Court.  By 8:30 p.m. EST on the same day, the original party will provide its objections to the opposing party's counter-designations.  By 9:00 p.m. EST on the same day, the parties will meet and confer concerning objections.  Any remaining objections will be presented to the Court one (1) calendar day before the witness is to be called at trial via deposition, and no testimony subject to remaining objections may be played back before the Court resolves objections.

If there are objections that remain to be resolved, the party calling the witness by deposition shall, no later than one (1) calendar day before the witness is to be called at trial, submit, on behalf of both parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than one sentence per objection) of the basis for the objection and the offering party's response to it.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of the deposition testimony or waiver of objections to the use of the deposition testimony.

All colloquy between counsel and objections will be eliminated when the deposition is read or viewed at trial.

When the witness is called to testify by deposition at trial, the party calling the witness will provide the Court with two copies of the transcript of the final designations and counter-designations that will be read or, if presented by video, played.  A party may introduce the deposition excerpt by video instead of, or in addition to, by transcript.  If a party opts to introduce deposition testimony by video, the opposing party's counter-designations of that same witness's deposition testimony can (at the opposing party's option) be submitted in the same video, but do not need to also be submitted by video.

When deposition designation excerpts are introduced, all admissible designations the introducing party opts to submit and all admissible counter designations the opposing party opts to submit, whether offered by video or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given.

The parties will be charged for all time taken to read or play their designations according to  (i) if read, the proportion of lines of testimony for its designations to the total number of lines of testimony read, or (ii) if played, by the actual time elapsed on the video recording when played.

Any transcripts of testimony (excluding testimony given during this trial) must have been previously designated by the parties and cleared of any outstanding objections before being shown to the jury during opening or on direct examination.

### D.     Impeachment with Prior Inconsistent Testimony

Deposition and other testimony not specifically identified on a party's deposition designation list may be used at trial for the purpose of impeachment if otherwise permittable for such purpose.  The parties agree that the Court should rule at trial on any objections based on lack of completeness and/or lack of inconsistency.

### E.     Objections to Expert Testimony

The parties will submit motions *in limine* that may affect the scope of expert testimony pursuant to the schedule set forth in the Court's Scheduling Order.  D.I. 356.  The parties agree that the Court should rule at trial on any objections to expert testimony as beyond the scope of prior expert disclosures, and that a failure to object to expert testimony as beyond the scope of prior expert disclosures waives the objection as to that testimony.  The time taken to argue and decide such objections will be taken from the time for trial available to either the party making the objection, if the objection is overruled, or the party against whom the objection is made, if the objection is sustained.

### F.     Witness Disclosure Procedure

Each party will provide the other a list identifying the specific witnesses that it intends to call on direct, and the order in which live witnesses will be called, by 7:30 p.m. EST two (2) calendar days before that party believes in good faith that it will begin direct presentation of

evidence.  Each party will identify which witnesses will be called live and which will be offered by deposition.  Each party shall update its list of expected witnesses for the following day by 7:30 p.m. at the end of each trial day, so long as the party has remaining witnesses that it intends to call on direct for that portion of the case.  The parties will cooperate in good faith to keep the other side informed of the anticipated length of the questioning (both direct and cross) of each witness.

Although the parties will undertake all reasonable efforts for a witness to testify live at trial, remote testimony by Zoom or comparable video-conference platform will be permitted for a witness in the event of any unforeseen COVID-related restrictions on travel for that witness.  The parties will meet and confer regarding logistics for any such remote testimony.

Each party must also notify the other party when it intends to rest its case (including rebuttal) by 7:30 p.m. EST one (1) calendar day before the day on which it expects to rest its case (including rebuttal).

## VI.    EXHIBITS

### A.    Exhibits

Plaintiffs' list of trial exhibits that they intend to offer at trial, including Defendant's objections, is attached as **Exhibit 3**.  Plaintiffs reserve the right to rely on additional exhibits for purposes of impeachment or rebuttal.

Defendant's list of trial exhibits that it intends to offer at trial, including Plaintiffs' objections, is attached as **Exhibit 4**.  Defendant reserves the right to rely on additional exhibits for purposes of impeachment or rebuttal.

A list of exhibits that are on both parties' respective exhibits lists, to which there have been no objections lodged, is attached as **Exhibit 5**.

A key for objections to exhibits and to designated deposition testimony is attached as **Exhibit 6**.

