**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BAXALTA INCORPORATED
and BAXALTA GMBH,

Plaintiffs,

v.

GENENTECH, INC. and
CHUGAI PHARMACEUTICAL CO., LTD.,

Defendants.

C.A. No. 17-509-TBD

**PUBLIC VERSION**

**MEMORANDUM IN SUPPORT OF GENENTECH, INC.'S UNOPPOSED RENEWED AND NARROWED MOTION TO SEAL AND MAINTAIN AS CONFIDENTIAL CERTAIN PASSAGES OF THE SUMMARY JUDGMENT HEARING TRANSCRIPT**

*Of Counsel*:

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

Nicholas Groombridge
Eric Alan Stone
Catherine Nyarady
Jennifer Gordon
Josephine Young
Naz Wehrli
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000

Kenneth A. Gallo
David E. Cole
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300

ASHBY & GEDDES

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendant Genentech, Inc.*

December 2, 2021

Defendant Genentech, Inc. respectfully submits this memorandum in support of its unopposed renewed and narrowed motion to seal and maintain as confidential certain passages of the transcript of the oral argument on Genentech's motion for summary judgment that occurred on November 19, 2021. In light of the Court's comments at the hearing, and as Genentech represented to the Court, it has worked to minimize the number of confidentiality redactions that it believes are required in the public version of the transcript. Genentech's proposed redactions, as described below, are highlighted on pages 5, 135, 146, 161, 164–168, and 173–174 in the attached excerpt of the transcript (Exhibit A).

**Status of Settlement Discussions.**   Genentech asks that the Court seal and maintain as confidential the discussions concerning the current status of the parties' settlement negotiations, Hr'g Tr. 5:6–11, which occurred during the beginning colloquy.

**Percentages and Generation of the Variant.**   During the parties' presentations regarding the doctrine of equivalents, counsel discussed Genentech's and third-party Chugai's confidential information concerning batches of Hemlibra® that contain an amino-acid-sequence variant ██████ ████. Although the parties were able to avoid mention of the variant by name during their arguments, there were discussions on pages 135, 146, 161, 164–168, and 173–174 of the transcript ███████████████████████████████████████ ████████████████████████████████, which was based on confidential information. Genentech seeks to keep confidential <u>only</u> those passages. Genentech disclosed the existence of the variant ████████████ to FDA in its Biologics License Application ("BLA"), which is maintained by FDA as confidential and further supports that its confidentiality should be maintained here. *See In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 660 (D.N.J. 2004). Courts have held that this type of information constitutes a trade secret and should be sealed upon

a party's request.  *See, e.g.*, *id.* at 667; *Mosaid Techs. Inc.* v. *LSI Corp.*, 878 F. Supp. 2d 503, 511 (D. Del. 2012); *Genentech, Inc.* v. *Amgen, Inc.*, 2020 WL 9432700, at *4 (D. Del. Sept. 2, 2020), *report and recommendation adopted*, 2020 WL 9432702 (D. Del. Oct. 1, 2020).  The interest in protecting this type of information is commonly found to outweigh the presumption of public access.  *See Mosaid*, 878 F. Supp. 2d at 511; *Gabapentin*, 312 F. Supp. 2d at 667–68.  The Court should maintain its confidentiality here.

## CONCLUSION

For the foregoing reasons, the Court should grant Genentech's unopposed renewed and narrowed motion to seal and maintain as confidential the referenced passages of the transcript of the November 19, 2021 oral argument, as outlined above and set forth the attached highlighted transcript.

ASHBY & GEDDES

*/s/ Steven J. Balick*

*Of Counsel*:

_____

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Nicholas Groombridge
Eric Alan Stone
Catherine Nyarady
Jennifer Gordon
Josephine Young
Naz Wehrli
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
GRP-GENE-Baxalta@paulweiss.com
ngroombridge@paulweiss.com
estone@paulweiss.com
cnyarady@paulweiss.com
jengordon@paulweiss.com
jyoung@paulweiss.com
nwehrli@paulweiss.com

Kenneth A. Gallo
David E. Cole
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
GRP-GENE-Baxalta@paulweiss.com
kgallo@paulweiss.com
dcole@paulweiss.com