Joint trial exhibits will be identified with **JTX** numbers. Plaintiffs' trial exhibits will be identified with **PTX** numbers. Defendant's trial exhibits will be identified with **DTX** numbers.

Unless a specific authenticity objection is made, the parties stipulate to the authenticity of all exhibits listed on the parties' exhibit list.

This pretrial order contains the parties' good faith efforts to identify the universe of exhibits to be used in any party's case, as well as the objections to the admission of such exhibits. To the extent supplemental exhibits are identified, the parties agree to disclose any supplemental exhibits promptly after identification. Reasonable supplementation of exhibit lists will be permitted until 6:00 p.m. EST on January 17, 2021, and all supplemental exhibits must be received by that time. After that time, further supplementation shall be permitted only by agreement of the parties or with leave of the Court on good cause shown. Objections to the supplemental exhibits shall be due no later than 9 a.m. EST on the first day of trial. The parties reserve the right to offer additional exhibits for impeachment, rebuttal, or reply purposes.

Each party reserves the right to use any exhibit that is listed on the other party's exhibit list to the same extent as if it were on its own exhibit list, subject to any evidentiary objections. All objections to such exhibits are preserved. Any exhibit, once admitted, may be used equally by any party, subject to any limitations as to its admission into evidence.

The parties reserve their rights to raise all objections to exhibits as set forth on the trial exhibit lists.

The listing of a document on a party's trial exhibit list does not constitute an admission as to the relevance or admissibility of that document when offered by the opposing party for the

purpose that the opposing party wishes to enter the document into evidence.  Each party reserves the right to object to the relevance or admissibility of any evidence offered by another party at the time such evidence is offered and in view of the specific context in which such evidence is offered, only if that objection could not have been made timely as part of the Pretrial Order submissions because such context was not made available to the objecting party at the time.  The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.  Nothing herein shall be construed as a stipulation or admission that a document is entitled to any weight in deciding the merits of this case.

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

Absent agreement of the parties or order of the Court, no exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit.  At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence by exhibit number.  Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.  Once admitted, counsel may publish exhibits to the jury without requesting to do so.

Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness.

### 1.    Procedure for Trial Exhibit Disclosure

A party will provide exhibits to be used in connection with examination of a non-adverse witness by 7:30 p.m. EST the night before their intended use.  Objections will be provided no later

than 8:30 p.m. EST the night before their intended use, and the parties shall meet and confer about any objections by 9:00 pm EST the night before their intended use.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention at the beginning of the trial day the witness is to be called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties or approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

## 2. Stipulations Concerning Trial Exhibits

Any exhibit, once admitted at trial, may be used equally by either party for any proper purpose in accordance with the Federal Rules of Evidence.  The listing party need not list objections to the other party's introduction of such exhibits into evidence.

Any trial exhibit that was produced in discovery by a party or non-party and that on its face appears to have been authored by an employee, officer, or agent of the party or non-party producing such document, will be deemed to be a true and correct copy of a document maintained in that party/non-party's files as of the date of the party/non-party's document collection under Federal Rule of Evidence 901.

## B. Demonstrative Exhibits

The demonstrative exhibits the parties intend to use at trial do not need to be included on their respective lists of trial exhibits.  Plaintiffs' demonstratives will be identified with **PDX** numbers.  Defendant's demonstratives will be identified with **DDX** numbers.

The parties will provide copies of demonstrative exhibits expected to be used during the direct examination of a witness by 7:30 p.m. EST the night before their intended use, with an agreement that any changes to the demonstratives made after such exchange will be only font/layout/format/to correct typographical errors and not edits of substance, unless made in response to and for the purpose of resolving an objection.  Objections will be provided no later

than 8:30 p.m. EST the night before their intended use, and the parties shall meet and confer about any objections by 9:00 pm EST the night before their intended use.  If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form.  Any video or animations must be provided in a format that allows for viewing the video or animations.  For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation of it in PDF format or make them available for inspection.

This provision does not apply to demonstratives created during testimony or demonstratives in connection with cross examination, none of which need be provided to the other side in advance of their use.  The parties also are not required to identify demonstrative exhibits previously used with a witness during trial.  In addition, blow-ups, enlargements, highlights, or call outs of exhibits or testimony are not required to be provided to the other side in advance of their use, provided that the demonstrative is limited to material from exhibits or testimony only. In the event blow-ups, enlargements, highlights, or call outs of exhibits or testimony include, are coupled with, or presented alongside any characterizations, arguments, or the like, the foregoing provisions regarding exchange apply.