*Attorneys for Defendant Genentech, Inc.*

December 2, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of December, 2021, the attached **MEMORANDUM IN SUPPORT OF GENENTECH, INC.'S UNOPPOSED RENEWED AND NARROWED MOTION TO SEAL AND MAINTAIN AS CONFIDENTIAL CERTAIN PASSAGES OF THE SUMMARY JUDGMENT HEARING TRANSCRIPT** was served upon the below-named counsel of record at the addresses and in the manner indicated:

Amy M. Dudash, Esquire                                            VIA ELECTRONIC MAIL
MORGAN, LEWIS & BOCKIUS LLP
1007 North Orange Street, Suite 501
Wilmington, DE  19801

Michael J. Abernathy, Esquire                                    VIA ELECTRONIC MAIL
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511

Karon N. Fowler, Esquire                                          VIA ELECTRONIC MAIL
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA  94304

Olga Berson, Ph.D.                                                VIA ELECTRONIC MAIL
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067

William R. Peterson, Esquire                                      VIA ELECTRONIC MAIL
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005


*/s/ Steven J. Balick*
_____
Steven J. Balick

# EXHIBIT A

Page 1

1              UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF DELAWARE
2

    ---------------------------x
3   BAXALTA INC., et al.,         :

                                  :
4                 Plaintiffs,     :

                                  :
5            v.                   : No. 17-509-TBD

                                  :
6   GENENTECH, INC., et al.,      :

                                  :
7                 Defendants.     :
    ---------------------------x

8

                              717 Madison Pace, NW.
9                                  Washington, D.C.
10                         Friday, November 19, 2021
11
12
13
14
15
16          The HEARING in the above-entitled matter
17   was convened at 10:00 a.m. pursuant to notice.
18   BEFORE:
19              JUDGE TIMOTHY B. DYK
20
21
22

Page 2

```
 1    APPEARANCES:
 2
         On behalf of Plaintiffs:
 3               WILLIAM R. PETERSON, ESQUIRE
                 KARON N. FOWLER, ESQUIRE
 4               Morgan Lewis
                 110 North Wacker Drive
 5               Chicago, Illinois  60606-1511
                 (312) 324-1142
 6
 7       On behalf of Defendant:
                 ERIC ALAN STONE, ESQUIRE
 8               JENNIFER GORDON, ESQUIRE
                 NAZ WEHRLI, ESQUIRE
 9               JOSEPHINE YOUNG, ESQUIRE
                 CATHERINE NYARADY, ESQUIRE
10               Paul Weis Rifkind Wharton & Garrison
                 1285 Avenue of the Americas
11               New York, New York  10019-6064
                 (213) 373-3000
12
                 DAVID E. COLE, ESQUIRE
13               Paul Weiss Rifkind Wharton & Garrison
                 2001 K Street, NW.
14               Washington, D.C.  2006-7300
                 (202) 223-7300
15
                 STEVEN J. BALICK, ESQUIRE
16               Ashby & Geddes
                 500 Delaware Avenue
17               Wilmington, Delaware  19899
                 (302) 654-1888
18
19                    *   *   *   *   *
20
21
22
```

Page 3

1            P R O C E E D I N G S

2            BAILIFF:  All rise.  The United States

3    District Court for the District of Delaware is now

4    open and in session, the Honorable Judge Timoth B.

5    Dyk presiding.

6            JUDGE DYK:  Thank you. Be seated.  Okay

7    as far as masking is concerned when you're

8    speaking at the podium you can remove the mask.

9    Otherwise keep them on.  I'm going to divide this

10   hearing into two parts.  The first will deal with

11   written description of enablement and then the

12   second part will deal with the document of

13   equivalence and, and the willful infringement

14   issue.  Now I know there's a motion to seal and

15   I'm going to deny that motion but let me explain

16   how we'll do this.  I'm not, by denying the motion

17   I'm not saying that you can or should disclose

18   confidential information in your argument.  It

19   just seems to me that given the information that

20   you talked about as being confidential it's easy

21   enough to talk about it in more general terms so

22   that you don't disclose the particular information

Page 4

1   that you view as confidential, so this is not a

2   ruling that the material is not confidential.  It

3   is simply a ruling we are not going to conduct the

4   proceeding in such a way that the information has

5   to be disclosed.  So you can confer, I think it

6   all comes up in, only in connection with the set

7   claims of our hearing, so you can talk about that

8   and attorneys can figure out how to describe this

9   in a way that doesn't disclose the confidential

10  information.  Are there any questions about that?