Demonstrative exhibits need not be included in the parties' respective exhibit lists. Reasonable, non-substantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits before use.

If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party must bring its objections to the Court's attention before the opening statement or before the

applicable witness being called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

**Openings**:  With respect to materials (exhibits and demonstratives, as defined above) to be used in connection with opening statements, the parties agree to a preliminary exchange of such materials no later than 7:00 p.m. on the evening before opening statements are made.  The parties agree that the receiving party will provide its list of objections no later than 8:00 p.m. that night and the parties shall meet and confer about any objections by 9:00 pm.  The parties agree that any changes to these materials made after 7:00 p.m. on the evening before opening statements are made will be non-substantive (e.g., edits to font, layout, format, or to correct typographical errors) unless made in response to and for the purpose of resolving an objection.

**Closings**:  The parties are continuing to confer regarding exchanging demonstrative exhibits before closing arguments and are currently at an impasse.  If the parties cannot resolve this dispute, the parties will raise it with the Court at the final pretrial conference.

## VII.   DAMAGES

Plaintiffs' Position:  At trial, Plaintiffs will seek damages in the form of a reasonable royalty, pursuant to 35 U.S.C. § 284 and as set forth in their expert reports, adequate to compensate for Defendant's alleged infringement of the '590 Patent for use made by the invention up until the date of the '590 Patent's expiration on December 20, 2021.  Plaintiffs will further seek an award of prejudgment and post-judgment interest, an award of attorneys' fees pursuant to 35 U.S.C. § 285, and pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and/or Fed. R. Civ. P. 54.  Plaintiffs agree to discuss with Genentech the updating of analysis

by each side's damages expert to reflect actual sales figures through December 20, 2021.  Plaintiffs are not seeking an award of lost profits.

<u>Defendant's Position</u>:   At trial, Genentech will respond to Plaintiffs' damages case to ensure that, in the event the jury finds that the asserted claims of the '590 Patent are infringed and not invalid, Plaintiffs are awarded no more than a reasonable royalty, pursuant to 35 U.S.C. § 284 and as set forth in Genentech's expert reports, adequate to compensate for Genentech's alleged infringement of the '590 Patent, from November 16, 2017 until December 20, 2021.  It is unclear why Plaintiffs would require a post-trial accounting of damages from the close of discovery through the entry of judgment since the patent expires prior to trial and Genentech's sales figures may be knowable at that point.  Genentech suggests that the parties discuss the updating of their damages expert's analysis to include real rather than projected sales figures, if possible.  Both parties' experts testified that this would be preferred.  Genentech suggests that any determinations and awards of pre- or post-judgment interest; attorney's fees under 35 U.S.C. § 285; enhanced damages under 35 U.S.C. § 284; and/or costs are not issues that are appropriate for a jury to consider and should be addressed in post-trial briefing or hearings, as the Court may deem reasonably necessary.

## VIII.   BIFURCATED TRIAL

The parties do not desire a bifurcated trial.

## IX.   MOTIONS *IN LIMINE* AND *DAUBERT* MOTIONS

Motions *in limine* and *Daubert* motions shall be separately filed pursuant to the Court's Scheduling Order.   D.I. 356.   Opening motions *in limine* and *Dabuert* motions are due on December 8, 2021.  Oppositions to motions *in limine* and *Dabuert* motions are due on December

16, 2021.  Reply briefs in support of motions *in limine* and *Dabuert* motions are due on December 23, 2021.

## X.    DISCOVERY

Each party has completed discovery.

## XI.    NUMBER OF JURORS

There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

## XII.    LENGTH OF TRIAL

The parties request 48 hours divided equally between the parties for their trial presentation. Time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by the other party, and closing and rebuttal arguments. For any objections made in the presence of the jury, the time taken to argue an objection (including the time for both sides' arguments on the objection) will be charged to the party that does not prevail on the objection.

The Courtroom Deputy will keep a running total of trial time used by counsel.  If presentations exceed the amount of time allotted, the presentations will be terminated.

## XIII.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW

The parties agree that JMOLs should be made orally outside of the jury's presence at the appropriate time (e.g., at the next break after the close of the case-in-chief for the party bearing the burden of proof on the issue) and should then be supplemented with a written motion not to exceed

five (5) pages supporting any oral motions filed within 72 hours if the Court so desires.  For any renewed JMOL following a jury verdict, the briefing schedule will be set following the conclusion of the jury trial.