11          MR. STONE:  Your Honor, Eric Stone for

12  Genentech.  The court ruling is clear.  We, we

13  agree within ourselves that we can, we were going

14  to do that anyway essentially with respect to

15  local infringement.  I think that the document of

16  equivalence one is a little more difficult but let

17  us talk about it during the break and see if we

18  can agree on some ways to approach that and if we

19  have concern, we'll raise it between the arguments

20  but I hopeful that we will not need that.

21          JUDGE DYK:  I have one question before

22  we start this settlement.  Have you guys discussed

Page 5

1    settlement?  Are you discussing settlement?   Is

2    that likely to lead anywhere?  I'm not asking for

3    the details of it, but just what's going on.

4              MR. STONE:  Your Honor, obviously, we

5    hope we're not on the record.  I just want make

6    sure before I answer that question.  ▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮▮▮▮

12             JUDGE DYK:  Okay.  If you, if you are

13   going to have serious discussions and that, that

14   might lead somewhere please let me know sooner

15   rather than later.

16             MR. STONE:  Of course.

17             JUDGE DYK:  I had one experience where

18   the case settled on the courthouse steps the night

19   before the trial was to begin -- the most

20   efficient way to conduct business.

21             MR. STONE:  Having been on the receiving

22   end of the difficult rap that attends that we will

Page 6

1    not do that, Your Honor.  Thank you.

2              JUDGE DYK:  Now just one other comment.

3    I, I'm going to assume that I've read the expert

4    reports and I think I've read all of the relevant

5    parts of the depositions, too, so in your

6    presentation you don't need to go through what's

7    in there.  I, I do express a little frustration

8    with the state of the record and that is I'm

9    obviously not a scientist.  I come to this with

10   the knowledge that you provide me.  I don't want

11   my decision to be based on my internet research

12   and I think there are some areas here where it

13   needs to be fleshed out a little bit as to what's

14   going on and I think, we'll see what happens at

15   the end of the hearing but we may get to the point

16   that I'm going to ask you to try to come up with a

17   stipulation that will flesh this out a little bit.

18   I think these are things that, that shouldn't be

19   disputed and that you have to be able to agree on

20   that would be a useful stipulation both for

21   summary judgement purposes and for the trial if we

22   have one.  You'll see as we go along what sorts of

```
 1            MS. GORDON:  So, the issue is whether
 2   they may rely on the doctrine of equivalents to
 3   prove that batches of Hemlibra that contain not
 4   only emicizumab, the bispecific antibody, but a
 5   sequence variant of emicizumab infringed the
 6   asserted claims.  Or whether they are precluded
 7   from using the doctrine by file wrapper estoppel
 8   or disclosure-dedication.  And if they are
 9   precluded from using either one of those, then
10   those batches of Hemlibra that contain the
11   sequence variant would be non-infringing, which I
12   believe can be decided as a matter of law if they
13   can't pass these threshold issues.
14            So, the focus of our argument is on the
15   claim term isolated, which appears in Claim 1.  It
16   modifies antibody or antibody fragment.  It was
17   added at the end of prosecution.  And the court
18   has construed isolated to mean that all antibody
19   molecules and all fragment molecules in the
20   claimed composition have identical amino acid
21   sequences except for any post-translational
22   modifications.
```

Page 135

1        Not all batches of Hemlibra literally

2   meet the term isolated.  The parties do not

3   dispute this fact.  There are batches of Hemlibra

4   that contain emicizumab and quantifiable amounts

5   of a sequence variant.  And those two bispecific

6   antibodies do not share the same amino acid

7   sequence.  They do not have identical amino acid

8   sequences.  So, Baxalta needs to avail itself of

9   the doctrine of equivalents to be able to prove

10  these batches of Hemlibra infringe.

11       And their need to use the DOE is a

12  significant one, Your Honor.  And just to give you

13  some sense of, you know, what's at stake on this

14  part of our motion, █████████████████████████

15  ████████████████████████████████████████████████

16  ███████████████████   And that can find support in

17  DI409, Exhibit 25, paragraph 69 through 71.  I

18  don't know if you still have our slide book up

19  there, Your Honor, but that would be at Slide 32,

20  if that's helpful.

21               █████████████████████████████████████

22  ███████████) axalta offers its equivalents theory of

Page 136

1   infringement.  Granting Genentech's motion would

2   greatly simplify the infringement and damages

3   issues for trial.  Indeed, if Baxalta is precluded

4   from relying on the doctrine of equivalents, the

5   damages calculations in this case will change

6   dramatically.