## XIV.   AMENDMENTS OF THE PLEADINGS

The parties are not seeking any amendments to the pleadings.

## XV.   ADDITIONAL MATTERS

1.     The parties are seeking and hereby jointly move to amend the case caption to reflect the stipulated dismissal of Defendant Chugai Pharmaceutical Co., Ltd. (D.I. 293), such that the caption going forward will be *Baxalta Incorporated and Baxalta GmbH* v. *Genentech, Inc.*, C.A. No. 17-509-TDB (D. Del.).

2.     The parties agree that any issues of enhanced damages under 35 U.S.C. § 284, the interest on any damages award, exceptionality and any award of attorney's fees, and any award of costs are determined by the Court, and not the jury, so they are not issues that will be litigated at the jury trial in this matter.

3.     The parties agree that they will not remove any confidentiality markings from any documents, and the parties jointly request the Court to instruct the jury when a confidential document is first shown that certain documents were marked as such before trial for purposes unrelated to trial and that the jury should give no consideration to such markings.  The parties further agree that all parties are precluded from any intimation that the marking of materials produced in discovery as "confidential" or "attorneys' eyes only" had any improper purpose.

4.     Depending upon presentations of evidence at trial, the courtroom may need to be closed for certain portions of the certain witnesses' testimony.  The parties will notify the Court in advance of any potential testimony.

5. The parties agree, and are hereby so ordered that they may not:

    a. make any reference to either party's technical tutorial; and

    b. offer, or have their experts or other witnesses offer, evidence, testimony, or argument inconsistent with the Court's Order and Opinion on claim construction.

6. Genentech intends to call a witness, Dr. Kitazawa, whose native language is Japanese and who will testify in Japanese. The parties have agreed that, subject to the Court's approval, Genentech will engage and compensate a primary interpreter and Baxalta may engage and compensate a check interpreter.

7. The parties have met and conferred and agreed that, to the extent the Court provides Juror Notebooks, the Notebooks should include (1) copies of the patent-in-suit; and (2) the Court's and the parties' agreed-upon claim constructions.

8. The parties agree that all rights to appeal the Court's claim constructions and the Court's dispositions of pretrial motions for summary judgment, *Daubert* motions, and motions *in limine* are preserved and do not need to be reasserted at trial to avoid waiver.

## XVI.  SETTLEMENT

The parties have engaged in a good faith effort to explore the resolution of the controversy by settlement.

Respectfully submitted,

Dated: December 1, 2021

**MORGAN, LEWIS & BOCKIUS, LLP**

**ASHBY & GEDDES**

*/s/ Amy M. Dudash*
Jody C. Barillare (#5107)
Amy M. Dudash (#5741)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000

*/s/ Steven J. Balick*
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

jody.barillare@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Abernathy
Jason C. White
Christopher J. Betti
Amanda S. Williamson
Wan-Shon Lo
Maria E. Doukas
Karon N. Fowler
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel. 312.324.1000
mike.abernathy@morganlewis.com
jason.white@morganlewis.com
christopher.betti@morganlewis.com
amanda.williamson@morganlewis.com
shon.lo@morganlewis.com
maria.doukas@morganlewis.com
karon.fowler@morganlewis.com

Margaret A. McGreal
Julie S. Goldemberg
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
margaret.mcgreal@morganlewis.com
julie.goldemberg@morganlewis.com

Olga Berson
2049 Century Park East, Suite 700
Los Angeles, CA 90067
Tel. 310.907.1000
olga.berson@morganlewis.com

*Attorneys for Plaintiffs Baxalta Incorporated
and Baxalta GmbH*

(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Kenneth A. Gallo
David E. Cole
2001 K Street, NW
Washington, D.C. 20006
(202) 223-7300
kgallo@paulweiss.com
dcole@paulweiss.com

Nicholas Groombridge
Eric Alan Stone
Jennifer Gordon, Ph.D.
Josephine Young
Naz Wehrli
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000
ngroombridge@paulweiss.com
estone@paulweiss.com
jengordon@paulweiss.com
jyoung@paulweiss.com
nwehrli@paulweiss.com

*Attorneys for Defendant Genentech, Inc.*

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED:_____

_____
Honorable Timothy B. Dyk
United States Circuit Judge, sitting by designation