7           Now, I'd like to start out on

8   prosecution history estoppel.  For prosecution

9   history estoppel by claim amendment, two issues

10  have to be resolved.  The first issue is a

11  two-part issue and that is whether the claim

12  amendment was narrowing and whether it was made

13  for reasons related to patentability.  And if the

14  answer to that is yes, that will trigger the Festo

15  presumption that the scope, the territory between

16  the originally worded claim and the amended claim

17  has been surrendered.  Then that next issues

18  becomes can that Festo presumption of surrender be

19  overcome by one of the Festo exceptions?

20          So, going through what happened during

21  prosecution, the examiner called up at the end of

22  2004, initiated a telephonic interview asking

Page 145

1    with that assessment as did Genentech.  The

2    court's decision, which is DI330 at page 26,

3    similarly says, we do not have an explanation on

4    this record for why this amendment of isolated

5    took place.

6              And in a situation where you have an

7    unexplained narrowing amendment, both

8    Warner-Jenkinson and Festo provide insight as to

9    what the consequences of this is.  And first, if

10   there's no -- the narrowing amendment made for

11   reasons of patentability, the first thing is the

12   Warner-Jenkinson presumption that the amendment

13   was made for reasons related to patentability.

14   And then the Supreme Court in Festo a couple of

15   years later, added the Festo presumption that on a

16   record where it's unexplainable why the amendment

17   got made, that that would surrender the scope

18   between the originally worded claim and the

19   amended claim.  And when that happens, we suggest

20   to you, Your Honor, that the presumption now

21   becomes irrebuttable that they gave up scope and

22   that the amendment was made for reasons of

Page 146

1    patentability because tangentiality is not a

2    available to Baxalta because that exception to

3    Festo requires a discernible reason and there is

4    none here.

5              So, we would say that it can be decided

6    as a matter of law that prosecution history

7    estoppel precludes them from using the doctrine of

8    equivalents to prove that ▮▮▮▮▮▮▮ commercial

9    batches of Hemlibra infringe the claims of this

10   patent.

11             I see my time is running out and I could

12   say a few words about disclosure-dedication if

13   you'd like me to.  But if you have questions on

14   it?

15             JUDGE DYK:  I think that's okay.  We'll

16   give you a couple minutes in rebuttal.

17             MS. GORDON:  Yeah, so, should I go on

18   with disclosure-dedication?

19             JUDGE DYK:  No, that wasn't what I was

20   going to say.  But --

21             MS. GORDON:  Pardon me?

22             JUDGE DYK:  Those who are listening in,

1   to please don't make any noise because you're

2   coming across there.  Thank you.

3            MS. GORDON:  Okay.

4            JUDGE DYK:  Okay, thank you.

5            MS. GORDON:  Okay.  I was just going to

6   say a couple of quick things about

7   disclosure-dedication.  So --

8            JUDGE DYK:  Let's save it for rebuttal.

9            MS. GORDON:  Save it, okay.  Thank you,

10  Your Honor.

11           JUDGE DYK:  Ms. Fowler?

12           MS. FOWLER:  May it please the Court,

13  prosecution history estoppel --

14           JUDGE DYK:  Before you get into

15  prosecution history estoppel, do you agree there's

16  no literal infringement?

17           MS. FOWLER:  No, Your Honor.

18           JUDGE DYK:  You don't?

19           MS. FOWLER:  That's still a disputed

20  fact.  It's still whether there is -- there is

21  literal infringement that is at play and there is

22  doctrine of equivalents infringement that is still

Page 159

1    care about.

2              That process, that's what gets us the

3    isolated antibody or antibody fragment.  And, Your

4    Honor asked why does the tangential exception --

5              JUDGE DYK:  So, why does that show that

6    it's isolated instead of your original

7    construction essentially composed of (inaudible)?

8              MS. FOWLER:  Your Honor, the original

9    proposed construction that Genentech offered

10   during the Markman phase was trying to distinguish

11   between purification and isolation.  And that is

12   --

13             JUDGE DYK:  Well, your view was that the

14   claims didn't require isolation.  They didn't

15   require purity.  And that it should be construed

16   more loosely to require that it essentially be

17   this particular antibody.  And now, it seems to me

18   you're making an opposite argument that from the

19   beginning purity was a requirement here, which it

20   does not seem to me entirely consistent with what

21   you said before.

22             MS. FOWLER:  Your Honor, I can

Page 160

1  understand why at face value you may think that.

2  But if you bear with me, those -- either

3  construction that was proposed by either party at

4  Markman is not inconsistent with what we're saying

5  now.  Again, there is no question that the

6  applicants were always concerned with getting to a

7  homogenous cell line that has the antibody of

8  interest in it.  That's never been disputed and

9  it's never been disputed that you would have that

10  particular isolated antibody at that point.

11           Whereas, Baxalta was more focused on the

12  process that went into how you get there,

13  Genentech was focused on the outcome.  So, the

14  parties' counterproposals were not inconsistent

15  with respect to the isolated antibody and antibody

16  fragment that we have here.  And so, if we are to

17  assume that there was an error in amendment, which

18  we do not concede, and if then the

19  Warner-Jenkinson presumption applies, Your Honor

20  asked how is this tangentially related to that?

21           We see that we went from, if anything,

22  nonhomogeneous cell lines to homogeneous cell

Page 161

1    lines.  That would be the scope of surrender.  In

2    this process, again, kind of following the

3    timeline that Mr. Stone provided earlier, we go

4    through, we inject the mouse.  We come through and

5    we have the hybridomas at the end of that kind of

6    first stage.  At the end of that first stage,

7    they're subcloned.  They're subcloned in order to

8    get to the homogenous cell line.  That's the

9    isolated antibody.

10           Once you have that isolated antibody,

11   you then need to scale up to a commercial level in

12   order for that to be a commercially feasible

13   product.  ████████████████████████████████████

14   ██████████████████████████████████████

15   ████████████████████    █████████████████

16   ████████████████████████████

17   ████████████████████████████████

18   ████████████████    ██████████████████████

19   ████████████████████████████████

20   ██████████████████████████████████████

21   ████████████████████████████████

22   ██████████████████

Page 162

1          Narrowing Claim 1 from nonhomogeneous
2     cell populations to homogenous cell populations is
3     tangential to a variant with 99.9 percent sequence
4     identity formed by chance during a much later cell
5     culture process.
6               JUDGE DYK:  Okay.
7               MS. FOWLER:  For the same reasons, I
8     understand Your Honor will provide opposing
9     counsel with a brief moment to address the
10    disclosure-dedication doctrine.  I think I can
11    address it very briefly and perhaps --
12              JUDGE DYK:  No, go ahead.
13              MS. FOWLER:  -- and perhaps foreclose a
14    surrebuttal request.  So, the variant is not
15    unclaimed subject matter that's disclosed in the
16    specification as an alternative to a relevant
17    claim limitation.  In their briefing, Genentech
18    again points to that column 9 passage that's
19    talking about preparations that may contain
20    mixtures of antibodies.  So, first, that does not
21    disclose the variant at issue for the reasons
22    we've already discussed.  Even so, it was claimed

Page 163

1   that mixture of antibodies that is separate and

2   apart from Claim 1 was claimed in Claims 15 and

3   16, as we discussed.

4           Even if that column 9 passage were

5   somehow about Claim 1, the passage is too generic

6   for a person of ordinary skill in the art to

7   identify a variant that arises from a chance

8   genomic mutation as disclosed and not claimed.

9   And as the Federal Circuit made clear in the

10  Pfizer case, as well as the PSC Computer Products

11  cases, that's 2005 and 2004, respectively, there

12  needs to be a specificity that allows that person

13  of ordinary skill in the art to understand what

14  was disclosed but not claimed.  And that generic

15  reference to preparations that may comprise

16  mixtures of antibodies is not sufficiently

17  specific to identify the variant that's at issue

18  here.  And if Your Honor as no other questions?

19           JUDGE DYK:  Okay, thank you.

20           MS. FOWLER:  Thank you.

21           JUDGE DYK:  Ms. Gordon?

22           MS. GORDON:  Thank you, Your Honor.  I

Page 164

1   just want to say a couple of things because I

2   think there's some confusion over what's left of

3   infringement or what is in this case with respect

4   to literal infringement and what's going on with

5   respect to doctrine of equivalents infringement.

6   That footnote in our opening brief flags that

7   there are disputed issues of fact with respect to

8   literal infringement.  And that is the theory that

9   Baxalta has on literal infringement appears in its

10  expert's, Dr. Krishna Swami's, report that I gave

11  the cite for previously.  But their literal

12  infringement theory to date, to our knowledge, ▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14          It was news to us today that they say

15  they still have some sort of a literal

16  infringement case with respect to the batches that

17  contain not only emicizumab, but the sequence

18  variant of emicizumab.

19          JUDGE DYK:  Yes, when I spoke earlier

20  saying my impression had been that no literal

21  infringement was conceded, I was not referring to

22  ▮▮▮▮▮▮▮▮▮  to the later batches that had

Page 165

```
 1   this --
 2            MS. GORDON:  That was what we thought
 3   with respect to the remainder batches, which
 4   amount to --
 5            JUDGE DYK:  What was your -- what did
 6   your motion say?  I mean, did you seek a
 7   determination of no infringement?  Or did it just
 8   address no infringement by the doctrine of
 9   equivalents?
10            MS. GORDON:  No infringement by doctrine
11   of equivalents.  Right, so there is still disputed
12   facts about ███████████████ that --
13            JUDGE DYK:  Well, sure, but what about
14   ███████████████?
15            MS. GORDON:  No, ███████████████ that's
16   what we're here for today.  If they're precluded
17   from using the doctrine of equivalents with
18   respect to that ███████████ of batches, and that's
19   the only infringement theory that they've given us
20   notice of to date, Your Honor, as to why those
21   batches infringe.  It's all been under the
22   doctrine of equivalents.
```

Page 166

```
 1            JUDGE DYK:  Well, that --
 2            MS. GORDON:  If they can't use DOE, then
 3    --
 4            JUDGE DYK:  Well, you're suggesting that
 5    they're precluded from raising it as to ███████
 6    ███████ and I'm trying to understand why they're
 7    precluded from raising it as to the -- as literal
 8    infringement as to ███████████ when the motion
 9    here was addressed only to the doctrine of
10    equivalents.  Is that because they didn't include
11    it in their infringement contentions?
12            MS. GORDON:  Correct.  Correct.  We've
13    never seen a set of infringement contentions from
14    Baxalta that had an explanation for why ███████
15    ███████ of batches that contain two antibodies of
16    nonidentical amino acid sequences why those
17    literally infringe the term isolated as it's been
18    construed.  That's not in Dr. Krishna Swami's
19    expert report.  He goes with literal infringement
20    on ████████████████████ he uses doctrine
21    of equivalents.  ████████████████
22    ███████████████ of the sequence variant in
```

Page 167

1   it. ████████████, the reason why there's a live

2   dispute on literal infringement, is because even

3   in those batches, ███████████████████████████

4   ████████████████████████████

5        So, we couldn't move for summary

6   judgment of noninfringement based on those because

7   there's a live, a factual dispute.  But with

8   respect to the ████████ that have ████████████

9   ████████ of the variant, that's what our motion

10  addresses and we don't think they --

11       JUDGE DYK:  Well, but it doesn't --

12       MS. GORDON:  -- could use DOE.

13       JUDGE DYK:  It's not written to preclude

14  literal infringement.  That's the problem I'm

15  having.  It may be that they're precluded for not

16  raising any infringement contentions, but I don't

17  see how they're precluded for not raising it in

18  connection with the summary judgment motion.  It

19  was only addressed to the doctrine of equivalents.

20       MS. GORDON:  Yeah, now, I understand

21  your question, Your Honor.  I apologize for taking

22  a while with it.  Well, I do believe that there

1    are cases where if you're this late into the game

2    and your infringement contentions have never

3    reflected a theory --

4             JUDGE DYK:  Well, that may be.

5             MS. GORDON:  Yeah.

6             JUDGE DYK:  But that seems to me not

7    before us today.  If you want to make a motion

8    with their theory of literal infringement should

9    be precluded as to ████████████ because it

10   wasn't properly raised in the infringement

11   contentions, you could make that motion.

12            MS. GORDON:  Right.

13            JUDGE DYK:  But I don't see that that's

14   part of today's issue about summary judgment.

15            MS. GORDON:  Correct.  The issue today

16   is whether they're precluded from using the

17   doctrine of equivalents theory of infringement for

18   these ████████ of batches that have the variant

19   in it.

20            JUDGE DYK:  Okay.

21            MS. GORDON:  So, I hope that helped

22   clarify, you know, where we're currently at.

1          I would just like to address a couple of

2     things that you've heard today about that this

3     amendment did make explicit what was implicit.

4     And I think we heard that the part of the patent

5     at column 9 that we're relying on that discloses

6     mixtures of different antibodies that would have

7     different sequences applies to only Claims 15 and

8     16 and not to Claim 1.  I'd note that 15 and 16

9     are both dependent on Claim 1.

10          They've accused a pharmaceutical

11     preparation of antibodies as infringing Claim 1.

12     So, I don't think they can truly say that this

13     portion of the patent at column 9 is not

14     indicative of there being two disclosed -- two

15     disclosed antibody preparations in this patent.

16     Some of which have been subcloned to the point

17     where the cell line is producing an antibody of a

18     single amino acid sequence.  But also, within this

19     patent you see that not all cell lines were

20     subcloned to that point.  And you see the passage

21     in Claim 9 where they're definitely saying an

22     embodiment of their invention is mixtures of

Page 170

1   different antibodies.

2           JUDGE DYK:  The more the two of you

3   talk, the more it seems to me that there may be a

4   fact issue here as to how to interpret this

5   specification.  And, in particular, with respect

6   to the tangentiality argument as to whether --

7   excuse me -- there is a difference between what

8   the amendment was directed to and this situation

9   with this additional item in there.  Because what

10  they're suggesting is that if there was an error

11  in amendment, it wasn't -- it was directed to a

12  different part of the process, as I understand it,

13  right?

14          MS. GORDON:  Yes, and I would -- I would

15  say that the part that we're relying on to show

16  that there was a narrowing is there in the

17  specification to see that both unisolated mixtures

18  of antibodies and isolated preparations of

19  antibodies are disclosed there.  And when you put

20  the word isolated into a claim, you're excluding

21  those that are unisolated.  So, I think the spec

22  itself shows the narrowing and then you would have

Page 171

```
 1   to --
 2              JUDGE DYK:  Well, that may be and --
 3              MS. GORDON:  -- with the file history
 4   where you don't know where --
 5              JUDGE DYK:  -- (inaudible) that you have
 6   a strong argument that it's a narrowing amendment.
 7   I'm not going to pass on it.  Let's assume that
 8   you're correct about that, we're still having to
 9   deal with a tangentiality exception.
10              MS. GORDON:  I'm not -- well, we do
11   because that's the exception that they want to
12   rely on but the tangentiality exception requires
13   there to be an objectively discernible reason on
14   the record for why the amendment was made so that
15   you can judge if the reason bears any relationship
16   to the accused equivalent.  And in an instance,
17   and you might even say it's the law of this case
18   at this point, because during claim construction,
19   everybody agreed that we couldn't find a reason in
20   this record for why this amendment was made.  Then
21   these Warner-Jenkinson presumption kicks in.
22   Festo presumption kicks in.  That there was
```

Page 172

1   surrender, that there was a reason for

2   patentability.  And you're left with an exception

3   that also revolves around the need to find a

4   reason on a record and we can't find one.

5               JUDGE DYK:  Mm-hmm.

6               MS. GORDON:  And so, that should

7   preclude them as a matter of law from relying on

8   the doctrine of equivalents by --

9               JUDGE DYK:  Okay.

10              MS. GORDON:  -- virtue of an amendment

11  that brought on prosecution history estoppel.

12              JUDGE DYK:  Okay.  Do you want to take a

13  minute to talk about dedication-disclosure?

14              MS. GORDON:  Yeah, I mean, as I said, I

15  think a skilled artisan reading this patent could

16  see that what's being described here are different

17  types of antibody preparations that were inclusive

18  of mixtures that would have different sequences,

19  as well as those things that they subcloned to

20  monoclonality, which would be producing an

21  antibody of a single sequence.  Somebody reading

22  this patent can see that.  So, when the two points

Page 173

1    that are raised in Baxalta's brief for

2    disclosure-dedication is that somebody has to be

3    able to read this and recognize, you know, what it

4    was that was surrendered.

5         Our position is that you can read this

6    and see that mixtures were described as an

7    embodiment that never end up being claimed once

8    that word isolated gets put into the claim

9    narrowing it to something that would exclude

10   mixtures of nonidentical antibodies.  So, I do

11   think that there was a narrowing.  You can see

12   that from the disclosure and the spec, and what

13   was not claimed were mixtures of antibodies with

14   nonidentical sequences, which is a category that

15   these batches, these ███████████ of Hemlibra, fall

16   into so they would be dedicated.

17        JUDGE DYK:  Okay, all right.  Thank you,

18   Ms. Gordon.

19        MS. GORDON:  Okay.  Thank you, Your

20   Honor.

21        JUDGE DYK:  Ms. Fowler, you have

22   anything more?

Page 174

1            MS. FOWLER:  Just two very brief points

2    to address.  May it please the Court, I think it's

3    very important for me to just clarify and get this

4    into the record that we can look at footnote 4 as

5    an example in Dr. Krishna Swami's opening expert

6    report where he addresses this issue of that

7    ████████████████████████████

8            JUDGE DYK:  Okay.  But we're not going

9    to address that issue.

10           MS. FOWLER:  And I understand, Your

11   Honor.  It was just important that I clarify that

12   for any future confusion.  The second issue is the

13   Claim 15 and 16 and how that relates to column 9.

14   Opposing counsel suggested that that is a

15   dependent claim and therefore, anything is

16   necessarily applied to Claim 1.  If you look at

17   Claim 15, it comprises the antibodies or antibody

18   fragments of Claim 1, but it's not dependent from

19   Claim 1 in that kind of technical context in the

20   sense that it's necessarily narrower.  It's

21   comprising those antibodies and antibody

22   fragments.

Page 175

1          In that instance, you can imagine as an

2     open-ended transition, you have the isolated

3     antibodies and antibody fragments and maybe you

4     have other antibodies.  In which case, you would

5     have mixtures of antibodies consistent with the

6     column 9 passage.  So, that column 9 passage,

7     again, has nothing to do with the isolated

8     antibodies and antibody fragments of Claim 1.

9     Thank you, Your Honor.

10          JUDGE DYK:  Okay, thank you.  Okay,

11    thanks, everybody.  That was well argued and it

12    was very helpful to me.  Why don't you try to come

13    up with a stipulation that we discussed maybe two

14    weeks from today.  That would be the Friday in the

15    week after Thanksgiving.  Is that doable?

16          MR. STONE:  May I take this, Your Honor,

17    to be heard?  Absolutely, and I understand the

18    stipulation to be can we figure out how many or

19    how close can we get to how many antibodies were

20    created and tested.

21          JUDGE DYK:  Well, you might was well

22    include in there your description of how this

```
                                                    Page 176

 1   works with the injecting the mouse with the factor

 2   9 and so on and so on.

 3              MR. STONE:  Sure.

 4              MR. PETERSON:  We're happy to do that

 5   and two weeks is fine, Your Honor, sure.  We can

 6   certainly work with that, Your Honor.

 7              JUDGE DYK:  Okay.  Anything else we need

 8   to discuss today?

 9              MR. PETERSON:  No, Your Honor.

10              MR. STONE:  Not from defendant, Your

11   Honor.  Thank you.

12              JUDGE DYK:  Okay.  Thank you very much.

13   Have a good Thanksgiving.

14              MR. STONE:  You, as well.

15              JUDGE DYK:  And thanks to our court

16   reporter too.

17              REPORTER:  Thank you, Your Honor.  Thank

18   you very much.

19                   (Whereupon, at 2:21 p.m., the

20                   HEARING was adjourned.)

21                      *   *   *   *   *

22
```

Page 177

1          CERTIFICATE OF NOTARY PUBLIC

2            COMMONWEALTH OF VIRGINIA

3              I, Mark Mahoney, notary public in and for

4     the Commonwealth of Virginia, do hereby certify

5     that the forgoing PROCEEDING was duly recorded and

6     thereafter reduced to print under my direction;

7     that the witnesses were sworn to tell the truth

8     under penalty of perjury; that said transcript is a

9     true record of the testimony given by witnesses;

10    that I am neither counsel for, related to, nor

11    employed by any of the parties to the action in

12    which this proceeding was called; and, furthermore,

13    that I am not a relative or employee of any

14    attorney or counsel employed by the parties hereto,

15    nor financially or otherwise interested in the

16    outcome of this action.

17    ⟨signature⟩

18    _____

19     Notary Public, in and for the Commonwealth of

20     Virginia

21     My Commission Expires: August 31, 2021

22     Notary Public Number 122985